1   PILLSBURY WINTHROP SHAW PITTMAN LLP
    BRUCE A. ERICSON #76342
2   ALICE KWONG MA HAYASHI #178522
    ELIANA P. KAIMOWITZ RODRIGUEZ #256712
3   50 Fremont Street
    Post Office Box 7880
4   San Francisco, CA  94120-7880
    Telephone:  (415) 983-1000
5   Facsimile:  (415) 983-1200
    bruce.ericson@pillsburylaw.com
6   alice.hayashi@pillsburylaw.com
    eliana.kaimowitz@pillsburylaw.com
7
    Attorneys for Defendants
8   CAMBRIDGE DISPLAY TECHNOLOGY LIMITED
    and CDT OXFORD LIMITED
9

10

11                UNITED STATES DISTRICT COURT

12              NORTHERN DISTRICT OF CALIFORNIA

13                 SAN FRANCISCO DIVISION

14

15   SUNNYSIDE DEVELOPMENT               No. C-08-1780-MHP
     COMPANY LLC,
16                                       **DEFENDANT CDT OXFORD
                         Plaintiff,      LIMITED'S MOTION TO DISMISS
17                                       FOR LACK OF PERSONAL
         vs.                             JURISDICTION**
18
     CAMBRIDGE DISPLAY TECHNOLOGY        [Fed. R. Civ. P. 12(b)(2)]
19   LIMITED, CDT OXFORD LIMITED,
     OPSYS LIMITED, and JOHN DOES I      Date:     September 8, 2008
20   through V,                          Time:     2:00 p.m.
                                         Courtroom 15, 18th Floor
21                       Defendants.     Hon. Marilyn Hall Patel

22                                       Attached hereto:
                                         1.   Supporting Memorandum
23
                                         Filed herewith:
24                                       1.   Declaration of Scott Brown, Ph.D.
                                         2.   Request for Judicial Notice
25                                       3.   Foreign Authorities
                                         4.   Proposed Order
26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION.........................................................................V

ISSUE TO BE DECIDED ............................................................................................V

MEMORANDUM OF POINTS AND AUTHORITIES........................................................1

I.    INTRODUCTION. .................................................................................................1

II.   STATEMENT OF FACTS. .....................................................................................1

      A.   Background on CDT Oxford. ....................................................................1

      B.   CDT Oxford's lack of contact with the State of California...........................2

III.  ARGUMENT. .......................................................................................................3

      A.   Principles governing motions to dismiss for lack of personal
           jurisdiction. ..........................................................................................3

      B.   CDT Oxford lacks the minimum contacts necessary to create
           jurisdiction in the State of California. .......................................................3

           1.   Sunnyside cannot establish general jurisdiction over
                CDT Oxford.................................................................................4

           2.   Sunnyside cannot establish specific jurisdiction over
                CDT Oxford.................................................................................5

                a.   Sunnyside cannot establish specific jurisdiction based
                     on the 2002 and 2004 agreements with CDT Inc. ...................6

                     i.    Purposeful availment. ...............................................7

                     ii.   Relationship between claims and contacts. ...................9

                b.   Sunnyside cannot establish specific jurisdiction based
                     on tort allegations. ..............................................................10

                     i.    Purposeful availment. .............................................10

                     ii.   Relationship between claims and contacts. .................13

                     iii.  Reasonableness. .....................................................13

      C.   Sunnyside cannot establish jurisdiction over CDT Oxford based on
           the Court's jurisdiction over CDT Ltd. ....................................................14

           1.   Sunnyside does not allege that CDT Oxford is the alter ego of
                or successor to CDT Ltd. ............................................................15

1                    2.      Sunnyside has not shown any agency relationship between
                              CDT Oxford and CDT Ltd. ............................................................16
2
          D.      CDT Oxford should also be dismissed for the reasons stated in the
3                 motion to dismiss filed concurrently by CDT Ltd. ......................................17

4   IV.   CONCLUSION. ........................................................................................................17

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## Cases

*Asahi Metal Indus. Co. v. Super. Ct.,*
    480 U.S. 102 (1987) ............................................................................... 14

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.,*
    223 F.3d 1082 (9th Cir. 2000) ...................................................... passim

*Brand v. Menlove Dodge,*
    796 F.2d 1070 (9th Cir. 1986) ................................................................ 4

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462 (1985) ...................................................................... passim

*Calder v. Jones,*
    465 U.S. 783 (1984) ............................................................................. 10

*Cubbage v. Merchant,*
    744 F.2d 665 (9th Cir. 1984) .................................................................. 3

*Doe v. Unocal Corp.,*
    248 F.3d 915 (9th Cir. 2001) ........................................................ passim

*Gordy v. Daily News, L.P.,*
    95 F.3d 829 (9th Cir. 1996) .................................................................... 6

*Helicopteros Nacionales de Colombia v. Hall,*
    466 U.S. 408 (1984) ............................................................................... 4

*International Shoe Co. v. Washington,*
    326 U.S. 310 (1945) ............................................................................... 4

*Panavision International v. Toeppen,*
    141 F.3d 1316 (9th Cir. 1998) .............................................................. 11

*Pebble Beach Co. v. Caddy,*
    453 F.3d 1151 (9th Cir. 2006) ............................................. 3, 6, 11, 13

*Pena v. Valo,*
    563 F. Supp. 742 (C.D. Cal. 1983) ......................................................... 3

*Perkins v. Benguet Consolidated Mining Co.,*
    342 U.S. 437 (1952) ............................................................................... 4

*Ray v. Alad Corp.,*
    19 Cal. 3d 22 (1977) ............................................................................ 16

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.,*
    148 F.3d 1355 (Fed. Cir. 1998) .............................................................. 5

*Schwarzenegger v. Fred Martin Motor Co.,*
    374 F.3d 797 (9th Cir. 2004) ................................................................ 11

*Shaffer v. Heitner,*
 433 U.S. 186 (1977) .................................................................................................. 4

*Sunnyside Dev. Co. v. Opsys Ltd.,*
 No. C-05-553-MHP, 2007 WL 2462142 (N.D. Cal. Aug. 29, 2007) ........................ 2

*Williams v. Bowman Livestock Equip. Co.,*
 927 F.2d 1128 (10th Cir. 1991) .................................................................. 14, 15, 16

*World-Wide Volkswagen Corp. v. Woodson,*
 444 U.S. 286 (1980) .................................................................................................. 8

**Constitution**

United States Constitution
 Amendment V ..................................................................................................... 3, 5

**Statutes and Codes**

California Code of Civil Procedure
 Section 410.10 ........................................................................................................... 3

**Rules and Regulations**

Federal Rules of Civil Procedure
 Rule 9(b) ..................................................................................................................... v
 Rule 12(b)(1) ............................................................................................................. v
 Rule 12(b)(2) ............................................................................................................. v
 Rule 12(b)(6) ............................................................................................................. v
 Rule 25(c) ......................................................................................................... passim

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on Monday, September 8, 2008, at 2:00 p.m., before the Honorable Marilyn Hall Patel, United States District Judge, in Courtroom 15, 18th Floor, 450 Golden Gate Avenue, San Francisco, California, specially appearing defendant **CDT OXFORD LIMITED** ("CDT Oxford") will move and hereby does move, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, to dismiss the Complaint filed by plaintiff Sunnyside Development Company LLC ("Sunnyside") on April 3, 2008 (Dkt. 1), for lack of personal jurisdiction over CDT Oxford.

This motion is made on the grounds that there is no basis for personal jurisdiction over CDT Oxford. This motion is based on this notice of motion and motion, the memo-randum that follows, the declaration of Scott Brown, Ph.D., filed herewith, the request for judicial notice filed herewith, all pleadings and records on file in this action, and any other arguments and evidence presented to this Court at or before the hearing on this motion.

CDT Oxford also joins in the motion to dismiss filed concurrently by defendant Cambridge Display Technology Limited ("CDT Ltd.") under Rules 9(b), 12(b)(1), and 12(b)(6).

## ISSUE TO BE DECIDED

Does a court in the State of California have personal jurisdiction over CDT Oxford where CDT Oxford is incorporated in the United Kingdom ("UK"), is headquartered in the UK, conducts all its business (which now consists solely of holding intellectual property) in the UK, does not do business in California, has no presence in California, has no assets in California, and has never purposely availed itself of the privilege of conducting activities in California or purposely directed any activities at California residents?

1          **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    INTRODUCTION.**

3          Sunnyside purports to state six claims against defendants CDT Ltd., CDT Oxford,

4    and Opsys Limited ("Opsys").  Dkt. 1.  All six assert that Opsys fraudulently conveyed its

5    assets to CDT Ltd. and CDT Oxford by means of various transactions in 2002, 2004 and

6    2005.

7          Whatever else might be said about these claims (which should be dismissed for the

8    reasons set forth in the motion to dismiss of CDT Ltd., filed herewith), there is no basis for

9    personal jurisdiction over CDT Oxford.  Formerly a material development company but

10   now an owner of intellectual property, CDT Oxford does not make or sell goods or services

11   to California residents, or anyone.  CDT Oxford is incorporated in the UK, headquartered in

12   the UK, and has no offices or employees in California.  CDT Oxford has no business

13   presence in California.  In short, CDT Oxford lacks the minimum contacts with the State of

14   California needed for the assertion of general jurisdiction.  Furthermore, CDT Oxford has

15   not purposefully availed itself of the privileges of conducting activities in California, or

16   purposefully directed any activities at California residents.  CDT Oxford is also, therefore,

17   not subject to specific jurisdiction.  The Complaint should be dismissed as to it.

18   **II.    STATEMENT OF FACTS.**

19   **A.    Background on CDT Oxford.**

20         CDT Oxford is incorporated in the UK.  Declaration of Scott Brown, Ph.D., in

21   Support of CDT Oxford Limited's Motion to Dismiss ("Brown Decl."), filed herewith, ¶ 2,

22   Ex. A; *see also* Compl. ¶ 6.  As shown by its Memorandum of Association and Articles of

23   Association, among other documents, CDT Oxford was incorporated in Bristol, England in

24   April 2002.  Brown Decl. ¶ 2, Ex. A.  CDT Oxford's registered office is, and has been since

25   October 2002, Greenwich House, Madingley Rise, Madingley Road, Cambridge CB3 0TX,

26   England.  *Id.* ¶ 3.  Before that, its registered office was in Bristol, England.  *Id.*  CDT

27   Oxford is required to have its registered office in England and Wales.  *Id.* ¶ 2, Ex. A

28   (section 1 of the Memorandum of Association).  CDT Oxford's principal and only place of

1    business is in Cambourne, Cambridgeshire, England.  *Id.* ¶ 3.

2         CDT Oxford originally held the UK assets of Opsys (Compl. ¶ 6); it had intellectual

3    property and a research facility in Oxford.  As the Court knows from the prior action filed

4    by Sunnyside, "[b]eginning in July 2003, the CDT Oxford Limited facility in Oxford was

5    gradually shut down, and most of its employees were laid off.  Via press release, CDT, Inc.

6    announced that it would close the CDT Oxford Limited facility and 'move key scientists to

7    Cambridge as part of a new "High Efficiency Materials" research group,' consolidating the

8    Oxford and Cambridge resources 'under one roof.'"  *Sunnyside Dev. Co. v. Opsys Ltd.,*

9    No. C-05-553-MHP, 2007 WL 2462142, at *3 (N.D. Cal. Aug. 29, 2007) ("*Sunnyside I*

10   Rule 25(c) Opinion"; Dkt. 224; Request for Judicial Notice ("RJN") Ex. V) (citations

11   omitted).  Today CDT Oxford holds intellectual property, but it does not have employees or

12   operations in the UK or anywhere else.  CDT Oxford has never manufactured any product

13   of any kind or provided any service of any nature that could find its way through the stream

14   of commerce into California.  Brown Decl. ¶¶ 9, 12-16.

15        Although CDT Oxford is a wholly-owned subsidiary of CDT Ltd., CDT Oxford is a

16   corporation separate and distinct from CDT Ltd.  *Id.* ¶ 4.  (As this Court noted in

17   *Sunnyside I*, "CDT, Inc. maintains that Opsys Limited and Opsys UK [later renamed CDT

18   Oxford] were separate legal entities that at all times observed the proper corporate

19   formalities."  *Sunnyside I* Rule 25(c) Opinion at *3 (citing Declaration of Michael Black

20   ¶¶ 14-18) (RJN Ex. V at 313).)  CDT Oxford has its own management and board of

21   directors, and it keeps its own corporate minutes.  Brown Decl. ¶ 4.  It has books of

22   accounts, and bank accounts separate from those of CDT Ltd.  *Id.*  CDT Oxford and CDT

23   Ltd. each have their own audited accounts.  *Id.*  Each maintains its own share register.  *Id.*

24   Each has its own General Ledger.  *Id.*

25   **B.      CDT Oxford's lack of contact with the State of California.**

26        CDT Oxford has never done business in the State of California.  In particular:

27        •    It has never had employees resident in California.

28

1  • It has never had an office, telephone number or mailing address in California.

2  • It has never owned or leased any real property in California.

3  • It has never had any assets in California.

4  • It has never been registered or qualified to do business in the State of California.

5  • It therefore has never appointed an agent for service of process in California.

6  • It has never held a license issued by the State of California.

7  • It has never paid income, property, or use taxes to the State of California.

8  Brown Decl. ¶¶ 5-8.

9  **III.    ARGUMENT.**

10  **A.    Principles governing motions to dismiss for lack of personal jurisdiction.**

11  A plaintiff has the burden of establishing that the Court has personal jurisdiction

12  over a defendant. *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001) (citing

13  *Cubbage v. Merchant*, 744 F.2d 665, 667 (9th Cir. 1984)). In assessing a plaintiff's

14  showing, the Court may consider evidence presented in affidavits. *Unocal*, 248 F.3d at

15  922. The allegations in a plaintiff's complaint, if contradicted by a defendant's affidavits,

16  are insufficient. *See Pena v. Valo*, 563 F. Supp. 742, 747 (C.D. Cal. 1983) (holding that

17  plaintiff failed to make even a *prima facie* showing that the court had jurisdiction where

18  plaintiff attempted to rely on "the conclusory allegations of his complaint" in response to

19  the allegations set forth in defendants' affidavits).

20  Personal jurisdiction over a defendant is proper if it is permitted by a long-arm

21  statute and if the exercise of that jurisdiction does not violate federal due process. *Pebble*

22  *Beach Co. v. Caddy,* 453 F.3d 1151, 1154 (9th Cir. 2006) (citation omitted). California's

23  long-arm statute, Code of Civil Procedure section 410.10, extends the jurisdiction of the

24  state's courts to circumstances consistent with the state and federal constitutions. Thus, the

25  analysis focuses on constitutional limits rather than state law.

26  **B.    CDT Oxford lacks the minimum contacts necessary to create jurisdiction in the**

27  **State of California.**

28  Under the due process clause of the federal Constitution, a court does not have

1    jurisdiction over a foreign defendant unless that defendant has such "minimum contacts"

2    with the forum state that maintenance of a suit would not offend "traditional notions of fair

3    play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). In

4    *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414-15 (1984), the United

5    States Supreme Court set forth the standards for both general and specific jurisdiction. If a

6    defendant has sufficient "contacts" with the forum, it may be subject to suit there on all

7    claims wherever they arise (general jurisdiction). In other cases, the jurisdictional

8    sufficiency of the defendant's contacts depends on an assessment of the "relationship

9    among the defendant, the forum and the litigation" (specific jurisdiction). *Id.* at 414

10   (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). Neither general nor specific

11   jurisdiction over CDT Oxford exists here.

12   **1.      Sunnyside cannot establish general jurisdiction over CDT Oxford.**

13          "If the defendant's activities in the forum are substantial, continuous and systematic,

14   general jurisdiction is available; in other words, the foreign defendant is subject to suit even

15   on matters unrelated to his or her contacts to the forum." *Unocal*, 248 F.3d at 923 (citing

16   *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 446 (1952)). "The standard for

17   establishing general jurisdiction is 'fairly high' and requires that the defendant's contacts be

18   of the sort that approximate physical presence." *Bancroft & Masters, Inc. v. Augusta Nat'l*

19   *Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (citation omitted) (quoting *Brand v. Menlove*

20   *Dodge*, 796 F.2d 1070, 1073 (9th Cir. 1986)). To establish the "minimum contacts"

21   necessary to support general jurisdiction, Sunnyside must establish that CDT Oxford has

22   "continuous and systematic" contacts with California tantamount to doing business within

23   the state. *Helicopteros*, 466 U.S. at 416. Although Sunnyside's Complaint attempts to

24   invoke general jurisdiction by pleading a legal conclusion (Compl. ¶ 15), Sunnyside cannot

25   meet its burden of offering facts to support that conclusion.

26          As set forth above, CDT Oxford does not do business in California. It is

27   incorporated in the UK and has always had its registered office in England, as required by

28   its Memorandum of Association. Its principal and only place of business is in England. It

1   has never had employees resident in California.  It has never had an office, telephone

2   number, or mailing address in California.  It has never owned or lease any real property in

3   California.  It has never had any assets in California.  It has never registered or otherwise

4   qualified to do business in California, and therefore has never appointed an agent for

5   service of process in California.  It has never held a license issued by the State of

6   California.  It has never paid income, property, or use taxes to the State of California.

7   Furthermore, CDT Oxford never did anything except conduct research in the UK; it has

8   never manufactured any product or provided any service that could enter California through

9   the stream of commerce.  In short, CDT Oxford does not have the systematic business

10  contacts with California necessary to establish general jurisdiction.

11          Sunnyside makes some allegations of fact to support its assertion of general

12  jurisdiction.  But most of these concern CDT Ltd. rather than CDT Oxford, and to the

13  extent they pertain to CDT Oxford, they are not correct.  *Compare* Compl. ¶¶ 16-17 *with*

14  Brown Decl. ¶¶ 12-16.

15          In particular, Sunnyside claims that CDT Ltd.— not CDT Oxford—entered into

16  licensing agreements with various entities alleged to have ties to California.  Compl. ¶¶ 16-

17  17.  CDT Oxford did not enter into these licensing agreements (Brown Decl. ¶¶ 12-16), but

18  even if it had, and even if the licensees resided or did business in California, that would not

19  subject the licensor to personal jurisdiction.  *Red Wing Shoe Co. v. Hockerson-Halberstadt,*

20  *Inc.,* 148 F.3d 1355, 1361 (Fed. Cir. 1998); *Bancroft & Masters,* 223 F.3d at 1086 (holding

21  defendant's license agreements with two television networks and a handful of California

22  vendors insufficient to establish minimum contacts).  Thus, Sunnyside's allegations that

23  other entities licensed CDT Oxford's IP (Compl. ¶¶ 16-17) do not establish personal

24  jurisdiction over CDT Oxford.

25  **2.      Sunnyside cannot establish specific jurisdiction over CDT Oxford.**

26          Sunnyside also cannot establish specific jurisdiction.  The Supreme Court has held

27  that due process requires "fair warning" that a particular activity may subject a corporation

28  to the jurisdiction of a foreign sovereign.  *Burger King Corp. v. Rudzewicz,* 471 U.S. 462,

1    472 (1985) (citation omitted).  "Where a forum state seeks to assert specific jurisdiction

2    over an out-of-state defendant who has not consented to suit there, this 'fair warning'

3    requirement is satisfied if the defendant has 'purposefully directed' its activities at residents

4    of the forum…, and the litigation results from alleged injuries that 'arise out of or relate to'

5    those activities."  *Id.* (citations and footnotes omitted).  The Ninth Circuit has established a

6    three-part test "to evaluate the nature and quality of a defendant's contacts so as to

7    determine the availability of specific jurisdiction":

8           (1)    The nonresident defendant must do some act or consummate
           some transaction within the forum or perform some act by which he
9           purposefully avails himself of the privilege of conducting activities in the
           forum, thereby invoking the benefits and protections of its laws.
10

           (2)    The claim must be one which arises out of or results from
11          the defendant's forum-related activities.

12          (3)    Exercise of jurisdiction must be reasonable.

13    *Unocal*, 248 F.3d at 923 (citing *Gordy v. Daily News, L.P.*, 95 F.3d 829, 831-32 (9th Cir.

14    1996)).  "If any of the three requirements is not satisfied, jurisdiction in the forum would

15    deprive the defendant of due process of law."  *Pebble Beach,* 453 F.3d at 1155.

16          Sunnyside argues that the requirements for specific jurisdiction are satisfied because

17    (1) defendants entered into contracts with California residents that gave rise to Sunnyside's

18    action, and (2) "Defendants…committed tortious actions outside of the State targeted

19    against plaintiff in California."  Compl. ¶ 10.  Each of these arguments is addressed below.

20          **a.    Sunnyside cannot establish specific jurisdiction based on the 2002 and**

21    **2004 agreements with CDT Inc.**

22          Sunnyside alleges that CDT Oxford entered into three agreements with California

23    residents that subsequently gave rise to Sunnyside's claims:  a 2002 Transaction

24    Agreement, an August 2004 Settlement and Amendment Agreement ("Settlement

25    Agreement"), and a December 2004 Amended and Restated Settlement and Amendment

26    Agreement ("Amended Settlement Agreement").  Compl. ¶ 11.  Sunnyside alleges that two

27    of the parties to these agreements, Opsys US Corporation ("Opsys US") and Opsys 2

28    Corporation, were California residents.  But the residence of other entities does not create

1    jurisdiction over CDT Oxford.

2        **i.    Purposeful availment.**

3        Sunnyside's contract allegations do not satisfy the purposeful availment

4    requirement.  The Supreme Court has held, "If the question is whether an individual's

5    contract with an out-of-state party *alone* can automatically establish sufficient minimum

6    contacts in the other party's home forum, we believe the answer clearly is that it cannot."

7    *Burger King,* 471 U.S. at 478 (emphasis in original).  Sunnyside has not pled any of the

8    factors that courts weigh in determining the existence of jurisdiction based on a contract:

9    "[W]e have emphasized the need for a 'highly realistic' approach that recognizes that a

10   'contract' is 'ordinarily but an intermediate step serving to tie up prior business negotiations

11   with future consequences which themselves are the real object of the business transaction.'"

12   *Id.* at 479 (citation omitted).  "It is these factors—prior negotiations and contemplated

13   future consequences, along with the terms of the contract and the parties' actual course of

14   dealing—that must be evaluated in determining whether the defendant purposefully

15   established minimum contacts with the forum."  *Id.*

16       In *Burger King,* the Supreme Court found that Florida had personal jurisdiction over

17   an out-of-state defendant who had entered into a franchise contract with a Florida

18   corporation where that contract had a "substantial connection" with Florida.  *Id.*  The

19   contract created "a carefully structured 20-year relationship that envisioned *continuing and*

20   *wide-reaching contacts* with [the plaintiff] in Florida."  *Id.* at 480 (emphasis added).  The

21   parties had carried on "a continuous course of direct communications by mail and by

22   telephone."  *Id.* at 481.  The Court "emphasized that parties who 'reach out beyond one

23   state and create *continuing relationships and obligations* with citizens of another state' are

24   subject to regulation and sanctions in the other State for the consequences of their

25   activities."  *Id.* at 473 (emphasis added) (citation omitted).

26       Here, the three agreements on which Sunnyside relies did not result in a "substantial

27   connection" with California or "continuing and wide-reaching contacts" with California

28   citizens.  Indeed, one of the purposes of the agreements was to effect a clean separation of

1    operations in the UK from those in the US.  Cambridge Display Technology, Inc. ("CDT

2    Inc.") wanted in 2002 to acquire control of Opsys' UK-based assets, but not—for a number

3    of business reasons—Opsys' US assets.  Fyfe Decl. ¶¶ 4-8 (*Sunnyside I* Dkt. 205; RJN

4    Ex. Q at 186-87).  As a result, Opsys transferred its UK operations to Opsys UK Limited

5    (later renamed CDT Oxford); previously it had transferred its US operations to Opsys US.

6    *Id.* ¶ 8; *see also* Brown Decl. ¶ 10, Ex. B, at 5 (recital F of the 2002 Transaction

7    Agreement), 32 (clause 11.1); *Sunnyside I* Rule 25(c) Opinion at *11 ("It is undisputed that

8    CDT, Inc. at no time had any interest in Opsys Limited's US operations.  Accordingly, the

9    transaction was structured to avoid both the assets and liabilities of Opsys Limited's US

10   business—in other words, the entire operation.") (RJN Ex. V at 314).  Unlike the defendant

11   in *Burger King*, CDT Oxford contracted to *avoid* "continuing relationships and obligations"

12   with California citizens.

13       Sunnyside may argue that jurisdiction is proper simply because it was foreseeable

14   that Sunnyside would be harmed.  Even assuming, solely for the sake of argument, that

15   CDT Oxford could have foreseen such harm, this is inadequate to establish jurisdiction.

16   "Although it has been argued that foreseeability of causing *injury* in another State should be

17   sufficient to establish such [minimum] contacts there when policy considerations so require,

18   the Court has consistently held that this kind of foreseeability is not a 'sufficient

19   benchmark' for exercising personal jurisdiction."  *Burger King,* 471 U.S. at 474 (citing

20   *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 295 (1980)) (footnote omitted).

21   "Instead, 'the foreseeability that is critical to due process analysis…is that the defendant's

22   conduct and connection with the forum State are such that he should reasonably anticipate

23   being haled into court there.'"  *Id.* (quoting *World-Wide Volkswagen,* 444 U.S. at 297)).

24   "'[I]t is essential in each case that there be some act by which the defendant purposefully

25   avails itself of the privilege of conducting activities within the forum State, thus invoking

26   the benefits and protections of its laws.'"  *Id.* at 475 (citation omitted).

27       Here, CDT Oxford has not purposefully availed itself of the privilege of conducting

28   activities in California, and it could not reasonably have anticipated being sued in

1  California.  To the contrary, sections 36 and 37 of the 2002 Transaction Agreement

2  provide:

3       36.    Choice of governing law

4            This agreement is to be governed by and construed in accordance
          with English law.

5       37.    Jurisdiction

6

7            The courts of England are to have exclusive jurisdiction to settle any
dispute arising out of or in connection with this agreement.  Any
Proceeding may therefore be brought in the English courts.  This

8            jurisdiction agreement is irrevocable.

9  Brown Decl. ¶ 10, Ex. B, at 48.  Section 7.3 of the December 2004 Amended Settlement

10  Agreement states that sections 36 and 37 of the Transaction Agreement (the choice of law

11  and jurisdiction provisions quoted above) "shall apply to this agreement [the Amended

12  Settlement Agreement] as fully as if set forth herein."  Brown Decl. ¶ 11, Ex. C at 17.  (The

13  Amended Settlement Agreement amends and restates the Settlement Agreement in its

14  entirety.  *Id.* at 3.)  *See Burger King,* 471 U.S. at 481-82 (considering choice-of-law

15  provision in determining the existence of jurisdiction).

16       **ii.**     **Relationship between claims and contacts.**

17       Sunnyside's contract allegations also do not satisfy the requirement that the claim

18  arise out of or result from the defendant's forum-related activities.  "We measure this

19  requirement in terms of 'but for' causation."  *Bancroft & Masters,* 223 F.3d at 1088.  Here,

20  however, Sunnyside does not claim that, but for CDT Oxford's execution of the 2002

21  Transaction Agreement, the 2004 Settlement Agreement and the 2004 Amended Settlement

22  Agreement, Sunnyside would be able to satisfy its judgment against Opsys.  To the

23  contrary, Sunnyside targets a May 2005 transaction that is not addressed in the 2002 and

24  2004 agreements.  Sunnyside's counsel stated at the July 21, 2008 case management

25  conference in this matter that Sunnyside sought to levy against "one particular"

26  transaction—the May 2005 transaction.  Tr. of Proceedings 5:24-6:1 (Dkt. 24).  Counsel

27  said:  "[T]hat's the transaction we are trying to unwind."  *Id..* 6:19-20.  Referring to a

28  diagram of transactions in 2002, 2004, and 2005, counsel explained that the 2002 and 2004

1    transactions were "more for background." *Id.* 7:18. Thus, Sunnyside's claim does not arise

2    out of or result from the agreements on which it relies to establish jurisdiction. Because

3    Sunnyside cannot satisfy either this requirement or the purposeful availment requirement,

4    the fact that CDT Oxford was a party to the 2002 Transaction Agreement, the 2004

5    Settlement Agreement and the 2004 Amended Settlement Agreement does not subject it to

6    the Court's jurisdiction. *See Unocal,* 248 F.3d at 925 (deciding it was not necessary to

7    reach the reasonableness requirement where plaintiffs' evidence was insufficient to

8    establish either purposeful availment or a but-for relationship between plaintiff's claim and

9    defendant's contracts in the forum).

10    **b.    Sunnyside cannot establish specific jurisdiction based on tort**

11    **allegations.**

12    **i.    Purposeful availment.**

13    "[A] foreign act that is both aimed at and has effect in the forum state satisfies the

14    purposeful availment prong of the specific jurisdiction analysis." *Bancroft & Masters,*

15    223 F.3d at 1087 (citing *Calder v. Jones,* 465 U.S. 783 (1984)). To meet this "effects test,"

16    however, the defendant must have (1) "committed an intentional act, which was

17    (2) expressly aimed at the forum state," and (3) caused harm which is suffered and which

18    the defendant knows is likely to be suffered in the forum state. *Id.* (citation omitted). This

19    does not mean that a foreign act with foreseeable effects in the forum state always gives rise

20    to specific jurisdiction. *Id.* The Ninth Circuit has held that "something more" is required:

21    An act is "expressly aimed" at a forum state "when the defendant is alleged to have

22    engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a

23    resident of the forum state." *Id.* "'[E]xpress aiming' encompasses wrongful conduct

24    individually targeting a known forum resident." *Id.*

25    In *Bancroft & Masters,* the foreign defendant challenged the plaintiff's use of a

26    particular domain name by sending a letter to what was then the sole registrar of domain

27    names in the US. The sending of the letter triggered a dispute resolution policy that

28    effectively required the plaintiff either to sue or lose its domain name. *Id.* at 1084-85. The

1    court held that "[t]he letter was expressly aimed at California because it individually

2    targeted [the plaintiff], a California corporation doing business almost exclusively in

3    California." *Id.* at 1088.  Similarly, in *Panavision International v. Toeppen,* 141 F.3d 1316

4    (9th Cir. 1998), the defendant cybersquatter registered the plaintiff's trademark as part of a

5    domain name and demanded $13,000 from the plaintiff to release the domain name to it.

6    The court found that the defendant's acts were aimed at the plaintiff in California.  *Id.* at

7    1318-19.

8         In contrast, the "express aiming" requirement was not satisfied in *Pebble Beach Co.*

9    *v. Caddy,* where the Pebble Beach Company (the California golf resort) sued a defendant

10   who operated a bed and breakfast on a cliff above the pebbly beaches of England's south

11   shore.  The defendant called his operation "Pebble Beach" and operated a website at

12   www.pebblebeach-uk.com.  453 F.3d at 1153-54.  The court held that the defendant did not

13   expressly aim his conduct at California, regardless of the foreseeable effect of his website

14   and his use of "Pebble Beach" in the domain name.  *Id.* at 1156.  In *Schwarzenegger v.*

15   *Fred Martin Motor Co.,* 374 F.3d 797 (9th Cir. 2004), the plaintiff alleged that an Ohio car

16   dealership impermissibly used his image in a newspaper advertisement in Ohio.  *Id.* at 800.

17   The court held that, even though the advertisement might lead to harm in California, this

18   foreseeable effect did not give rise to personal jurisdiction because the advertisement was

19   expressly aimed at Ohio rather than California.  *Id.* at 807.

20        Here, none of the 2002, 2004 or 2005 transactions was expressly aimed at

21   California.  Even assuming *arguendo* that it was foreseeable that these transactions would

22   cause harm to Sunnyside, "something more" is required.  But Sunnyside has not shown

23   anything more here.  CDT Oxford did not "individually target" Sunnyside.  There are no

24   allegations of conduct similar to the letter in *Bancroft & Masters* or the demand for money

25   in *Panavision.*  Since filing its Complaint, Sunnyside has suggested that only the May 2005

26   transaction is at issue.  *See supra* pp. 9-10.  This is the transaction in which Opsys

27   transferred its interest in CDT Oxford to CDT Ltd.  *See, e.g.,* Compl. ¶ 51; *Sunnyside I* Rule

28   25(c) Opinion at *5 (*Sunnyside I* Dkt. 224; RJN Ex. V at 315).  Sunnyside alleges that

1   Opsys made this transfer to avoid Sunnyside's claim.  But, as Sunnyside concedes, the

2   transfer was planned in November 2004.  Compl. ¶ 50; *see also* Black Decl. ¶ 33

3   (*Sunnyside I* Dkt. 204-1; RJN Ex. P at 182).  This means the transfer was planned before

4   Sunnyside filed its complaint in *Sunnyside I* on December 14, 2004 (*Sunnyside I* Dkt. 1;

5   RJN Ex. A), and before those who planned the transfer knew of Sunnyside's claim.  *See*

6   Black Decl. ¶¶ 30-31 (*Sunnyside I* Dkt. 204-1; RJN Ex. P at 182); Fyfe Decl. ¶ 14

7   (*Sunnyside I* Dkt. 205; RJN Ex. Q at 188).  Furthermore, at the time the transfer was made,

8   the transferee—CDT Ltd.—was a defendant in *Sunnyside I.*  This Court eventually

9   dismissed CDT Ltd. with prejudice, but not until August 8, 2005.  *Sunnyside I* Dkt. 39; RJN

10  Ex. F.  Thus, one defendant (Opsys) made the May 2005 transfer to another defendant

11  (CDT Ltd.).  As this Court found in *Sunnyside I*, "[a]n asset transfer between defendants is

12  hardly an attempt to thwart a plaintiff's ability to collect."  *Sunnyside I* Rule 25(c) Opinion

13  at *11 (*Sunnyside I* Dkt. 224; RJN Ex. V at 324).  In short, the May 2005 transaction did

14  not "individually target" Sunnyside, and does not create jurisdiction as to CDT Oxford.

15          Sunnyside alleges that defendants structured the 2002 transaction to prevent

16  Sunnyside from obtaining any recourse against the assets transferred by Opsys or the

17  monies it received.  Compl. ¶ 12.  The Complaint relies on the following statement from

18  CDT Inc.'s 2004 Form 10-K:

19          The terms of the Transaction Agreement were entered into by the Company
            so that it could gain control of and economic interest in the UK assets and
20          operations of Opsys (which had been transferred to Opsys UK immediately
            prior to the transaction) in such a manner to avoid acquiring any interest in
21          any other assets or liabilities of Opsys.

22  *Id.*  But this Court has already ruled that "[t]his statement is unremarkable."  *Sunnyside I*

23  Rule 25(c) Opinion at *11 (*Sunnyside I* Dkt. 224; RJN Ex. V at 324).  This Court found:

24  "There is no indication that Opsys Limited's attempts to maintain its UK operations by

25  seeking financing from CDT, Inc. was specifically designed to dodge the liabilities of the

26  US operations.  Rather, Opsys Limited unsuccessfully sought a financing partner for Opsys

27  US at the same time it was working out its arrangement with CDT, Inc. regarding Opsys

28  UK."  *Id.*  If follows that CDT Oxford did not individually target Sunnyside by

1    participating in the 2002 transaction, which was not expressly aimed at Sunnyside.

2    Because Sunnyside cannot satisfy the "express aiming" requirement, it cannot show

3    purposeful availment.  Because it cannot show purposeful availment, it cannot establish

4    personal jurisdiction.  *See Pebble Beach,* 453 F.3d at 1155 (it was not necessary to consider

5    whether plaintiff's claim arose out of or resulted from defendant's forum-related activities,

6    or whether it would have been reasonable to exercise jurisdiction, where plaintiff had not

7    shown purposeful availment).  In any event, Sunnyside could not satisfy either of the other

8    two requirements for jurisdiction.

9        **ii.    Relationship between claims and contacts.**

10    The second requirement is that "the contacts constituting the purposeful availment

11    must be the ones that gave rise to the current suit." *Bancroft & Masters,* 223 F.3d at 1088.

12    Here, there is no evidence that, but for CDT Oxford's participation in the 2002, 2004 and

13    2005 transactions, Opsys would now be able to satisfy Sunnyside's judgment against it.

14    Although Opsys transferred its interest in CDT Oxford to CDT Ltd. in May 2005, that

15    interest had negligible value because CDT Ltd. had had, since October 2002, the right to

16    98% of the profits of CDT Oxford pursuant to its agreement to manage and fund the

17    operations of CDT Oxford.  Black Decl. ¶ 36 (*Sunnyside I* Dkt. 204-1; RJN Ex. P at 183).

18    Furthermore, the evidence indicates that, but for the 2002 transaction, Opsys would not

19    have been able to continue operations.  *See* Bunzel Decl. ¶ 18, Ex. M at OPS 07499-7500

20    (*Sunnyside I* Dkt. 185-3; RJN Ex. O at 160-61) (as of September 30, 2002, the book value

21    of Opsys' assets was £1.8 million; its liabilities exceeded £17 million; it had lost £19.7

22    million the previous year).

23        **iii.    Reasonableness.**

24    The third requirement for jurisdiction is reasonableness:

25    The reasonableness determination requires the consideration of several
      specific factors:  (1) the extent of the defendant's purposeful interjection into
26    the forum state, (2) the burden on the defendant in defending in the forum,
      (3) the extent of the conflict with the sovereignty of the defendant's state,
27    (4) the forum state's interest in adjudicating the dispute, (5) the most
      efficient judicial resolution of the controversy, (6) the importance of the

28

1    forum to the plaintiff's interest in convenient and effective relief, and (7) the
     existence of an alternative forum.

2

3    *Bancroft & Masters,* 223 F.3d at 1088.  It would not be reasonable here for the Court to

4    exercise jurisdiction.  The May 2005 transfer—the one Sunnyside seeks to unwind—

5    involves three UK corporations (Opsys, CDT Oxford, and CDT Ltd.).  Sunnyside has

6    already initiated insolvency proceedings in the UK against the judgment debtor, Opsys, and

7    a winding-up order was issued in those proceedings on May 14, 2008.  *In the Matter of*

8    *Opsys Ltd.,* No. 357 of 2008 (High Court of Justice, Companies Court) (RJN Ex. W); *see*

9    Joint Case Management Statement (Dkt. 20), at 1-2.  Furthermore, Sunnyside asserts, *inter*

10   *alia,* claims under UK law.  Compl. ¶¶ 88-98.  It specifically alleges violations of sections

11   238 and 423 of the UK Insolvency Act 1986.  *Id.*  But section 423(4) defines "court" for

12   purposes of section 423 as the High Court of England and Wales.  In addition, claims under

13   section 238 may be brought only by administrators and liquidators.  In view of these

14   factors, and because of the unique burden placed on a foreign national required to defend

15   itself locally (*see Asahi Metal Indus. Co. v. Super. Ct.,* 480 U.S. 102, 114 (1987)), asserting

16   jurisdiction over CDT Oxford would not comport with "fair play and substantial justice."

17   *Burger King,* 471 U.S. at 476 (quoting *Int'l Shoe,* 326 U.S. at 320).

18         For all these reasons, Sunnyside has not satisfied any of the requirements for

19   specific jurisdiction as to CDT Oxford.

20   **C.    Sunnyside cannot establish jurisdiction over CDT Oxford based on the Court's**

21   **jurisdiction over CDT Ltd.**

22         Sunnyside may argue that the Court has personal jurisdiction over CDT Oxford

23   because CDT Oxford's parent, CDT Ltd., has not contested personal jurisdiction.  To

24   establish jurisdiction on this basis, however, Sunnyside would have the high burden of

25   showing that CDT Oxford and CDT Ltd. operate as a single functioning entity.

26   Specifically, Sunnyside would need to show an alter ego, successor, or general agent

27   relationship between CDT Oxford  and CDT Ltd.  *See, e.g., Unocal*, 248 F.3d at 926 (alter

28   ego, agency); *Williams v. Bowman Livestock Equip. Co.,* 927 F.2d 1128, 1132 (10th Cir.

1   1991) (successor liability).  Sunnyside has not met and cannot meet this burden.

2   **1.      Sunnyside does not allege that CDT Oxford is the alter ego of or successor to**
3   **CDT Ltd.**

4           The alter ego test requires a plaintiff to prove that there is such a unity of interest
5   and ownership that the separate personalities of the two corporations no longer exist, and
6   that failure to disregard their separate identities would result in fraud or injustice.  *Unocal*,
7   248 F.3d at 926.  In addition, "[a] corporation's contacts with a forum may be imputed to its
8   successor if forum law would hold the successor liable for the actions of its predecessor."
9   *Williams,* 927 F.2d at 1132 (citation omitted).  Here, Sunnyside has already tried and failed
10  to show an alter ego or successor liability relationship among CDT Oxford, CDT Ltd., CDT
11  Holdings Limited (CDT Ltd.'s parent; "CDT Holdings") and CDT Inc. (CDT Holdings'
12  parent).  In *Sunnyside I*, Sunnyside attempted to hold CDT Ltd. liable as an alter ego for
13  alleged fraud and breach of lease by CDT Ltd.'s subsidiary, Opsys.  The Court rejected
14  Sunnyside's alter ego allegations not once but twice, the second time with prejudice.
15  *Sunnyside I* Dkt. 20 (RJN Ex. C), Dkt. 39 (RJN Ex. F).

16          After Sunnyside prevailed against Opsys at trial, it moved under Rule 25(c) of the
17  Federal Rules of Civil Procedure to add CDT Inc. to the action and the judgment.
18  *Sunnyside I* Dkt. 179 (RJN Ex. M).  Sunnyside argued, *inter alia,* that CDT Inc. was liable
19  as both an alter ego and a successor.  As CDT Inc. argued at the time, however, Sunnyside
20  did not even begin to pierce the corporate veil between Opsys and CDT Oxford, much less
21  the one separating those two corporations from CDT Ltd. (and CDT Ltd. from CDT
22  Holdings, and CDT Holdings from CDT Inc.).  *Sunnyside I* Dkt. 207, at 20 (RJN Ex. S at
23  229).  In denying Sunnyside's Rule 25(c) motion, this Court noted that Sunnyside's alter
24  ego arguments were poorly developed and stated, "In light of this court's previous orders
25  dismissing plaintiff's alter ego theories with prejudice, the court is skeptical as to whether
26  such an argument would be viable, if it were properly raised."  *Sunnyside I* Rule 25(c)
27  Opinion at *6 n.3 (*Sunnyside I* Dkt. 224; RJN Ex. V at 326 n.3).  This Court also rejected
28  Sunnyside's successor liability arguments (finding that Sunnyside had treated successor

1    liability as a species of alter ego liability). *Id.* at *6-12 & n.3 (RJN Ex. V at 316-26).

2    Sunnyside's appeal of this Court's order denying Sunnyside's Rule 25(c) motion is fully

3    briefed and awaiting oral argument in the Ninth Circuit (No. 07-16773).

4        In the current proceedings, Sunnyside does not allege in its Complaint—much less

5    prove—that CDT Oxford is the alter ego of CDT Ltd.  To the contrary, CDT Oxford is

6    separate and distinct from CDT Ltd.  CDT Oxford has its own management and board of

7    directors.  It keeps its own corporate minutes.  It has books of accounts, and bank accounts

8    separate from those of CDT Ltd.  CDT Oxford and CDT Ltd. each have their own audited

9    accounts.  Each maintains its own share register.  Each has its own General Ledger.  Brown

10   Decl. ¶ 4.

11       Sunnyside also does not allege that CDT Oxford is the successor of CDT Ltd.  In

12   particular, Sunnyside does not allege any transfer of assets from CDT Ltd. to CDT Oxford,

13   which is a prerequisite to application of successor liability.  *See Ray v. Alad Corp.,* 19 Cal.

14   3d 22, 28 (1977) (under the successor liability doctrine, a corporation that purchases the

15   assets of another corporation is not liable for the selling corporation's debts unless one of

16   four recognized exceptions apply).  In *Williams,* the court affirmed the dismissal of a

17   defendant for lack of personal jurisdiction, even though the district court had jurisdiction

18   over the defendant's alleged predecessor, because the defendant never purchased any

19   significant assets from the alleged predecessor and there was no basis for successor

20   liability.  927 F.2d at 1132.

21   **2.    Sunnyside has not shown any agency relationship between CDT Oxford and**

22   **CDT Ltd.**

23       Finally, Sunnyside has not shown an agency relationship between CDT Oxford and

24   CDT Ltd.  In *Unocal,* the Ninth Circuit considered claims that various subsidiary

25   companies' contacts with the forum state should be imputed to their parent company

26   because the subsidiaries acted as the parent's agent.  248 F.3d at 928-31.  *Unocal* held that

27   the agency test requires proof that the subsidiary functions as the parent's representative in

28   performing services that are so important to the parent that if the parent did not have a

1  representative to perform them, its own officials would undertake substantially similar

2  activities. *Id.* at 928 (citation omitted). Here, assuming that a parent's contacts may be

3  imputed to its subsidiary, Sunnyside nevertheless has not made the required showing. It

4  alleges, on information and belief, that CDT Ltd. is the agent and representative for CDT

5  Oxford in accordance with the 2002 Transaction Agreement. Compl. ¶ 6. But this

6  agreement only provides that CDT Ltd. will manage and fund CDT Oxford. Brown Decl.

7  ¶ 10, Ex. B, at 22 (clause 7). Sunnyside acknowledges as much. Compl. ¶¶ 24, 39. There

8  is no allegation—and no evidence—that CDT Ltd. performs any services for CDT Oxford

9  in California, let alone services that are so important that CDT Ltd.'s presence substitutes

10  for CDT Oxford's presence. *See Unocal,* 248 F.3d at 930.

11  **D.    CDT Oxford should also be dismissed for the reasons stated in the motion to**

12  **dismiss filed concurrently by CDT Ltd.**

13  CDT Oxford also urges the Court to dismiss it on the grounds urged by CDT Ltd. in

14  its separate motion. Rather than burden the Court with repetitive briefing, CDT Oxford

15  simply incorporates CDT Ltd.'s arguments by reference.

16  **IV.    CONCLUSION.**

17  For the foregoing reasons, CDT Oxford submits that this action should be dismissed

18  with prejudice as to it.

19  Dated: July 28, 2008.

20  PILLSBURY WINTHROP SHAW PITTMAN LLP
BRUCE A. ERICSON
21  ALICE KWONG MA HAYASHI
ELIANA P. KAIMOWITZ RODRIGUEZ
22  50 Fremont Street
Post Office Box 7880
23  San Francisco, CA  94120-7880

24  By _____/s/ Bruce A. Ericson_____

25  Bruce A. Ericson
Attorneys for Defendants
26  CAMBRIDGE DISPLAY TECHNOLOGY
LIMITED and CDT OXFORD LIMITED

27

28