1  PILLSBURY WINTHROP SHAW PITTMAN LLP
   BRUCE A. ERICSON #76342
2  ALICE KWONG MA HAYASHI #178522
   ELIANA P. KAIMOWITZ RODRIGUEZ #256712
3  50 Fremont Street
   Post Office Box 7880
4  San Francisco, CA  94120-7880
   Telephone:  (415) 983-1000
5  Facsimile:  (415) 983-1200
   bruce.ericson@pillsburylaw.com
6  alice.hayashi@pillsburylaw.com
   eliana.kaimowitz@pillsburylaw.com
7
   Attorneys for Defendants
8  CAMBRIDGE DISPLAY TECHNOLOGY LIMITED
   and CDT OXFORD LIMITED
9

10              UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12               SAN FRANCISCO DIVISION

13

14  SUNNYSIDE DEVELOPMENT           No. C-08-1780-MHP
    COMPANY LLC,
15                                  **DEFENDANT CAMBRIDGE
                                    DISPLAY TECHNOLOGY
16                    Plaintiff,    LIMITED'S MOTION TO DISMISS
                                    COMPLAINT**
16
         vs.
17                                  [Fed. R. Civ. P. 9(b), 12(b)(1), 12(b)(6)]
    CAMBRIDGE DISPLAY TECHNOLOGY
18  LIMITED, CDT OXFORD LIMITED,    Date:    September 8, 2008
    OPSYS LIMITED, and JOHN DOES I  Time:    2:00 pm
19  through V,                      Courtroom 15, 18th Floor
                                    Hon. Marilyn Hall Patel
20                    Defendants.

21
                                    Attached hereto:
22                                  1.    Supporting Memorandum

23                                  Filed herewith:
                                    1.    Request for Judicial Notice
24                                  2.    Foreign Authorities
                                    3.    Proposed Order
25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION................................................................v

ISSUES TO BE DECIDED.............................................................................vi

MEMORANDUM OF POINTS AND AUTHORITIES.......................................1

I.     INTRODUCTION.....................................................................................1

II.    STATEMENT OF THE CASE. ...............................................................2

     A.     Procedural history of *Sunnyside I*.................................................2

     B.     The October 2002 transactions. .....................................................3

     C.     The December 2004 transactions. ..................................................3

     D.     The May 2005 transactions. ..........................................................4

III.   ARGUMENT. ..........................................................................................4

     A.     Sunnyside's claims are barred by the doctrine of claim preclusion. ..............4

         1.     Identity or privity between the parties...............................5

         2.     A final judgment.................................................................5

         3.     Identity of claims. .............................................................6

     B.     Sunnyside's claims are barred by the doctrine of issue preclusion. ...............8

         1.     Identity or privity of parties...............................................9

         2.     Final judgment....................................................................9

         3.     Full and fair opportunity to litigate. ..................................9

         4.     Identity of issues..............................................................11

             a.     Sunnyside is precluded from re-litigating the issue of adequacy of consideration. ....................................11

             b.     Sunnyside is precluded from re-litigating the issue of fraudulent intent.............................................12

             c.     Because Sunnyside cannot demonstrate either inadequacy of consideration or fraudulent intent, all its claims must be dismissed.................................13

     C.     Sunnyside's fraud claim must be dismissed. ...............................................15

         1.     Sunnyside's fraud allegations fail to state a claim. ..........................15

| | | | |
|---|---|---|---|
| | | 2. | Sunnyside fails to state its fraud claim with particularity. ...............17 |
| | D. | Sunnyside's claims under the UK Insolvency Act 1986 must be dismissed. ......................................................................................17 |
| | E. | Sunnyside's claims based on the 2002 transaction are time-barred, as are its fraud and constructive trust claims based on the 2004 transaction......................................................................................18 |
| | | 1. | Sunnyside's first claim under Civil Code section 3439.05. ............18 |
| | | 2. | Sunnyside's second claim under Civil Code section 3439.04(a)(1)...................................................................19 |
| | | 3. | Sunnyside's third claim under Civil Code section 3439.07. ...........19 |
| | | 4. | Sunnyside's fourth claim under the UK Insolvency Act 1986.........20 |
| | | 5. | Sunnyside's fifth claim for common law fraud. ..............................20 |
| | | 6. | Sunnyside's sixth claim for a constructive trust..............................21 |
| IV. | CONCLUSION. ......................................................................................22 |

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Bank of the West v. Valley Nat'l Bank of Ariz.,*
    41 F.3d 471 (9th Cir. 1994) ................................................................. 15

*Bates v. Union Oil Co. of Cal.,*
    944 F.2d 647 (9th Cir. 1991) ................................................................. 4

*Costantini v. Trans World Airlines,*
    681 F.2d 1199 (9th Cir. 1982) ................................................................. 6

*Douglas v. Douglas,*
    103 Cal. App. 2d 29 (1951) ................................................................. 21

*Federated Dep't Stores v. Moite,*
    452 U.S. 394 (1981) ................................................................. 5

*Franklin v. USX Corp.,*
    87 Cal. App. 4th 615 (2001) ................................................................. 12

*Harnett v. Billman,*
    800 F.2d 1308 (4th Cir. 1986) ................................................................. 8

*Int'l Union of Operating Eng'rs-Employers Constr. Indus. Pension, Welfare*
    *& Training Trust Funds v. Karr,*
    994 F.2d 1426 (9th Cir. 1993) ................................................................. 6, 7, 8

*Jacobs v. CBS Broadcasting Inc.,*
    291 F.3d 1173 (9th Cir. 2002) ................................................................. 5

*Levy v. Cohen,*
    19 Cal. 3d 165 (1977) ................................................................. 5

*Luxliner P.L. Export Co. v. RDI/Luxliner, Inc.,*
    13 F.3d 69 (3d Cir. 1993) ................................................................. 9

*Masson v. New Yorker Magazine, Inc.,*
    85 F.3d 1394 (9th Cir. 1996) ................................................................. 5

*Parklane Hosiery Co. v. Shore,*
    439 U.S. 322 (1979). ................................................................. 10

*Semegen v. Weidner,*
    780 F.2d 727 (9th Cir. 1985) ................................................................. 17

*Shaw v. Hahn,*
    56 F.3d 1128 (9th Cir. 1995) ................................................................. 9

*Steen v. John Hancock Mut. Life Ins. Co.,*
    106 F.3d 904 (9th Cir. 1997) ................................................................. 9, 11

*Stewart v. U.S. Bancorp,*
    297 F.3d 953 (9th Cir. 2002) ........................................................................ 5

*Sunnyside Dev. Co. v. Opsys Ltd.,*
    No. C-05-553-MHP, 2005 WL 1876106 (N.D. Cal. Aug. 8, 2005) ........................... 2

*Tahoe-Sierra Preservation Council, Inc. v. Tahoe Reg'l Planning Agency,*
    322 F.3d 1064 (9th Cir. 2003) ........................................................ 5, 6, 8

*United States ex rel. Barajas v. Northrop Corp.,*
    147 F.3d 905 (9th Cir. 1998) ........................................................................ 6

*Younger v. Jensen,*
    26 Cal. 3d 397 (1980) ........................................................................ 5

## Statutes and Codes

California Civil Code
    Section 1709 ........................................................................ 15
    Section 1710 ........................................................................ 15
    Section 1710(3) ........................................................................ 16
    Section 3439 ........................................................................ 12
    Section 3439.04(a)(1) ........................................................ 14, 19
    Section 3439.05 ........................................................ 14, 18
    Section 3439.07 ........................................................................ 19
    Section 3439.07(a)(1) ........................................................................ 19
    Section 3439.09(a) ........................................................................ 19
    Section 3439.09(b) ........................................................................ 18

California Code of Civil Procedure
    Section 338(d) ........................................................................ 20
    Section 708.210 ........................................................................ 22
    Section 708.230(a)(1) ........................................................................ 21

UK Insolvency Act 1986
    Section 238 ........................................................ 14, 17, 18, 20
    Section 238(4) ........................................................................ 14
    Section 240 ........................................................................ 20
    Section 423 ........................................................ 14, 18
    Section 423(1) ........................................................................ 14
    Section 423(3) ........................................................................ 15
    Section 423(4) ........................................................................ 18

## Rules and Regulations

Federal Rules of Civil Procedure
    Rule 9(b) ........................................................ vi, 5, 17
    Rule 12(b)(1) ........................................................ 1, vi, 18
    Rule 12(b)(2) ........................................................................ vi
    Rule 12(b)(6) ........................................................................ 5
    Rule 25(c) ........................................................................ 3
    Rule 69(a) ........................................................................ 3

1    **NOTICE OF MOTION AND MOTION**

2    TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3    PLEASE TAKE NOTICE that on Monday, September 8, 2008, at 2:00 p.m., before

4    the Honorable Marilyn Hall Patel, United States District Judge, in Courtroom 15,

5    18th Floor, 450 Golden Gate Avenue, San Francisco, California, defendant **CAMBRIDGE**

6    **DISPLAY TECHNOLOGY LIMITED** ("CDT Ltd.") will move and hereby does move,

7    pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (unless otherwise noted,

8    all references to "Rules" herein are to the Federal Rules of Civil Procedure) to dismiss the

9    Complaint filed by plaintiff Sunnyside Development Company LLC ("Sunnyside") on

10    April 3, 2008 (Dkt. 1), for failure to state a claim upon which relief can be granted.  CDT

11    Ltd. also moves pursuant to Rule 12(b)(1) to dismiss Sunnyside's claim under section 423

12    of the United Kingdom's Insolvency Act 1986 for lack of subject matter jurisdiction, and

13    pursuant to Rule 9(b) to dismiss Sunnyside's fifth cause of action for failure to plead fraud

14    with particularity.

15    This motion is made on the grounds that Sunnyside's claims are barred by claim

16    preclusion; Sunnyside's claims are barred by issue preclusion; Sunnyside's fraud

17    allegations fail to state a claim; Sunnyside fails to plead fraud with particularity; Sunnyside

18    fails to state a claim under section 238 of the UK Insolvency Act 1986; this Court does not

19    have subject matter jurisdiction of claims under section 423 of the UK Insolvency Act

20    1986; and certain of Sunnyside's claims are barred by the applicable statutes of limitations.

21    This motion is based on this notice of motion and motion, the memorandum that follows,

22    the request for judicial notice filed herewith, all pleadings and records on file in this action,

23    and any other arguments and evidence presented to this Court at or before the hearing on

24    this motion.

25

26

27

28

1
## ISSUES TO BE DECIDED

2        1.        Does the doctrine of claim preclusion bar all of Sunnyside's claims?

3    *See* Part III.A below.

4        2.        Does the doctrine of issue preclusion bar all of Sunnyside's claims?

5    *See* Part III.B below.

6        3.        Should Sunnyside's common-law fraud claim be dismissed for failure to

7    state a claim because it does not adequately allege scienter, intent to induce reliance,

8    justifiable reliance or damages causally connected to the alleged fraud, and for failure to

9    plead with the particularity required by Rule (9b)?  *See* Part III.C below.

10        4.        Should Sunnyside's claim under the UK's Insolvency Act 1986 be dismissed

11    because Sunnyside is not an administrator or liquidator under section 238 of that Act, and

12    because exclusive jurisdiction of claims under section 423 of that Act is vested in the High

13    Court of England and Wales?  *See* Part III.D below.

14        5.        Do the applicable statutes of limitations bar all claims based on the 2002

15    transactions and all fraud and constructive trust claims based on the 2004 transactions?

16    *See* Part III.E below.

17

18

19

20

21

22

23

24

25

26

27

28

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    INTRODUCTION.**

3         Anyone reading the complaint in this action against this Court's orders in the prior

4    action must agree with Yogi Berra that "it's déjà vu all over again."  *See*

5    http://www.yogiberra.com/yogi-isms.html, last accessed July 28, 2008.  Without really

6    even attempting to explain itself, Sunnyside here recycles factual allegations and legal

7    theories that this Court has already found wanting in several orders—one of which

8    Sunnyside never appealed, and the other of which is currently before the Ninth Circuit.

9         All six of Sunnyside's claims here are barred by the doctrine of claim preclusion.

10   Sunnyside asserted or could have asserted all these fraud-based claims back in 2005, when

11   this Court dismissed Sunnyside's claims against CDT Ltd. with prejudice, an order that

12   Sunnyside never appealed.

13        All six of Sunnyside's claims here also are barred by the doctrine of issue

14   preclusion.  The gist of each claim is adequacy of consideration or fraudulent intent, or

15   both—but this Court resolved those issues against Sunnyside in its Rule 25(c) Order of

16   August 29, 2007, which order is currently on appeal to the Ninth Circuit, fully briefed and

17   awaiting oral argument.

18        Sunnyside's fourth claim (common-law fraud) fails to state a claim because it does

19   not allege at all (let alone with particularity) the elements of scienter, intent to induce

20   reliance, justifiable reliance and damages causally connected to the alleged fraud.

21        Sunnyside's fifth claim (under the UK Insolvency Act 1986) fails to state a claim

22   because Sunnyside is not an administrator or liquidator appointed pursuant to that Act.  The

23   Court also lacks subject matter jurisdiction over portions of this claim, because the Act

24   gives exclusive jurisdiction over those portions to the High Court of England and Wales.

25        Finally, all six of Sunnyside's claims are barred by the statute of limitations to the

26   extent they are based on the 2002 transactions, as are the fraud and constructive trust claims

27   to the extent they are based on the 2004 transactions.

28        For all these reasons, this Complaint should be dismissed—with prejudice.

1  **II.    STATEMENT OF THE CASE.**

2         In this action ("*Sunnyside II*") Sunnyside purports to state six claims against

3  defendants CDT Ltd., CDT Oxford Limited ("CDT Oxford"), and Opsys Limited

4  ("Opsys").  The gravamen of all six is that Opsys fraudulently conveyed its assets in the

5  United Kingdom ("UK") to CDT Oxford and then to CDT Ltd.  Compl., filed Apr. 3, 2008

6  (Dkt. 1).  If this sounds familiar, it should because we have been there before—in

7  *Sunnyside I.*

8  **A.    Procedural history of *Sunnyside I.***

9         This is not the first time that Sunnyside has sued CDT Ltd. for fraud.  *See Sunnyside*

10  *Dev. Co. v. Opsys Ltd.,* No. C-05-553-MHP (*"Sunnyside I"*), *appeal pending,* No. 07-

11  16773 (9th Cir.).  In *Sunnyside I,* Sunnyside sued CDT Ltd. and Opsys for both fraud and

12  breach of lease.  *Sunnyside I* Dkt. 1 (Request for Judicial Notice ("RJN") Ex. A).  After first

13  dismissing with leave to amend (RJN Ex. C), this Court then dismissed *with prejudice* both

14  claims against CDT Ltd. and the fraud claim against Opsys.  Order filed Aug. 8, 2005

15  (*Sunnyside I* Dkt. 39; RJN Ex. F), reported as *Sunnyside Dev. Co. v. Opsys Ltd.,* No. C-05-

16  553-MHP, 2005 WL 1876106 (N.D. Cal. Aug. 8, 2005) ("August 2005 Order").  Sunnyside

17  did not appeal that ruling, and the time to appeal has long since run.

18         Sunnyside then moved to file a second amended complaint, seeking to name

19  Cambridge Display Technology, Inc. ("CDT Inc.")—Opsys' and CDT Ltd.'s ultimate

20  parent company at the time—as an additional defendant on a successor liability theory.

21  *Sunnyside I* Dkt. 48 (RJN Ex. G).  This Court ruled that Sunnyside's request to join CDT

22  Inc. was premature and denied the request without prejudice, subject to renewal if and when

23  Opsys' primary liability was established.  *Sunnyside I* Dkt. 57, at 7 (RJN Ex. H).

24         Thereafter, Sunnyside took extensive discovery about transactions involving CDT

25  Inc., CDT Ltd., CDT Oxford and Opsys.  *See, e.g., Sunnyside I* Dkt. 68-70 (Sunnyside

26  obtained a court order compelling the production of documents relating to the 2002

27  transaction) (RJN Ex. I-K).  Sunnyside eventually obtained a jury verdict against Opsys for

28  breach of lease.  *Sunnyside I* Dkt. 166 (RJN Ex. L).  Sunnyside then moved under Rules

1    25(c) and 69(a) to add CDT Inc. as a party to the action and to the judgment (the "Rule

2    25(c) Motion"). *Sunnyside I* Dkt. 179 (RJN Ex. M). The transfers that Sunnyside alleges to

3    be fraudulent in this action are the same transfers that Sunnyside relied upon in arguing, in

4    its Rule 25(c) Motion in *Sunnyside I*, that CDT Inc. was liable as a successor for the

5    judgment against Opsys.

6         While the Rule 25(c) Motion was pending, this Court entered judgment against

7    Opsys for $4.9 million plus costs. *Sunnyside I* Dkt. 213 (RJN Ex. T). On August 29, 2007,

8    this Court denied Sunnyside's Rule 25(c) Motion. Rule 25(c) Order (*Sunnyside I* Dkt. 224,

9    RJN Ex. V), reported as *Sunnyside Dev. Co. v. Opsys Ltd.,* No. C-05-553-MHP, 2007 WL

10   2462142 (N.D. Cal. Aug. 29, 2007). Sunnyside filed a notice of appeal from this order,

11   which is now fully briefed and awaiting oral argument. *Sunnyside Dev. Co. v. Opsys Ltd.,*

12   No. 07-16773 (9th Cir.).

13        Given this procedural history, it is interesting to compare what Sunnyside alleges

14   here, in *Sunnyside II*, with what the Court has already determined in *Sunnyside I*:

15   **B.    The October 2002 transactions.**

16        The Complaint in *Sunnyside II* makes these principal allegations about the October

17   2002 transactions:

18   •    Opsys transferred its UK assets and operations to CDT Oxford (then called Opsys

19        UK). Compl. ¶ 37. *Compare* Rule 25(c) Order, RJN Ex. V at 311-12.

20   •    CDT Inc. acquired a 16% equity interest in Opsys UK for $2.5 million. Compl.

21        ¶ 39. *Compare* Rule 25(c) Order, RJN Ex. V at 312.

22   •    CDT Ltd. agreed to manage and fund Opsys UK's operations in exchange for 98%

23        of Opsys UK's profits, if any. Compl. ¶ 24. *Compare* Rule 25(c) Order, RJN Ex. V

24        at 312.

25   •    CDT Ltd. paid Opsys $2 million for a sublicense to Opsys' intellectual property

26        ("IP"). Compl. ¶ 38. *Compare* Rule 25(c) Order, RJN Ex. V at 312.

27   **C.    The December 2004 transactions.**

28        The Complaint in *Sunnyside II* essentially glosses over the December 2004

1    transactions.  See Compl. ¶¶ 46-47.  The Court in *Sunnyside I*, however, dug into these

2    transactions in some detail, noting for example that CDT Inc. acquired the equity of Opsys

3    in exchange for 931,633 shares of newly public CDT Inc. stock.  *See* Rule 25(c) Order, RJN

4    Ex. V at 313-14.

5    **D.    The May 2005 transactions.**

6            The Complaint in *Sunnyside II* makes this principal allegation about the May 2005

7    transactions (which it concedes were planned in November 2004, before Sunnyside filed

8    *Sunnyside I*, see Compl. ¶¶ 50-51):

9    •    Opsys transferred its 84% interest in CDT Oxford to CDT Ltd.  Compl. ¶¶ 25, 51.

10          *Compare* Rule 25(c) Order, RJN Ex. V at 315, 324.

11          The Complaint in *Sunnyside II* essentially glosses over the other aspects of the May

12   2005 transactions.  *See* Compl. ¶¶ 50-56.  The Court in *Sunnyside I*, however, dug into

13   these transactions in some detail, noting:

14   •    CDT Inc. transferred its 16% interest in CDT Oxford to CDT Ltd.  Rule 25(c)

15          Order, RJN Ex. V at 315, 324.

16   •    CDT Inc. transferred its 100% interest in Opsys to CDT Ltd.  Rule 25(c) Order, RJN

17          Ex. V at 315, 324.

18          Thus, the Rule 25(c) Order in *Sunnyside I* deals with all the principal allegations of

19   the Complaint in *Sunnyside II*—and then some.

20   **III.    ARGUMENT.**

21   **A.    Sunnyside's claims are barred by the doctrine of claim preclusion.**

22          This Court dismissed with prejudice Sunnyside's fraud claims against CDT Ltd. in

23   *Sunnyside I*.  August 2005 Order (*Sunnyside I* Dkt. 39; RJN Ex. F).  Under the doctrine of

24   claim preclusion, this order bars re-litigation of Sunnyside's fraud claims here.  Because all

25   Sunnyside's causes of action sound in fraud, all its claims are barred.

26          In a diversity action, the forum state's law applies to determine the preclusive effect

27   of a previous judgment.  *Bates v. Union Oil Co. of Cal.,* 944 F.2d 647, 649 (9th Cir. 1991).

28   Under California law, the preclusive effect of a prior federal judgment is governed by

1  federal law.  *See id.* (citing *Levy v. Cohen,* 19 Cal. 3d 165, 172-73 (1977)); *Jacobs v. CBS*

2  *Broadcasting Inc.,* 291 F.3d 1173, 1177 (9th Cir. 2002) (citing *Younger v. Jensen,* 26 Cal.

3  3d 397, 411 (1980)).  Claim preclusion applies under federal law where there is (1) identity

4  or privity between the parties, (2) a final judgment on the merits and (3) identity of claims.

5  *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Reg'l Planning Agency,* 322 F.3d 1064,

6  1077 (9th Cir. 2003) (citations omitted).  All three elements are satisfied here.

7  **1.**    **Identity or privity between the parties.**

8      This is easy.  Sunnyside sued CDT Ltd in *Sunnyside I;* Sunnyside is now suing CDT

9  Ltd. in *Sunnyside II*.  CDT Oxford was not a party to *Sunnyside I* but it is in privity with

10  CDT Ltd.  *See Tahoe-Sierra,* 322 F.3d at 1081 (privity may exist "'when there is sufficient

11  commonality of interest'") (citation omitted).  CDT Oxford has the same interest here that

12  CDT Ltd. had in *Sunnyside I* in rebutting Sunnyside's claims that the transfer of Opsys'

13  assets was fraudulent.  Indeed, Sunnyside has now brought the same claims against both

14  CDT Ltd. and CDT Oxford.  Moreover, this is not a case where res judicata is applied

15  offensively, by a plaintiff against a defendant or its privy.  Instead, defendant CDT Oxford

16  seeks to apply res judicata defensively, against the very same plaintiff who has already had

17  an opportunity to litigate the very same claim it now asserts again.  *Cf. Masson v. New*

18  *Yorker Magazine, Inc.,* 85 F.3d 1394, 1400 (9th Cir. 1996) (defensive collateral estoppel

19  applies "'when a defendant seeks to prevent a plaintiff from asserting a claim the plaintiff

20  has previously litigated and lost against another defendant'") (citation omitted).

21  **2.**    **A final judgment.**

22      The August 2005 Order in *Sunnyside I* dismissed Sunnyside's claims against CDT

23  Ltd. with prejudice, in response to Opsys' motion to dismiss under Rules 9(b) and 12(b)(6)

24  of the Federal Rules of Civil Procedure.  "Supreme Court precedent confirms that a

25  dismissal for failure to state a claim under Rule 12(b)(6) is a 'judgment on the merits' to

26  which res judicata applies."  *Stewart v. U.S. Bancorp,* 297 F.3d 953, 957 (9th Cir. 2002)

27  (citing *Federated Dep't Stores v. Moite,* 452 U.S. 394, 399 n.3 (1981)).  "The phrase 'final

28  judgment on the merits' is often used interchangeably with 'dismissal with prejudice.'"  *Id.*

1  at 956 (citations omitted).  Hence, the August 2005 Order is a final judgment for purposes

2  of claim preclusion.

3  **3.    Identity of claims.**

4        The Ninth Circuit considers the following factors:

5        "(1) [W]hether rights or interests established in the prior judgment
         would be destroyed or impaired by prosecution of the second action;
6        (2) whether substantially the same evidence is presented in the two actions;
         (3) whether the two suits involve infringement of the same right; and
7        (4) whether the two suits arise out of the same transactional nucleus of
         facts."

8

9  *Int'l Union of Operating Eng'rs-Employers Constr. Indus. Pension, Welfare & Training*

10 *Trust Funds v. Karr,* 994 F.2d 1426, 1429 (9th Cir. 1993) (quoting *Costantini v. Trans*

11 *World Airlines,* 681 F.2d 1199, 1201-02 (9th Cir. 1982)).  "'The last of these criteria is the

12 most important.'"  *Id.* (*quoting Costantini,* 681 F.2d at 1202 (footnote omitted)).

13        "'Whether two events are part of the same transaction or series depends on whether

14 they were related to the same set of facts and whether they could conveniently be tried

15 together.'"  *Id.* (citation omitted).  The doctrine of res judicata "is motivated primarily by

16 the interest in avoiding repetitive litigation, conserving judicial resources, and preventing

17 the moral force of court judgments from being undermined."  *Id.* at 1430 (internal quotation

18 marks and citation omitted).  "For this reason, res judicata bars not only all claims that were

19 actually litigated, but also all claims that 'could have been asserted' in the prior action."  *Id.*

20 (citation omitted).   The Ninth Circuit has elaborated as follows:

21        Res judicata bars relitigation of all grounds of recovery that were
         asserted, *or could have been asserted,* in a previous action between the
22       parties, where the previous action was resolved on the merits.  It is
         immaterial whether the claims asserted subsequent to the judgment were
23       actually pursued in the action that led to the judgment; rather, *the relevant
         inquiry is whether they could have been brought.*

24

25 *Tahoe-Sierra,* 322 F.3d at 1078 (quoting *United States ex rel. Barajas v. Northrop Corp.,*

26 147 F.3d 905, 909 (9th Cir. 1998) (citations omitted)) (emphasis added).

27        In *Karr,* the court held that an action by employee benefit trust funds to recover

28 accurate payments from an employer arose out of the same transaction as an earlier action

1    by the trust funds to collect delinquent payments for the same time period.  994 F.2d at

2    1429.  The court reasoned, *inter alia,* that the two actions involved overlapping time

3    periods and that the claim for accurate payments and the claim for delinquent payments

4    could conveniently have been tried together.  *Id.* at 1429-30.

5         Here, Sunnyside's fraudulent conveyance claims arise out of the same transactional

6    nucleus of facts as Sunnyside's fraud claims in *Sunnyside I.*  Both sets of claims arise out of

7    the transactions in which CDT Ltd. obtained management control of CDT Oxford and then

8    equity ownership of CDT Oxford and Opsys.  In both cases, Sunnyside alleges that

9    defendants structured these transactions to obtain Opsys' assets without its liabilities, and to

10   avoid Sunnyside's claim.  For example, Sunnyside alleged in its first amended complaint in

11   *Sunnyside I* that "one of the *SINE QUA NON* conditions which CDT created for the

12   purchase of Opsys Ltd. was that Opsys Ltd. somehow get rid of its debt burdens owed to

13   plaintiff under this lease."  *Sunnyside I* Dkt. 21 ¶ 11 (RJN Ex. D at 42) (emphasis in

14   original).  Sunnyside also alleged that "defendants…intended all along to pawn off their

15   debts under the lease on a straw man subsidiary, 'Opsys USA,' which defendants intended

16   to set up as a straw man *with no viability whatsoever.*"  *Id.* ¶ 15 (RJN Ex. D at 44)

17   (emphasis in original).

18        Now, in *Sunnyside II,* Sunnyside alleges similarly that "Defendants specifically

19   structured the 2002 transaction in a manner to deprive the California creditors—including

20   specifically Sunnyside—from obtaining recourse against the assets transferred by Opsys (or

21   the monies paid by CDT)."  Compl. ¶ 12; *see also id.* ¶ 34 ("A substantial purpose of

22   Opsys's entry into the transaction was to place the Opsys IP out of the reach of Opsys's

23   California's creditors, including the $6 million liability to Sunnyside….").  Whether or not

24   Sunnyside's current causes of action are the same causes of action actually litigated in

25   *Sunnyside I,* they "could have been asserted" in *Sunnyside I.  See Karr,* 994 F.2d at 1430.

26   They involve the same time period and the same series of complex transactions, they could

27   have been conveniently litigated in *Sunnyside I,* and it would have conserved judicial

28   resources—as well as those of the parties—to have done so.

1   "Actual knowledge of a potential claim is not a requirement for application of the

2   rules of merger and bar." *Harnett v. Billman,* 800 F.2d 1308, 1313 (4th Cir. 1986). "For

3   purposes of res judicata, it is not necessary to ask if the plaintiff knew of his present claim

4   at the time of the former judgment, for it is the existence of the present claim, not party

5   awareness of it, that controls." *Id.* Thus, even if Sunnyside did not know of the May 2005

6   transaction before entry of the August 2005 Order, it may not avoid preclusion of its claims

7   relating to the May 2005 transaction on this basis. Sunnyside claims that "CDT"

8   fraudulently concealed the May 2005 transaction (Compl. ¶ 53), but as discussed below

9   (*see* Part III.C), Sunnyside fails even to state a claim for fraud.

10   Finally, it is immaterial whether the other factors considered in determining identity

11   of claims apply. In *Karr,* the Ninth Circuit held that "[t]he fact that some different evidence

12   may be presented in this action…does not defeat the bar of res judicata. We have

13   emphasized that the factors cited in *Costantini* are 'tools of analysis, not requirements.'"

14   994 F.2d at 1430 (citation omitted). Furthermore, "[w]e have previously applied the

15   doctrine of res judicata on the ground that the two claims arose out of the same transaction,

16   without reaching other factors cited in *Costantini.*" *Id.* (citing cases); *see also Tahoe-*

17   *Sierra,* 322 F.3d at 1077-78 (considering only whether the two suits at issue arose from the

18   same transactional nucleus of facts in determining whether claims were identical).

19   For all these reasons, the identity of claims requirement is satisfied. As in *Tahoe-*

20   *Sierra,* Sunnyside here "has returned to court and filed a new action essentially seeking

21   relief from the same alleged wrongs it unsuccessfully protested before." *Id.* at 1078.

22   Sunnyside's claims should be dismissed under the doctrine of claim preclusion.

23   **B.    Sunnyside's claims are barred by the doctrine of issue preclusion.**

24   Sunnyside's claims also are barred by the doctrine of issue preclusion. In its Rule

25   25(c) Order, RJN Ex. V, this Court already decided *all* the principal issues raised here.

26   Sunnyside is not entitled to re-litigate those issues now.

27   Issue preclusion applies when an issue is "actually litigated and necessarily decided,

28   after a full and fair opportunity for litigation, in a prior proceeding." *Shaw v. Hahn,* 56 F.3d

1  1128, 1131 (9th Cir. 1995) (citation omitted).  "The party asserting collateral estoppel

2  [issue preclusion] must first show that the estopped issue is identical to an issue litigated in

3  a previous action."  *Steen v. John Hancock Mut. Life Ins. Co.,* 106 F.3d 904, 912 (9th Cir.

4  1997) (internal quotation marks and citation omitted).  Issue preclusion requires a final

5  judgment on the merits.  *Id.* (citation omitted).  The doctrine applies "not only against

6  actual parties to prior litigation, but also against a party that is in privity to a party in

7  previous litigation."  *Id.* (citing *Shaw,* 56 F.3d at 1131).  We discuss each of these elements

8  below, in this order:  (1) identity or privity of parties; (2) final judgment; (3) full and fair

9  opportunity to litigate; and (4) identity of issues.

10  **1.      Identity or privity of parties.**

11       Here, the party against whom issue preclusion is asserted—Sunnyside—was a party

12  to *Sunnyside I,* so the requirement of identity or privity of parties is satisfied.

13  **2.      Final judgment.**

14       The requirement of a final judgment is satisfied.  In *Steen,* the Ninth Circuit held

15  that the determination of an issue on a motion for summary judgment is sufficient to satisfy

16  the requirement that an issue actually have been litigated.  106 F.3d at 912.  This Court

17  applied the standards governing summary judgment motions to Sunnyside's Rule 25(c)

18  Motion.  Rule 25(c) Order at 9 (citing *Luxliner P.L. Export Co. v. RDI/Luxliner, Inc.,*

19  13 F.3d 69, 72-73 (3d Cir. 1993), and its holding that "where a Rule 25(c) decision

20  'effectively imposes liability,' the court should conduct an evidentiary hearing unless the

21  standards for summary judgment have been met"), 17 ("In light of the weakness of

22  plaintiff's arguments, however, and the undisputed facts in the record, the court holds as a

23  matter of law that CDT, Inc. is not a proper defendant in this action."), RJN Ex. V at 317,

24  325.  Moreover, the Rule 25(c) Order, like a final judgment on the merits, was final and

25  immediately appealable (and was immediately appealed).  *See Sunnyside Dev. Co. v. Opsys*

26  *Ltd.,* No. 07-16773 (9th Cir.).

27  **3.      Full and fair opportunity to litigate.**

28       The requirement of a "full and fair opportunity" to litigate an issue is also satisfied.

1    In determining this, the courts have considered whether there are procedural opportunities

2    available in the second action that were not available in the first that might cause a different

3    result, and whether the party had sufficient incentive litigate the issue fully and vigorously

4    in the first action.  *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 332 (1979).

5         Sunnyside has had ample procedural opportunities to pursue its fraud claims in

6    *Sunnyside I.*  On appeal from the Rule 25(c) Order, Sunnyside has complained that it was

7    not permitted discovery and an evidentiary hearing.  But Sunnyside *chose* to proceed by

8    motion rather than filing a new action.  And it was *Sunnyside* who asked this Court to

9    decide its motion summarily, requesting discovery and an evidentiary hearing only in the

10   alternative.  Rule 25(c) Motion at 22:8-10, 22:18-19, 23:15-18 (*Sunnyside I* Dkt. 179; RJN

11   Ex. M at 134-35).  Midway through the hearing on its Rule 25(c) Motion, Sunnyside

12   changed course and pushed for further proceedings, but only after it became apparent that

13   the Court might deny the motion.  Even then, Sunnyside did not specify what discovery it

14   sought.  *Sunnyside I* Dkt. 218, at 51 (RJN Ex. U at 286) .  Furthermore, Sunnyside *did* take

15   discovery of the transactions at issue.  Sunnyside demanded, for example, documents

16   relating to the 2002 transaction and obtained a court order compelling their production.

17   *Sunnyside I* Dkt. 68-70 (RJN Exs. I-K).[1]  In any event, this Court denied the Rule 25(c)

18   Motion without allowing further discovery only after finding that there were no genuine

19   issues of material fact.  Rule 25(c) Order at 17, RJN Ex. V at 325.  As a result, there is no

20   reason to believe that any procedural differences between *Sunnyside I* and *Sunnyside II*

21   would cause a different result.

22

23

24   [1]    Sunnyside's second amended complaint devotes more than a page to allegations
     about the acquisition (as had the first amended complaint).  *Sunnyside I* Dkt. 21 (RJN Ex. D
25   at 42-45), Dkt. 58, at 7-8.  In deposition, Sunnyside questioned Opsys' witnesses
     extensively about the transactions, focusing both on documents produced by Opsys and
26   reports filed with the SEC.  Sunnyside asked its accounting expert, Paul Ainslie, to analyze
     the information it had obtained about Opsys' acquisition and to opine on whether the
27   acquisition had increased Sunnyside's damages.  *Sunnyside I* Dkt. 180 ¶ 2 (RJN Ex. N at
     137).

28

1    In addition, Sunnyside had every incentive to pursue its fraud claims vigorously in

2  *Sunnyside I*.  It knew when it filed its Rule 25(c) Motion that Opsys had no assets.  Rule

3  25(c) Motion at 11-12 (*Sunnyside I* Dkt. 179; RJN Ex. M at 123-24).  It made a tactical

4  decision to go after CDT Inc., believing that was its best chance of getting paid on its

5  judgment against Opsys.  Nothing has changed since—except that Sunnyside is now on its

6  third set of lawyers.  Because Sunnyside had sufficient procedural opportunities and plenty

7  of incentive to pursue the fraud claims in its Rule 25(c) Motion, it has already had a full and

8  fair opportunity to litigate those claims.

9  **4.    Identity of issues.**

10    The fourth and final requirement for issue preclusion is identity of issues.  The

11  Ninth Circuit has identified four factors to be considered in determining whether an issue is

12  identical to an issue previously litigated:

13        (1)    Is there a substantial overlap between the evidence or
        argument to be advanced in the second proceeding and that advanced in the
14        first?

15        (2)    Does the new evidence or argument involve the application of
        the same rule of law as that involved in the prior proceeding?
16

17        (3)    Could pretrial preparation and discovery related to the matter
        presented in the first action reasonably be expected to have embraced the
        matter sought to be presented in the second?
18

19        (4)    How closely related are the claims involved in the two
        proceedings?

20  *Steen,* 106 F.3d at 912 (citation omitted).  Sunnyside here is precluded from re-litigating

21  both the issue of adequacy of consideration and that of fraudulent intent.  As discussed

22  below, each of these issues was previously litigated.

23  a.    **Sunnyside is precluded from re-litigating the issue of adequacy of**

24        **consideration.**

25    Sunnyside alleges that the transfers of Opsys' assets to CDT Oxford and CDT Ltd.

26  "were made for less than its [sic] reasonable equivalent value."  Compl. ¶ 68.  In its

27  Rule 25(c) Motion in *Sunnyside I,* Sunnyside claimed that Opsys did not receive adequate

28  consideration for its assets.  *Sunnyside I* Dkt. 179, at 20 (RJN Ex. M at 132).  These are the

1  same claim.  Sunnyside claimed inadequacy of consideration in *Sunnyside I* to support its

2  claims that CDT Inc. was a mere continuation of Opsys, that CDT Inc. fraudulently sought

3  to escape liability for Opsys' debts, and that CDT Inc. should therefore be liable as Opsys'

4  successor.  *Id.* at 131-33.  Adequacy of consideration is the "crucial factor" in determining

5  whether a corporate acquisition constitutes a mere continuation.  *Franklin v. USX Corp.,*

6  87 Cal. App. 4th 615, 625 (2001).  This Court ruled that "plaintiff has failed to demonstrate

7  [inadequate consideration] with respect to *any* of the transactions at issue," this was "fatal"

8  to Sunnyside's mere continuation claim, and the fraudulent transfer species of successor

9  liability also did not apply.  Rule 25(c) Order at 14-17, RJN Ex. V at 322-25 (emphasis

10  added).  The Court cited specifically to the Uniform Fraudulent Transfer Act (Cal. Civ.

11  Code §§ 3439 *et seq.*), the same statute under which Sunnyside now brings its first, second,

12  and third causes of action.  *See* Rule 25(c) Order at 16-17, RJN Ex. V at 324-25; Compl.

13  ¶¶ 62-87.

14      All four of the factors to be considered in determining whether successive claims

15  are identical weigh in favor of finding such identity here.  If this Court were to reconsider

16  adequacy of consideration, there would be "substantial overlap" between the evidence and

17  argument to be advanced in *Sunnyside II* and that advanced in *Sunnyside I*.  The same rule

18  of law is involved in both proceedings to the extent that Sunnyside claimed or claims

19  inadequacy of consideration to support its fraud claim in both proceedings.  If Sunnyside

20  had demonstrated the existence of genuine issues of material fact and if the parties had

21  conducted further discovery in *Sunnyside I*, that discovery would have embraced the "the

22  matter sought to be presented" in *Sunnyside II*.  Finally, these are not just "closely related"

23  claims; they are the same claim.  Sunnyside is therefore precluded from re-litigating the

24  adequacy of the consideration paid for Opsys.

25  b.      **Sunnyside is precluded from re-litigating the issue of fraudulent intent.**

26      Sunnyside alleges that Opsys transferred its assets "with actual intent to hinder,

27  delay or defraud its creditors."  Compl. ¶ 79.  In its Rule 25(c) Motion in *Sunnyside I*,

28  Sunnyside alleged that "[t]he transfer of Opsys Limited's [a]ssets to Cambridge [w]as for

1  the [p]urpose of [a]voiding Opsys Limited's [d]ebts, [i]ncluding to Sunnyside." *Sunnyside*

2  *I* Dkt. 179, at 21 (RJN Ex. M at 133). Again, these are the same claim. Sunnyside alleged

3  fraudulent intent in *Sunnyside I* as a basis for successor liability. *Id.* This Court squarely

4  rejected the claim, finding that "[t]here is no indication that Opsys Limited's attempts to

5  maintain its UK operations by seeking financing from CDT, Inc. was specifically designed

6  to dodge the liabilities of the US operations." Rule 25(c) Order at 16, RJN Ex. V at 324.

7          In particular, this Court rejected Sunnyside's claim that the May 2005 transfer was

8  effected with fraudulent intent: "At the time of these transfers, CDT Limited…was a

9  defendant in this action. [Citation omitted.] An asset transfer between defendants is hardly

10 an attempt to thwart a plaintiff's ability to collect. These facts do not support a finding of

11 fraudulent transfer." *Id.* Sunnyside's counsel informed this Court at the initial case

12 management conference in the present action that Sunnyside's current claims focus on the

13 May 2005 transfer, not the October 2002 or December 2004 transfers. Tr. of Proceedings

14 (July 21, 2008) 5:24-6:1, 6:19-20, 7:16-18 (Dkt. 24). Sunnyside's counsel expressly

15 acknowledged that the Court had already found that there was no fraudulent intent as to this

16 transfer: "I acknowledge that Your Honor made a statement at the end of the [Rule 25(c)]

17 opinion, that it did not appear that this transfer was made with an actual intent to defraud."

18 *Id.* 8:23-25; *see also id.* 11:4-6 ("the prior statement in your decision was that there was not

19 an actual fraudulent intent in that transfer"). Sunnyside is therefore in no position to

20 dispute that the issue of fraudulent intent was previously litigated. Furthermore, for all the

21 reasons discussed above in connection with the issue of adequacy of consideration (*see*

22 *supra* pp. 11-12), the factors to be considered in determining whether an issue is identical to

23 an issue previously litigated all weigh in favor of finding that the fraudulent intent issues in

24 *Sunnyside I* and *Sunnyside II* are identical. It follows that Sunnyside may not re-litigate

25 fraudulent intent.

26 c.     **Because Sunnyside cannot demonstrate either inadequacy of consideration or**

27        **fraudulent intent, all its claims must be dismissed.**

28          Sunnyside must prove either inadequacy of consideration or fraudulent intent to

1    prevail on each of its six claims.  Because it is precluded from re-litigating these issues, all

2    of Sunnyside's claims—and the Complaint—must be dismissed.

3        Sunnyside's first claim for violation of Civil Code section 3439.05 requires a

4    showing that a debtor made a transfer or incurred an obligation "without receiving a

5    reasonably equivalent value in exchange for the transfer or obligation."  Cal. Civ. Code

6    § 3439.05.  But Sunnyside is estopped from arguing inadequacy of consideration.  This

7    claim must therefore be dismissed.

8        Sunnyside's second claim for violation of Civil Code section 3439.04(a)(1) requires

9    a showing that a debtor made a transfer or incurred an obligation "[w]ith actual intent to

10   hinder, delay, or defraud any creditor of the debtor."  Cal. Civ. Code § 3439.04(a)(1).  But

11   Sunnyside is estopped from arguing fraudulent intent.  This claim must therefore be

12   dismissed.

13       Sunnyside asserts in its third claim that it is entitled to "[a]voidance of the transfer

14   or obligation to the extent necessary to satisfy the creditor's claim."  Compl. ¶ 85

15   (quoting Cal. Civ. Code § 3439.07(a)(1)).  Avoidance is not a claim but a remedy.  Because

16   Sunnyside's first and second causes of action must be dismissed, it has no fraudulent

17   conveyance claims to be remedied.  Its third cause of action must therefore be dismissed.

18       Sunnyside asserts in its fourth claim violations of sections 238 and 423 of the UK

19   Insolvency Act 1986.  A claim under section 238 requires a showing of a transaction "at an

20   undervalue," which is defined as "a gift," a transaction "on terms that provide for the

21   company to receive no consideration," or a transaction "for a consideration the value of

22   which, in money or money's worth, is significantly less than the value, in money or

23   money's worth, of the consideration provided by the company."  UK Insolvency Act 1986,

24   section 238(4).  A claim under section 423 also requires a showing of a transaction "at an

25   undervalue," which is defined in substantially the same way it is defined in section 238.

26   See UK Insolvency Act 1986, section 423(1).  In addition, a claim under section 423

27   requires a showing that the person who entered into the transaction did so for the purpose

28   "(a) of putting assets beyond the reach of a person who is making, or may at some time

1  make, a claim against him, or (b) of otherwise prejudicing the interests of such a person in

2  relation to the claim which he is making or may make."  UK Insolvency Act 1986, section

3  423(3).  But Sunnyside here is estopped from arguing either inadequacy of consideration or

4  fraudulent intent.  Sunnyside's fourth claim must therefore be dismissed.

5       Sunnyside's fifth claim for common law fraud is premised on Sunnyside's

6  allegation that "Defendants have engaged in fraud *with the purpose of placing Opsys*

7  *Limited's assets beyond the reach of its creditors,* all for their personal enrichment."

8  Compl. ¶ 100 (emphasis added).  Sunnyside's fraud claim is also premised on its allegation

9  that "Defendants…fail[ed] to disclose *the lack of consideration* payable in the 2005

10  transaction." *Id.* ¶ 101 (emphasis added).  Because Sunnyside is estopped from arguing

11  either inadequacy of consideration or fraudulent intent, Sunnyside's fifth cause of action

12  must be dismissed.

13       Sunnyside alleges in its sixth claim that the licensors of the "Opsys IP" hold the

14  revenues derived from the Opsys IP as a constructive trustee for the benefit of Opsys.

15  Compl. ¶ 106.  This claim rises or falls with Sunnyside's other causes of action.  Since they

16  must be dismissed, so too must this claim.

17  **C.     Sunnyside's fraud claim must be dismissed.**

18  **1.     Sunnyside's fraud allegations fail to state a claim.**

19       Sunnyside's fraud claim should also be dismissed because Sunnyside fails to state a

20  claim upon which relief can be granted.  To state a claim, Sunnyside would need to plead

21  five elements:  "'(1) misrepresentation (false representation, concealment, or non-

22  disclosure); (2) knowledge of falsity (or 'scienter'); (3) intent to defraud, i.e., to induce

23  reliance; (4) justifiable reliance; and (5) resulting damage.'" *Bank of the West v. Valley*

24  *Nat'l Bank of Ariz.,* 41 F.3d 471, 477 (9th Cir. 1994) (citing California law); *see also* Cal.

25  Civ. Code § 1709 ("One who willfully deceives another with intent to induce him to alter

26  his position to his injury or risk, is liable for any damage which he thereby suffers."),

27  § 1710 (defining "deceit").  Here, Sunnyside alleges only that "CDT" (not CDT Ltd. or

28  CDT Oxford) failed to announce the May 2005 transaction to the public at the time it

1   occurred.  Compl. ¶¶ 53, 80, 101.  In May 2005, Opsys transferred its 84% interest in CDT

2   Oxford to CDT Ltd.  Even if Sunnyside had adequately pled a misrepresentation, Sunnyside

3   does not plead any of the other four required elements.

4        First, Sunnyside does not plead scienter.  Sunnyside does not allege that CDT Ltd.

5   or CDT Oxford had any obligation to disclose the May 2005 transaction, that they knew

6   they should disclose it, or that they knew that not disclosing it would be misleading.

7   *See* Cal. Civ. Code § 1710(3) (the suppression of a fact "by one who is bound to disclose it"

8   constitutes deceit).  Sunnyside claims only that "CDT" was a "publicly traded company

9   with disclosure obligations."  Compl. ¶ 53.  But CDT Inc.—the publicly traded company—

10  is not a defendant in this action, and neither CDT Ltd. nor CDT Oxford are public

11  companies.  Moreover, Sunnyside's vague reference to "disclosure obligations" falls short

12  of alleging that CDT Ltd. or CDT Oxford was bound to disclose the May 2005 transaction

13  (or that they knew of this obligation).  In addition, this Court has already found that the

14  May 2005 transaction was not motivated by fraudulent intent.  At the time, CDT Ltd. was a

15  defendant in *Sunnyside I;* the Court did not dismiss CDT Ltd. until August 8, 2005.

16  *Sunnyside I* Dkt. 39 (RJN Ex. F).  Thus, the May 2005 transfer was made by a defendant

17  (Opsys) to another defendant (CDT Ltd.).  As this Court found in *Sunnyside I,* "[a]n asset

18  transfer between defendants is hardly an attempt to thwart a plaintiff's ability to collect."

19  Rule 25(c) Order at 16, RJN Ex. V at 324.

20       Second, Sunnyside does not allege that CDT Ltd. or CDT Oxford intended to induce

21  reliance by Sunnyside.  To satisfy this requirement, Sunnyside would need to allege that

22  CDT Ltd. or CDT Oxford intended, by concealing the May 2005 transaction, to cause

23  Sunnyside to take some action—or not to take some action—that would prejudice

24  Sunnyside's interests.  But Sunnyside has not done so.

25       Third, Sunnyside does not allege justifiable reliance.  Sunnyside has not identified

26  any respect in which it would have acted differently if it had known of the May 2005

27  transaction in May 2005.  In fact, Sunnyside vigorously opposed the motion to dismiss

28  CDT Ltd. (*Sunnyside I* Dkt. 32; RJN Ex. E) and then moved in a matter of months to add

1    CDT Inc. to the litigation (*Sunnyside I* Dkt. 48; RJN Ex. G).

2         Fourth, although Sunnyside alleges in its fraud count that it "has been injured by

3    Defendants' actions" (Compl. ¶ 102), it does not plead any facts to support this naked

4    allegation.  It fails to say how it was damaged by not knowing about the May 2005

5    transaction sooner, or to identify the damage it allegedly incurred.  What Sunnyside really

6    seeks is to satisfy its judgment in *Sunnyside I* out of the assets conveyed by Opsys to CDT

7    Oxford and CDT Ltd.  Sunnyside's allegations about the nondisclosure of the May 2005

8    transfers are superfluous, and they do not state a claim.  Sunnyside's fraud count should

9    therefore be dismissed.

10   **2.        Sunnyside fails to state its fraud claim with particularity.**

11        "In alleging fraud or mistake, a party must state with particularity the circumstances

12   constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Sunnyside's fifth cause of action for

13   common law fraud should be dismissed for failure to comply with this requirement if

14   Sunnyside attempts to rely on allegations other than those discussed above to support its

15   fraud claim.  Sunnyside devotes only four sentences to its fraud claim, one of which simply

16   alleges injury.  Compl. ¶¶ 99-102.  This does not satisfy the heightened pleading

17   requirements of Rule 9(b).  "Rule 9(b) ensures that allegations of fraud are specific enough

18   to give defendants notice of the particular misconduct which is alleged to constitute the

19   fraud charged so that they can defend against the charge and not just deny that they have

20   done anything wrong."  *Semegen v. Weidner,* 780 F.2d 727, 731 (9th Cir. 1985).  In

21   *Semegen,* the Ninth Circuit affirmed the dismissal of fraud claims where plaintiffs had

22   failed to specify any times, dates, places, or other details and did "nothing more than set

23   forth conclusory allegations…punctuated by a handful of neutral facts."  *Id.*

24   **D.        Sunnyside's claims under the UK Insolvency Act 1986 must be dismissed.**

25        Sunnyside includes a claim for violation of section 238 of the UK Insolvency Act

26   1986 in its fourth cause of action.  But section 238 provides as follows:  "This section

27   applies in the case of a company where—(a) the company enters administration, or (b) the

28   company goes into liquidation…."  Section 238 also provides that, where a company has

1    entered into a transaction at an undervalue, the "office-holder" may apply to the court for an

2    order.  Section 238 defines the "office-holder" as "the administrator or the liquidator, as the

3    case may be."  These provisions make clear that, when a company has entered

4    administration or liquidation, section 238 permits the administrator or liquidator to apply

5    for an order to redress certain transactions.  Section 238 does not create a right of action in

6    a debtor such as Sunnyside.  Sunnyside is neither an administrator nor a liquidator and

7    cannot bring claims under section 238.  *See* Dkt. 26 for copies of these UK statutes.

8         Sunnyside also purports to bring a claim under section 423 of the UK Insolvency

9    Act 1986, but this claim must be dismissed under Rule 12(b)(1) for lack of subject matter

10    jurisdiction.  Section 423 authorizes "the court" to issue orders addressing certain

11    transactions, but section 423(4) defines "the court" as "the High Court [of England and

12    Wales]" or, if the person making the transaction "is a body capable of being wound up

13    under Part IV or V of this Act, any other court having jurisdiction to wind it up."  This

14    Court is not the High Court of England and Wales.  Sunnyside does not allege that this

15    Court has jurisdiction to wind up any of the defendants in this matter—all of whom are UK

16    companies.  In fact, Sunnyside has hired a solicitor and commenced winding up

17    proceedings against Opsys in the UK.  *See* RJN Ex. W.  It seems more than capable of

18    defending its interests under UK law in the UK courts.  In any event, Sunnyside's fourth

19    cause of action under the UK Insolvency Act 1986 must be dismissed in its entirety.

20    **E.    Sunnyside's claims based on the 2002 transaction are time-barred, as are its**

21    **       fraud and constructive trust claims based on the 2004 transaction.**

22         Each and every cause of action asserted by Sunnyside is barred by the applicable

23    statutes of limitation to the extent it is based on the October 2002 transaction.  Furthermore,

24    Sunnyside's common law fraud claim and constructive trust claim are barred to the extent

25    they are based on either the October 2002 transaction or the December 2004 transaction.

26    **1.    Sunnyside's first claim under Civil Code section 3439.05.**

27         A claim under Civil Code section 3439.05 must be brought within four years after

28    the allegedly fraudulent transfer was made.  Cal. Civ. Code § 3439.09(b).  The October

1  2002 transaction took place more than four years before the filing of Sunnyside's

2  Complaint on April 3, 2008.  *See* Dkt. 1.  Accordingly, Sunnyside's first cause of action is

3  time-barred to the extent it is based on the October 2002 transaction.

4  **2.       Sunnyside's second claim under Civil Code section 3439.04(a)(1).**

5          A claim under Civil Code section 3439.04(a)(1) must be brought within four years

6  of the allegedly fraudulent transfer or, "if later, within one year after the transfer…was or

7  could reasonably have been discovered by the claimant."  Cal. Civ. Code § 3439.09(a).

8  Again, the October 2002 transaction occurred more than four years before Sunnyside filed

9  its complaint on April 3, 2008.  Under the second prong of section 3439.09(a), Sunnyside's

10  claims based on the October 2002 transaction would have been timely if Sunnyside had not

11  discovered, or could not reasonably have discovered, the October 2002 transaction until

12  April 3, 2007 (one year before the filing of Sunnyside's complaint).  But Sunnyside knew

13  of the October 2002 transaction well before April 3, 2007.  In its initial complaint in

14  *Sunnyside I,* filed December 14, 2004, Sunnyside alleged that CDT Ltd. owned Opsys.

15  *Sunnyside I* Dkt. 1, Ex. A ¶ 2 (RJN  Ex. A).  And, in Sunnyside's first amended complaint

16  in *Sunnyside I,* filed May 11, 2005, Sunnyside alleged that CDT Ltd. was negotiating to

17  acquire Opsys by 2002, and that CDT Ltd. did purchase Opsys.  *Sunnyside I* Dkt. 21 ¶ 11

18  (RJN Ex. D at 42).  Because Sunnyside did not make its claim under Civil Code section

19  3439.04(a)(1) within one year after it discovered the October 2002 transaction, it cannot

20  avail itself of the second prong of section 3439.09(a).  Whether under the first or second

21  prong, Sunnyside's second cause of action is time-barred to the extent it is based on the

22  October 2002 transaction.

23  **3.       Sunnyside's third claim under Civil Code section 3439.07.**

24          In its third cause of action, Sunnyside claims that it is entitled to "[a]voidance of the

25  transfer or obligation to the extent necessary to satisfy the creditor's claim."  Compl. ¶ 85

26  (quoting Cal. Civ. Code § 3439.07(a)(1)).  Although framed as a separate count, this is not

27  an independent cause of action.  Instead, it identifies a remedy sought by Sunnyside for the

28  violations alleged in its first two causes of action.  It necessarily follows—for all the

1  reasons stated in connection with the first two causes of action—that the third cause of

2  action is time-barred to the extent it is based on the October 2002 transaction.

3  **4.    Sunnyside's fourth claim under the UK Insolvency Act 1986.**

4         Sunnyside's purported claim under section 238 of the UK Insolvency Act 1986

5  should be dismissed because it is time-barred.  Section 238 applies where a company has

6  entered into certain transactions "at a relevant time."  Under section 240, a company enters

7  into a transaction at a relevant time if the transaction is entered into no earlier than two

8  years before the "onset of insolvency," which is defined, depending on the circumstances,

9  as the date on which an administration application is made, the date on which a copy of a

10  notice of intention to appoint an administrator is filed with the court, the date on which the

11  appointment takes effect, or the date of the commencement of the winding up.  Here,

12  Sunnyside petitioned for Opsys to be wound up on January 15, 2008.  RJN Ex. W.  None of

13  the 2002, 2004 or 2005 transactions occurred within the two years before January 15, 2008.

14  Sunnyside's claim under section 238 of the UK Insolvency Act 1986 must therefore be

15  dismissed.

16  **5.    Sunnyside's fifth claim for common law fraud.**

17         The statute of limitations on a fraud claim is three years.  Cal. Civ. Proc. Code

18  § 338(d).  The cause of action accrues upon "the discovery, by the aggrieved party, of the

19  facts constituting the fraud."  *Id.*  Thus, Sunnyside's fraud claim is time-barred to the extent

20  it is based on the October 2002 and December 2004 transactions unless Sunnyside can

21  show that it did not discover those transactions until April 3, 2005 (three years before the

22  filing of Sunnyside's Complaint).  As discussed above, however, Sunnyside's initial

23  complaint in *Sunnyside I,* filed on December 14, 2004, alleges that CDT Ltd. owned Opsys.

24  *Sunnyside I* Dkt. 1, Ex. A ¶ 2 (RJN Ex. A at 7).

25         Furthermore, in Sunnyside's papers opposing Opsys' motion to dismiss, filed

26  March 21, 2005, Sunnyside claimed that "CDT Limited has purchased the assets of Opsys

27  Limited" and that Opsys "may have acted as the agent of CDT Limited in shedding its

28  liabilities and debts as part of the plan to merge the assets of Opsys Limited into CDT

1    Limited and obtain the assets only." *Sunnyside I* Dkt. 14, at 1, 12 (RJN Ex. B at 20, 31).

2    These allegations—which closely resemble Sunnyside's current allegations (*see* Compl.

3    ¶¶ 12, 32-35)—demonstrate that Sunnyside knew of these transactions well before April 3,

4    2005.

5         Indeed, Sunnyside's manager, Frank Chiu, knew of the December 2004 transaction

6    before it happened.  He and Damoder Reddy testified at deposition that Mr. Reddy faxed

7    Mr. Chiu information about CDT Inc.'s planned IPO in November 2004; Mr. Reddy

8    suggested that Mr. Chiu file suit and referred him to an attorney.  *Sunnyside I* Dkt. 206 &

9    206-2 (RJN Ex. R at 194-96, 198, 201-04).  Because Sunnyside knew of both the October

10   2002 and December 2004 transactions before April 3, 2005, its fraud claim is untimely and

11   must be dismissed.

12   **6.    Sunnyside's sixth claim for a constructive trust.**

13        In its final claim, Sunnyside alleges that the licensors of the "Opsys IP" hold the

14   revenues derived from the Opsys IP as a constructive trustee for the benefit of Opsys.

15   Compl. ¶ 106.  The three-year statute of limitations applicable to fraud claims applies to

16   this claim as well.  "The three-year limitation [on fraud claims] applies to all such actions

17   whether the relief demanded be legal or equitable."  *Douglas v. Douglas,* 103 Cal. App. 2d

18   29, 32 (1951).  In *Douglas,* the court affirmed the dismissal of a constructive trust claim

19   brought more than three years after the alleged fraudulent transfer and the plaintiff's

20   discovery thereof.  *Id.* at 32.  Hence, for all the reasons stated in connection with

21   Sunnyside's fifth claim, Sunnyside's sixth claim is time-barred to the extent it is based on

22   the October 2002 or the December 2004 transactions.

23        Sunnyside also cites California Code of Civil Procedure section 708.210 in its sixth

24   claim.  Compl. ¶ 107.  This statute permits the filing of an action by a creditor against a

25   third party who has "possession or control of property in which a judgment debtor has an

26   interest."  Such an action must be commenced before "[t]he time when the judgment debtor

27   may bring an action against the third person concerning the property or debt."  Cal. Civ.

28   Proc. Code § 708.230(a)(1).  Even if section 708.210 allows a creditor to proceed against a

1   third party in federal court, it does not apply here.  Sunnyside does not allege that Opsys

2   claims an interest in any assets transferred to CDT Oxford or CDT Ltd.  Nor does

3   Sunnyside describe what type of interest this might be, or when the time to assert this

4   interest might expire.  Accordingly, Sunnyside's invocation of section 708.210 does not

5   increase the limitations period applicable to its sixth claim.

6   **IV.    CONCLUSION.**

7       For the foregoing reasons, CDT Ltd. submits that this action should be dismissed

8   with prejudice.

9       Dated:  July 28, 2008.

10                      PILLSBURY WINTHROP SHAW PITTMAN LLP
                          BRUCE A. ERICSON

11                      ALICE KWONG MA HAYASHI
                          ELIANA P. KAIMOWITZ RODRIGUEZ

12                      50 Fremont Street
                          Post Office Box 7880

13                      San Francisco, CA  94120-7880

14

15                      By _____ /s/ Bruce A. Ericson _____
                          Bruce A. Ericson

16                      Attorneys for Defendants
                     CAMBRIDGE DISPLAY TECHNOLOGY
                     LIMITED and CDT OXFORD LIMITED

17

18

19

20

21

22

23

24

25

26

27

28