STIGLICH & HINCKLEY, LLP
MICHAEL HINCKLEY #161645
The CCDS Building
502 Seventh Street
San Francisco, CA  94103
Telephone:  (415) 865-2539
Facsimile:  (415) 865-2538
hinckley@stiglichhinckley.com

TRAIGER & HINCKLEY LLP
CHRISTOPH C. HEISENBERG
501 Fifth Avenue, Suite 506
New York, New York 10017
cheisenberg@traigerlaw.com

Attorneys for Plaintiff
SUNNYSIDE DEVELOPMENT COMPANY LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SUNNYSIDE DEVELOPMENT COMPANY LLC,<br><br>                              Plaintiff,<br><br>        vs.<br><br>CAMBRIDGE DISPLAY TECHNOLOGY LIMITED, CDT OXFORD LIMITED, OPSYS LIMITED, and JOHN DOES I through V,<br><br>                              Defendants. | No. C-08-1780-MHP<br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO CDT OXFORD LIMITED'S MOTION TO DISMISS**<br><br>Date:  September 8, 2008<br>Time: 2:00 p.m.<br>Courtroom 15, 18th Floor<br>Hon. Marilyn Hall Patel |

# TABLE OF CONTENTS

Page

I.    PRELIMINARY STATEMENT ...................................................................1

II.   THE FACTS ............................................................................................4

    A.    CDT Oxford's Consummation Of The 2002 Transaction Agreement
Through Which It Obtained The Dendrimer IP From Opsys .................4

    B.    The Transaction Agreement's Appointment Of CDT Limited As CDT Oxford's
"Sole and Exclusive Agent and Attorney To Perform Services". ..........5

    C.    The Ongoing Licensing Of The CDT Oxford IP To California Companies ..........5

III.  ARGUMENT ........................................................................................6

    A.    On This Motion, The Court Must Accept Sunnyside's Allegations of
Jurisdictional Facts...............................................................................6

    B.    This Court Has Personal Jurisdiction Over CDT Oxford
Based Upon Claims Arising Out Of Its Contract With California Residents..........7

        1.    CDT Oxford Has Purposefully Availed Itself Of California's Forum ........8

        2.    CDT Oxford Has Purposefully Availed Itself of California's Jurisdiction
By Consummating The 2002 Transaction Agreement With A Forum
Resident.............................................................................................8

        3.    CDT Oxford Is Subject To Specific Jurisdiction Because The Effects
Of Its Conduct Resulted In Injury In California. ........................9

    C.    The Claims Arise Out Of The 2002 Transaction Agreement ................12

    D.    CDT Oxford Has Failed To Carry Its Burden Of Showing That The Exercise
Of Personal Jurisdiction Over CDT Oxford Is Unreasonable ..............13

        1.    CDT Oxford Continues To Interject Itself Into The Forum Through Its
Use Of The Fraudulently Obtained Property In California, through CDT
Limited ...........................................................................................13

        2.    There Is No Burden To CDT Oxford In Responding In This Forum
California Counsel Already Appearing on Behalf of CDT Oxford's Agent,
CDT Limited....................................................................................16

        3.    California Has A Strong Interest In Adjudicating The Dispute................16

# TABLE OF CONTENTS

Page

CONCLUSION.................................................................................................................18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

1

2

<u>Page</u>

*Air Products and Controls, Inc. v. Safetech International, Inc.*,
503 F.3d 544, 552-53 (6th Cir. 2007) ...........................................................................10

*Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995)* ...............................................7

*Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*,
*223 F.3d 1082, 1087 (9th Cir. 2000)* ....................................................................7, 9, 14

*Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473 (1985)* ........................................8

*Calder v. Jones, 65 U.S. 783 (1984)* ........................................................................ 3-4

*CE Distribution, LLC v. New Sensor Corp, 380 F.3d 1107 (9th Cir. 2004)* ..................8

*CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1262 (6th Cir. 1996)* .............................7

*Diamond Multimedia Systems, Inc. v. Superior Court*, 19 Cal.4th 1036, 1064 (1999) .................17

*Gator.Com Corp. v. L.L. Bean, Inc.*, 341 F.3d 1072, 1078 (9th Cir. 2003)....................8

*Hall v. LaRonde, 66 Cal. Rptr. 2d 399 (Cal. Ct. App. 1997)*........................................8

*Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*,
*328 F.3d 1122, 1129 (9th Cir. 2003).*  ..................................................................7, 8, 9, 14

*In re Lucas Dallas, Inc.*, 185 B.R. 801 (B.A.P. 9th Cir. 1995)................................7, 23

*In re Teknek, LLC (Levey v. Hamilton)*, 354 B.R. 181, 197 (Bankr. N.D. Ill. 2006) ........10, 12, 17

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998)........14

*Sinatra v. National Enquirer*, 854 F.2d 1191, 1200 (9th Cir. 1988) ............................17

*State Farm Mutual, Automobile Insurance Co. v. Tz'doko V'chesed of Klausenberg*,
543 F.Supp.2d 424 (E.D. Pa. 2008) ..............................................................................10

*Sunnyside Development Company LLC v. Opsys Limited,* No. 05-cv-00553 (MHP) ........... passim

*Sunnyside Development Company LLC v. Bank of New York*,
2008 U.S. Dist. LEXIS 11800 (S.D.N.Y. Feb. 15, 2008)........................................4, 23

*Verizon Online Services, Inc. v. Ralsky, 203 F.Supp.2d 601, 609 (E.D.Va.2002)* ........................7

*West Corp. v. Superior Court (Sanford)*, 116 Cal.App.4th 1167, 1180 (2004)............................17

# TABLE OF AUTHORITIES

Page

*Wong v. Tenneco, Inc.*, 39 Cal.3d 126, 143 (1985)..........................................................................17

**Other Sources**

2A James W. Moore, Moore's Federal Practice ¶12.07[2.-2], at 12-70 (2d ed. 1996) ...................7

Cal. Civ. Code §3439.05.................................................................................................2, 12

Cal. Civ. Code § 3439.07.............................................................................................1, 16, 18

1
2
3
4

Petitioner Sunnyside Development Company LLC ("Sunnyside") respectfully submits this opposition to the motion by Defendant CDT Oxford Limited ("CDT Oxford") to dismiss the Complaint for lack of personal jurisdiction.

5

## I.    PRELIMINARY STATEMENT

6
7
8
9
10
11

This Court has personal jurisdiction over CDT Oxford because it has purposefully availed itself of California's jurisdiction by (1) entering into a contract with California residents, from which this claim arises and (2) engaging in a tortious fraudulent conveyance that had the purpose of harming a California entity and its creditors.  As is explained herein, all of these provide the basis for jurisdiction over CDT Oxford.

12
13
14
15
16
17

Before turning to the basis for jurisdiction over CDT Oxford, it is useful to provide the context for CDT Oxford's relevant jurisdictional contacts.  This case pursues the post-judgment remedy that California Civil Code §3439.07 expressly afford a judgment creditor.  With respect to CDT Oxford, the challenge is to Opsys's transfer of its intellectual property, principally the dendrimer IP, to CDT Oxford in October 2002.  That transfer violated §3439.05, which provides:

18
19
20

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation.

21
22
23
24
25

California Civil Code §3439.05 (emphasis added).  By that test, the IP that Opsys transferred to CDT Oxford had, according to defendants' own financial statements, a fair value of more than $19 million.  In return, Opsys received only $5 million, all coming from the initial payment in 2002.  That, in short, is the nature of the Sunnyside's claim against CDT Oxford.[1]

26

CDT recognized that significant gap between the value of the IP that Opsys gave and the

27
28

---

[1]    The action against CDT Limited challenges the separate later 2005 transfer of Opsys's 84% interest in CDT Oxford for no consideration.

PLF'S OPP. TO CDT OXFORD's MOTION TO DISMISS
No. C-08-1780 MHP

$5 million that it received. Therefore, on the *Sunnyside I* post-judgment motion to join CDT, Inc. to the judgment pursuant to Rule 25(c) of the Federal Rules of Civil Procedure, CDT represented to this Court that Opsys **also** had received the benefit of the $11 million that CDT, Inc. paid in 2004 when it acquired Opsys from Opsys's shareholders. CDT's witnesses and its counsel represented this fact to the Court throughout the brief post-verdict proceedings:

> <u>Mr. Ericson</u>: There's no way CDT made Opsys creditors worse off by putting money into Opsys, by putting a lot of CDT stock which is value in there. And as I said, almost all the CDT stock is still sitting there in escrow or in Opsys Management, it's not gone with the wind or disappeared or anything.

(Tr. of May 16, 2007 hearing at 65.) (Dkt. 218). This echoed CDT's pleadings to this Court:

> the proceeds of the transactions were held in <u>escrow and trust for the benefit of creditors</u>, known and unknown.

(CDT Post-Verdict Mem. at 2) (Dkt. 207).

> most of the consideration paid to Opsys and its shareholders would be escrowed or <u>placed in trust for the protection of Opsys' creditors</u>, rather than simply be transferred outright to Opsys' shareholders.

(Declaration of CDT's M.Black ¶10) (Dkt. 204).

> The purpose of the escrow is … to assure that if any unknown liabilities did emerge, they would be satisfied by Opsys Limited from the escrowed portion of the consideration, and not by CDT.

(Opsys Post-Verdict Mem., at 12-13) (Dkt. 198).

Those statements proved to be illusory. Opsys's creditors were worse off, because CDT did not "put[] money into Opsys", as CDT's counsel had told the Court. The stock was not "still sitting there in escrow" available to creditors. When Sunnyside sought to avail itself of those "protections" by requesting the turnover of the escrow account in New York, CDT argued the exact opposite position, telling the New York District Court that Opsys had received no right in the $11 million payment. Understandably, the New York Court reviewed CDT's prior

statements to this Court, and found them to be "extravagant mischaracterizations." *Sunnyside Development Co. LLC v. Bank of New York*, 2008 U.S. LEXIS 11800 *6-7 (S.D.N.Y. Feb. 15, 2008).

The implication of CDT's victory in New York to this proceeding is profound. Rather than Opsys having received $16 million (the $5 million in 2002, **and** the $11 million in 2004) for its IP as CDT had represented, Opsys actually received only $5 million. The IP Opsys relinquished was worth $19 million, by CDT's own financial statements. Sunnyside was unable to obtain the satisfaction of the judgment through the mechanism that CDT's counsel had proffered in the *Sunnyside I* post-verdict proceeding, and therefore it is returning to this Court to pursue the ordinary Civil Code §3439.07 remedy available to all judgment creditors.

Because CDT Oxford is challenging personal jurisdiction, this Memorandum will focus on the transfer to CDT Oxford.[2] The claims against CDT Oxford arise out of the 2002 transaction agreement, in which Opsys transferred the dendrimer IP and other assets valued by CDT at $19 million to CDT Oxford. In return, Opsys received only $2.5 million. (It received an additional $2.5 in other transaction components.) That transfer resulted in an injury to a California resident, Sunnyside, and impairs the California judgment that Sunnyside obtained against Opsys.

CDT Oxford's motion to dismiss based on a purported lack of personal jurisdiction is perplexing. Foremost, CDT Oxford acknowledges that the transfer being challenged was brought about by the 2002 transaction agreement, and that the agreement is with two California residents. (CDT Oxford Mem. at 6.) It is a fundamental jurisdictional doctrine that a person contracting with state residents can expect to be haled into Court on claims arising out of that

---

[2]    As is explained more extensively in the accompanying memorandum in opposition to CDT Limited's motion to dismiss, the claims against CDT Limited arise out of the 2005 transaction.

agreement.

Independently, there is a significant body of case law addressing the *Calder v. Jones*, 65 U.S. 783 (1984) "effects test" in this specific context of a non-forum fraudulent transfer causing harm to a forum creditor and impairing a forum judgment.   CDT Oxford eschews any discussion of those specific applications of *Calder* to fraudulent conveyance claims, digressing instead on a discussion of internet law, which is not at issue here.  Thus, in addition to the contractual basis, there is specific jurisdiction based on CDT Oxford's actions.

The exercise of jurisdiction over CDT Oxford is not unreasonable.  It chose to reach into California in order to obtain the IP, entering into a contract with California residents in the process.  It continues to maintain a presence in California through licenses for that IP with California residents.  Moreover, CDT Limited's actions in California (upon which jurisdiction over CDT Limited is acknowledged) also pertain to CDT Oxford, because CDT Limited is CDT Oxford's express agent for licensing the IP.  This includes the extensive licensing to California companies of the IP that is at issue here, licensing that CDT Oxford acknowledges is occurring, but attempts to camouflage as CDT Limited's licensing.  Given that CDT Limited already is before the Court responding to these allegations, there is no additional burden to CDT Oxford also responding in this forum.

## II.    THE FACTS

### A.    CDT Oxford's Consummation Of The 2002 Transaction Agreement Through Which It Obtained The Dendrimer IP From Opsys

The Complaint challenges the transfer of the IP assets from Opsys to defendant Opsys UK, which later was renamed CDT Oxford Limited.  In 2002, Opsys transferred to CDT Oxford Limited its valuable IP assets, consisting in large extent of the exclusive rights to dendrimer technology.  CDT itself determined that this IP had a fair value of $19 million, based upon its

own valuation of the assets. The transfer was accomplished by means of a 2002 transaction agreement between various parties. Critical to this motion, CDT Oxford contracted with two California residents, Opsys US and Opsys 2 Corp. (Comp. ¶9). Thus, the claims arise out of the agreement with California residents.

B.    **The Transaction Agreement's Appointment Of CDT Limited As CDT Oxford's "Sole and Exclusive Agent and Attorney To Perform Services"**

Section 7 of the transaction agreement names CDT Limited as the managing agent for CDT Oxford, providing that "Opsys UK [n/k/a CDT Oxford] hereby designates CDT UK [n/k/a CDT Limited] as the sole and exclusive agent and attorney to perform the services under this agreement on behalf of and act as Opsys UK, such that the agency and power of attorney shall be a power coupled with an interest of Opsys UK in making purchases of equipment, supplies and materials necessary for the operation and management of Opsys UK." (Section 7.2 Exhibit B to Declaration of Scott Brown, filed on July 28, 2008 ("Brown Dec."). Therefore, CDT Limited's actions in licensing the CDT Oxford IP are attributable to CDT Oxford.

CDT Oxford does not manage its own operations, instead, CDT Limited serves as the exclusive manager:

> 7.1 Effective from the date of this agreement CDT [Limited] shall on an exclusive and irrevocable basis manage the assets and business of [CDT Oxford] generally and in particular:
>      A. direct its research programmes;
>      B. licence all intellectual property of Opsys UK from time to time (including for the avoidance of doubt to CDT or any member of CDT's Group) under such terms in the sole discretion of CDT UK;
>      C. enter into joint development agreements;
>      . . .
>      G. provide such other services as may be reasonably required in connection with the above duties.
>
> 7.2 In connection with the management of the operations of Opsys UK and the provision of the services by CDT UK hereunder, Opsys UK and Opsys hereby irrevocably authorize CDT UK to take and perform or cause to be taken and performed, such actions in the name and on behalf of

> Opsys UK, as may be necessary or desirable, in the judgment and discretion of CDT UK, for the management and operation of Opsys UK. At all times CDT UK shall have complete and unrestricted rights of access to the systems, facilities and Books and Records relating exclusively to the Opsys UK Business from time to time.

Brown Dec. Ex. B (Dkt. 26).

**C.    The Ongoing Licensing Of The CDT Oxford IP To California Companies**

CDT Oxford now makes full use of the IP that was transferred from Opsys to CDT Oxford.  A significant portion of that licensing occurs in California:

> Among the known contacts with California is a March 2005 "strategic alliance" and IP agreements with Add-Vision, Inc., a Scott Valley, California-based company, through which Add-Vision, Inc. licenses any of CDT Ltd.'s and CDT Oxford Limited's portfolio of intellectual property.

Compl. ¶14.  CDT Oxford also conducts ongoing business, through its agent, CDT Ltd., with Next Sierra, Inc.:

> CDT Oxford agents, officers and representatives (including the contacts of its manager, CDT Ltd.) have participated in business in California, including, but not limited to; Licensing IP to Next Sierra, Inc., a Mountain View, California-based hardware developer…

Compl. ¶15.  CDT Oxford has a similar IP licensing arrangement with Litrex, a California company:

> Communications and licensing of CDT Oxford's and CDT Ltd.'s intellectual property to a former CDT subsidiary, Litrex, Inc., based in Pleasanton, California

Compl. ¶15.

### III.    ARGUMENT

**A.    ON THIS MOTION, THE COURT MUST ACCEPT SUNNYSIDE'S ALLEGATIONS OF JURISDICTIONAL FACTS**

Sunnyside has an initial burden to plead a *prima facie* basis for the application of personal jurisdiction over CDT Oxford.  In determining the issue on the motion to dismiss, the Court must

take as true Sunnyside's version of the facts and resolve in Sunnyside's favor all factual conflicts in the affidavits. *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003). Sunnyside "need only demonstrate facts that if true would support jurisdiction over the defendant." *Id.*, quoting *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). Accord *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000)("Because the prima facie jurisdictional analysis requires us to accept the plaintiff's allegations as true, we must adopt [plaintiff]'s version of events. . . .")

The court "should not weigh the controverting assertions of the party seeking dismissal because to do so would allow Defendants to 'avoid personal jurisdiction simply by filing an affidavit denying all jurisdictional facts.' " (*Verizon Online Services, Inc. v. Ralsky*, 203 F.Supp.2d 601, 609 (E.D.Va.2002) (quoting *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996)). At a minimum, the Declaration of CDT Oxford's Scott Brown does not disprove jurisdiction, it only raises factual questions that can't be determined at pleading stage. 2A James W. Moore, Moore's Federal Practice ¶12.07[2.-2], at 12-70 (2d ed. 1996) ("If the district court chooses not to hold an evidentiary hearing, then the party asserting jurisdiction need only make a prima facie showing that jurisdiction exists....").

B.    **THIS COURT HAS PERSONAL JURISDICTION OVER CDT OXFORD BASED UPON CLAIMS ARISING OUT OF ITS CONTRACT WITH CALIFORNIA RESIDENTS**

This Circuit has adopted a three-part test to determine whether the exercise of specific jurisdiction over a defendant comports with due process:

> (1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privileges of conducting activities in the forum . . . (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must . . . be reasonable.

*CE Distribution, LLC v. New Sensor Corp*, 380 F.3d 1107 (9th Cir. 2004), quoting *Harris Rutsky*,

328 F.3d at 1129 (citation omitted).  Each element is satisfied with respect to CDT Oxford.

      1.    **CDT Oxford Has Purposefully Availed Itself Of California's Forum**

      CDT Oxford has availed itself of California's jurisdiction in two regards.  First, CDT

Oxford confirms that it entered into the 2002 transaction agreement with California residents, by

which the transfers to CDT Oxford were made.  Second, it engaged in a fraudulent conveyance

with knowledge that it would cause harm to California creditors.  As is explained below, each of

the above independently would suffice to create jurisdiction over CDT Oxford.

      2.    **CDT Oxford Has Purposefully Availed Itself of California's Jurisdiction By Consummating The 2002 Transaction Agreement With A Forum Resident**

      CDT Oxford acknowledges that it entered into the 2002 transaction agreements with

California residents Opsys US Corporation and Opsys 2 Corporation.  (CDT Oxford Mem. at 6).

In that agreement, CDT Oxford received the dendrimer IP that is the subject of this claim.

      Curiously, and without any citation whatsoever, CDT Oxford contends that "the residence

of other entities does not create jurisdiction over CDT Oxford." (CDT Oxford Mem. at 6-7).  That is

not the law. The exercise of personal jurisdiction over out-of-state defendants is appropriate where

they have "reached out beyond one state and create continuing relationship and obligations with

citizens of another state." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985). Specific

jurisdiction exists where the defendant enters into a contract with a resident of the forum, and the

claim arises out of that agreement. *Hall v. LaRonde*, 66 Cal. Rptr. 2d 399 (Cal. Ct. App. 1997) (New

York defendant's contract with a California resident subjects the defendant to personal jurisdiction in

California, even though defendant was not physically there); *Gator.Com Corp. v. L.L. Bean, Inc.*,

341 F.3d 1072, 1078 (9th Cir. 2003).  Therefore, CDT Oxford's motion should be rejected on that

basis alone.

PLF'S OPP. TO CDT OXFORD's MOTION TO DISMISS
No. C-08-1780 MHP

3.    **CDT Oxford Is Subject To Specific Jurisdiction Because Of The Effects Of Its Conduct Resulted In Injury In California**

The entry into a contract with California residents, out of which these claims arise, is, without more, sufficient to bestow jurisdiction over CDT Oxford.  But there is an additional independent jurisdictional basis, namely that the fraudulent conveyances here caused injury to a California resident, and impaired the California judgment that Sunnyside obtained in this Court. The wealth of cases applying jurisdictional analysis in these circumstances – not mentioned or addressed in CDT Oxford's papers – confirm this independent basis for jurisdiction.

CDT Oxford acknowledges the "effects test" jurisdiction, by which it can be haled into a forum even where the tort occurs outside of the jurisdiction.  The effects test is satisfied if the defendant (1) commits an intentional act; (2) expressly aimed at the foreign state; (3) causing harm in the foreign state that the defendant knew was likely to be suffered in that state. See *Calder v. Jones*, 465 U.S. 783, 790, 104 S.Ct. 1482, 1487 (1984); *Harris Rutsky*, 328 F.3d at 1131; see also *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000) (holding that personal jurisdiction is satisfied "when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state.").

Tellingly, CDT Oxford presents its **entire** analysis of the *Calder* test in the abstract discussion of internet commerce, without a single reference to the host of cases applying *Calder* in the context of a fraudulent conveyance claim.  (See CDT Oxford Mem. at 10-13).  CDT Oxford's discussion of *Calder* in the context of internet web sites fails to address the specific analysis of *Calder* in the circumstances presented here, cases that support finding personal jurisdiction.

Several courts have applied *Calder*'s "effects test" in the context of fraudulent conveyance claims, and each has determined that harm to a creditor in the jurisdiction satisfies the effects test, even where actual conveyance is made outside the forum. *Air Products and Controls, Inc. v. Safetech International, Inc.*, 503 F.3d 544, 552-53 (6th Cir. 2007). See also *State Farm Mutual, Automobile Insurance Co. v. Tz'doko V'chesed of Klausenberg*, 543 F.Supp.2d 424 (E.D. Pa. 2008); *In re Teknek, LLC (Levey v. Hamilton)*, 354 B.R. 181, 197 (Bankr. N.D. Ill. 2006). Each concludes that injury to a creditor's judgment held by the plaintiff in the forum state subjects the out-of-forum transferee to the Court's jurisdiction.

The *Air Products* case presents a compelling analogy to the present factual circumstances. Like the present case, the transfer at issue occurred between defendants outside the forum, but had the effect of impairing plaintiff's judgment in the forum state. In *Air Products*, the Sixth Circuit Court of Appeals reversed the Michigan District Court's grant of a motion to dismiss for lack of personal jurisdiction over Mr. Davenport, a Kansas resident who had received a fraudulent transfer from Safetech, a Kansas company. *Air Products*, 503 F.3d at 548. The Court of Appeals determined that even though the transfer had occurred outside of the jurisdiction, Davenport was nonetheless subject to the Michigan Court's jurisdiction because "Davenport was aware of Sefetch's debt to Air Products" (*id*. at 549) and that "Defendants also undoubtedly knew that [plaintiff] had its principal place of business in Michigan, and that the focal point of its actions and the brunt of the harm would be in Michigan." *Id*. at 553.

Similarly, in the recent *State Farm* decision, the court upheld the exercise of personal jurisdiction over an out-of-state fraudulent transferee, even though the transferee had no connection to Pennsylvania, and his conduct consisted only of receiving the fraudulent transfer in New York. Critical to the decision was that the injury (and underlying action in which the judgment had been obtained) occurred in Pennsylvania: "The injury is alleged to have been

PLF'S OPP. TO CDT OXFORD's MOTION TO DISMISS
No. C-08-1780 MHP

suffered by State Farm here in Pennsylvania, which is where State Farm sought to enforce the judgment." *Id*. at 431.

A similar conclusion was reached in *In re Teknek, LLC*, 354 B.R. 181, where the court found that it could exercise personal jurisdiction over two U.K citizens based upon their out-of-forum transfers of assets that harmed the judgment debtor in the forum. Defendants then transferred all the funds to themselves as individuals, leaving the LLC without money or assets to satisfy its creditors. The Court determined that the relevant inquiry was whether injury would be suffered in the forum state:

> the minimum contact [transfers] contributed to the debtor's balance-sheet insolvency. Moreover, this single minimum contact contributed to the debtor's ability to avoid paying the same judgment; was a transfer to insiders; coincided with a pending lawsuit and eventual jury verdict; and – being a distribution/dividend as opposed to a salary payment or loan repayment –may have been in exchange for less than reasonably equivalent value. That is, the single contact had a cognizable role in transfers that were allegedly both constructively and actually fraudulent.

*In re Teknek, LLC*, 354 B.R. at 199.

CDT Oxford's only response is to make the factual allegation that "none of the 2002, 2004 or 2005 transactions were expressly aimed at California." (CDT Oxford Mem. at 11). However, CDT Oxford then delves into a discussion of the 2005 transfer of stock to CDT Limited, rather than the 2002 transfer of property to CDT Oxford. (CDT Oxford Mem. at 11-12). Therefore, CDT Oxford's focus of a whole paragraph on its factual allegations (which could not be credited without discovery) about the 2005 transfer to CDT Limited is not relevant, because CDT Limited does not contest jurisdiction.

With respect to the 2002 transaction, CDT Oxford knew that the inability to use these assets transferred to it would cause harm to Opsys's creditors, specifically Sunnyside. This is, in the words of the Seventh Circuit, "Defendants also undoubtedly knew that [plaintiff] had its

principal place of business in [the forum], and that the focal point of its actions and the brunt of the harm would be in [the forum]." *Id*. at 553. Or, as the *In re Teknet* court found "this single minimum contact contributed to the debtor's ability to avoid paying the same judgment." Each suffices to establish the necessary injury to the California creditor, Sunnyside, and impairment of the California judgment.

C.    **The Claims Arise Out Of The 2002 Transaction Agreement**

CDT Oxford acknowledges that Courts apply a "but for" test to determine whether the claims arise out of the California-related activities. (CDT Oxford Mem. at 13). See also *Harris Rutsky*, 328 F.3d at 1131-32. It cannot be disputed that but for the 2002 transaction agreement, the transfer to CDT Oxford would not have happened, and the harm to Opsys and its creditors would have taken place.

Realizing that it cannot overcome the "but for" standard, CDT Oxford simply makes up a different standard, asserting that the Court should determine not whether Sunnyside's claim was caused "but for" the transaction, but rather whether this transaction caused the <u>entirety</u> of Sunnyside's injury. It therefore variously asserts that the claim involves having to show "but for [2002 transaction] Sunnyside would be able <u>to satisfy its judgment</u> against Opsys." (CDT Oxford Mem. at 9). Similarly, it later asserts that "there is no evidence that, but for CDT Oxford's participation in the 2002, 2004 and 2005 transactions, <u>Opsys would now be able to satisfy Sunnyside's judgment against it</u>." (CDT Oxford Mem. at 13)(emphasis added). That false test is a strawman, meant to distract the Court. A fraudulent conveyance does not require proof that Opsys would be unable to satisfy the whole judgment, it requires only that an asset was transferred without a debtor receiving equivalent consideration. Cal. Civ. Code §3439.05. The remedy is the return of the property, whether or not the return of the property will wholly, or only partially, satisfy the creditor's claims. "Being able to satisfy" the judgment is not an

element of fraudulent conveyance claim, and therefore Sunnyside only has to show that "but for" the transaction agreement with a California resident, there would not have been a 2002 fraudulent conveyance. Since the transfer was caused by the transaction agreement, it is self evident that "but for" causation is shown between the contact and the claim.

**D.    CDT Oxford Has Failed To Carry Its Burden Of Showing That The Exercise Of Personal Jurisdiction Over CDT Oxford Is Unreasonable**

As shown above, CDT Oxford purposefully established minimum contacts with California. The burden then shifts to CDT Oxford to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Harris Rutsky & Co. Ins. Serv.*, 328 F.3d at 1132. Seven factors are relevant to making this determination:

> (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Harris Rutsky*, 328 F.3d at 1132 (citation omitted). CDT Oxford's proffer does not satisfy any element.

**1.    CDT Oxford Continues To Interject Itself Into The Forum Through Its Use Of The Fraudulently Obtained Property In California, through CDT Limited**

The record shows CDT Oxford's repeated interjection of itself into California, starting in 2002 and continuing to the present. That interjection shows that it would not be unjust to have CDT Oxford return to California to account for the transfer it received in a transaction agreement with California residents.

Moreover, CDT Oxford does not need to "return" to California, for it is already here. CDT Limited is CDT Oxford's agent with respect to the IP, as it continues to license that IP to

PLF'S OPP. TO CDT OXFORD's MOTION TO DISMISS
No. C-08-1780 MHP

California companies, including to Litrex and Add-Vision. (Compl. ¶¶14, 15).  Having

contractual relationships with several California-based clients provides, along with reaching out

to seek financially-lucrative relationships.  *Harris Rutsky*. 328 F.3d at 1134.

CDT Oxford argues that the licenses were entered into by CDT Limited, and that CDT

Limited's actions are not attributable to CDT Oxford.  In an apparent attempt to evoke memories

of the *Sunnyside I* action, it embarks on a lengthy discussion shooting down theories of successor

liability and "alter ego" (CDT Oxford Mem. at 14-16), even though the Complaint does not rely

upon those for purposes of personal jurisdiction.

The answer is much simpler – by CDT Oxford's admission, CDT Limited is its

"exclusive agent."  Surprisingly, CDT Oxford makes the conclusory statement that "there is no

allegation – and no evidence – that CDT Ltd. performs any services for CDT Oxford in

California."  However, the Complaint alleges that CDT Limited is CDT Oxford's agent, a point

CDT acknowledges on this motion.  The 2002 transaction agreement which provides that "[CDT

Oxford] hereby designates [CDT Limited] as the sole and exclusive agent and attorney to

perform the services under this agreement on behalf of and act as [CDT Oxford]."  (Section 7,

Exhibit B to Affidavit of Scott Brown, filed on July 28, 2008).  Therefore, the first portion of

CDT Oxford's defense is false – CDT Limited is CDT Oxford's agent.

The second portion of CDT Oxford's defense – that the IP isn't used in California – is

also unwarranted.  CDT Oxford acknowledges that it holds the Opsys IP.  (¶9, Affidavit of Scott

Brown, dated July 28, 2008)("Today CDT Oxford holds intellectual property.").  That IP is being

licensed to partners in California.  In return, CDT Oxford earns significant monies. (Compl. ¶

15).  CDT Oxford argues that "CDT Oxford has not entered into any agreements with Add-

Vision, Inc.  Any licensing arrangement with Add-Vision, Inc. is with CDT Ltd." (Brown Aff.

12).  Similarly, Mr. Brown alleges "CDT Oxford has not entered into any agreements with

PLF'S OPP. TO CDT OXFORD's MOTION TO DISMISS
No. C-08-1780 MHP

Litrex.  Any licensing arrangement with Litrex is with CDT Ltd." (*id*. at ¶15).  This is meant to obscure that while CDT Limited is licensing the CDT Oxford IP, it does so because it is acting as CDT Oxford's agent, a fact made express in the transaction agreement.  Thus, the licenses alleged in the Complaint are of the IP owned by CDT Oxford, which is managed and controlled by CDT Limited.  CDT Oxford acknowledges that the IP resides with it, but that it has no more employees (CDT Oxford Mem. at 2-3).  Thus, it functions through its appointed agent, CDT Limited, which has entered into these licenses <u>of the CDT Oxford IP</u> with California companies, on behalf of CDT Oxford.

CDT Oxford attempts to avoid those direct contacts by citing cases that are not factually on point.  CDT Oxford mis-states the *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998) decision, arguing that it stands for the proposition that it is inappropriate to attribute contact due to a license agreement simply because the "licensees <u>resided or</u> did business in" the forum.  (CDT Oxford Mem. at 5)(emphasis added).  However *Red Wing Shoe* court did not address a defendant's direct licenses with states <u>residents</u>.  It addressed – and founded its holding – on the attenuated contact where a licensor licensed to entities that themselves did busines in the forum state:  "In simple terms, doing business with a company that does business in Minnesota is not the same as doing business in Minnesota."  *Red Wing Shoe*, at 1361.  That distinction was relevant because jurisdiction would be founded on the licensee's independent decision to do business in California.  Here, it is **not** alleged that CDT Oxford is subject to jurisdiction because it licensed its IP to companies that **do business** in California.  It is alleged that CDT Oxford licensed its IP **to California residents**.  CDT Oxford is not haled into California because of an independent choice by its licensees to do business in California, as was the case in *Red Wing*, it is haled into Court because of its own choice to do business here.

PLF'S OPP. TO CDT OXFORD's MOTION TO DISMISS
No. C-08-1780 MHP

CDT Oxford also mis-places reliance upon *Bancroft & Masters*, 223 F.3d at 1086 decision, holding that license agreements with California companies was not, by itself, sufficient to confer general jurisdiction over the defendants.   However, the license agreements at issue here are not ancillary to the claims at issue – they are the very property that was fraudulently conveyed, being used and marketed in California.  Also, Sunnyside is not relying on those contacts as the sole basis for general jurisdiction.  It is presenting those contacts as an element of the reasonableness of having CDT Oxford account for its conduct in California.

2.    **There Is No Burden To CDT Oxford In Responding In This Forum California Counsel already appearing on behalf of CDT Oxford's agent, CDT Limited**

CDT Oxford presents a series of arguments about how Sunnyside would not be burdened by proceeding in the United Kingdom. (CDT Oxford Mem. at 14).  However, CDT Oxford identifies no burden caused by participating in California.  There is no real burden, as CDT Oxford's counsel also represents CDT Limited, and will already be proceeding before this Court. There is no inconvenience to CDT Oxford's employees, as CDT Limited has conducted the transactions on its behalf, and will be appearing here in any event because of their role with CDT Limited.  Conversely, it is unreasonable to require Sunnyside, a California resident, to travel to the United Kingdom to enforce its California judgment, against a transfer that arose from CDT Oxford's decision to avail itself of California by entering into an agreement with California residents.

3.    **California Has A Strong Interest In Adjudicating The Dispute**

California has a strong interest in protecting its resident creditors, and to preserve the integrity of a judgment entered by this State's courts.  California's strong public interest is codified in its law allowing the holder of a California judgment to levy against the assets fraudulently conveyed.  It expressly extends the 3439.07 relief that "a creditor, . . . , may obtain

PLF'S OPP. TO CDT OXFORD's MOTION TO DISMISS
No. C-08-1780 MHP

(1) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim.

(2) An attachment or other provisional remedy against the asset transferred or its proceeds in accordance with the procedures described in Title 6.5 (commencing with Section 481.010) of Part 2 of the Code of Civil Procedure." That is the very remedy that Sunnyside invokes here.

"California's general policies of affording relief to its citizens who have suffered a breach of contract or a tort (Civ. Code §§3300, 3333) and of punishing and deterring wrongful conduct give it a strong interest in application of its law. *Wong v. Tenneco, Inc.*, 39 Cal.3d 126, 143 (1985), Mosk, J. dissenting. See also *West Corp. v. Superior Court (Sanford)*, 116 Cal.App.4th 1167, 1180 (2004) (California "has a 'legitimate and compelling interest in preserving a business climate free of fraud and deceptive practices'") (quoting *Diamond Multimedia Systems, Inc. v. Superior Court*, 19 Cal.4th 1036, 1064 (1999)). "California maintains a strong interest in providing an effective means of redress for its presidents [who are] tortuously injured." *Harris Rutsky*, 328 F.3d at 1133, quoting *Sinatra v. National Enquirer*, 854 F.2d 1191, 1200 (9th Cir. 1988).

That strong public interest extends to protecting its residents from being deprived of a remedy due to a fraudulent conveyance impairing a California judgment. See *In re Teknet*, 354 B.R. at 199 ("To the extent that a Californian business interest was harmed financially, is unable to collect on the judgment compensating for the harm, and is thus a creditor in this Chapter 7 case, there exists a Californian interest in the outcome of this adversary proceeding against Kennett and Hamilton as well.")

Moreover, this Court already has familiarity with the case. In contrast, the United Kingdom proceedings address Opsys's **current** condition, winding up the insolvent company. Both Sunnyside's and CDT's U.S. counsel has familiarity with the action, whereas transferring the action to the U.K. would require a whole shift in counsel, involving significant time and

effort to familiarize themselves with these particular transactions.  Therefore, CDT Oxford's

argument for the alternative forum simply would create significant upheaval and expense to

Sunnyside, which is only attempting to collect a judgment in the manner provided by California

Civil Code § 3439.07.

IV.    **CONCLUSION**

For the reasons set forth above, Sunnyside requests that the Court deny defendant CDT

Oxford Limited' motion to dismiss the Complaint based upon lack of personal jurisdiction.

Dated:  August 18, 2008

STIGLICH & HINCKLEY, LLP


By: s/ Michael Hinckley
    Michael L. Hinckley

The CCDS Building
502 Seventh Street
San Francisco, CA 94103
Telephone: (415) 865-2539

TRAIGER & HINCKLEY LLP
501 Fifth Avenue, Suite 506
New York, NY 10022-4730
Tel.: (212) 759-4933