STIGLICH & HINCKLEY, LLP
MICHAEL HINCKLEY #161645
The CCDS Building
502 Seventh Street
San Francisco, CA  94103
Telephone:  (415) 865-2539
Facsimile:  (415) 865-2538
hinckley@stiglichhinckley.com

TRAIGER & HINCKLEY LLP
CHRISTOPH C. HEISENBERG
501 Fifth Avenue, Suite 506
New York, New York 10017
cheisenberg@traigerlaw.com

Attorneys for Plaintiff
SUNNYSIDE DEVELOPMENT COMPANY LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SUNNYSIDE DEVELOPMENT COMPANY LLC,<br><br>                    Plaintiff,<br><br>    vs.<br><br>CAMBRIDGE DISPLAY TECHNOLOGY LIMITED, CDT OXFORD LIMITED, OPSYS LIMITED, and JOHN DOES I through V,<br><br>                    Defendants. | No. C-08-1780-MHP<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STAY DISCOVERY**<br><br>Date:  September 8, 2008<br>Time: 2:00 p.m.<br>Courtroom 15, 18th Floor<br>Hon. Marilyn Hall Patel |

# TABLE OF CONTENTS

                                   Page

I. PRELIMINARY STATEMENT ...................................................................................1

II. THE FACTS .................................................................................................................2

  A. Sunnyside's 2004 Breach Of Contract Action Plainly Did Not "Overlap" With The May 2005 Transaction for Less Than Reasonably Equivalent Value. .............2

  B. The *In Rem* New York Escrow Proceeding Is Wholly Irrelevant to Defendants' Stay Request and, In Any Event, Was Caused by Defendants' Own Conduct. ......3

  C. Opsys's U.K. Insolvency. ...............................................................................6

III. ARGUMENT .................................................................................................................6

  A. Defendants Have Not Made Out "A Clear Case Of Hardship Or Inequity In Being Required To Go Forward." ..................................................6

    1. The Equitable Balancing Test That Governs This Motion ..........................6

    2. The Balance of the Equities Tips Decidedly in Favor of Allowing This Action to Go Forward. ..................................................................................7

    3. A Stay Is Not Necessary to "Advance the Orderly Course of Justice." ......8

IV. CONCLUSION ..............................................................................................................9

## TABLE OF AUTHORITIES

Page

*CMAX, Inc. v. Hall*, 300 F.2d 265 (9th Cir. 1962) ........................................................................7

*Landis v. North American Co.*, 299 U.S. 248, 255 (1936) ......................................................1, 6, 8

*Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1010 (9th Cir. 2005) ......................................................6

*Sunnyside Development Company LLC v. Opsys Limited,* No. 05-cv-00553 (MHP) .....................2

*Sunnyside Development Company LLC v. Bank of New York,*
2008 U.S. Dist. LEXIS 11800 (S.D.N.Y. Feb. 15, 2008) ................................................................5

# I. PRELIMINARY STATEMENT

A party seeking a stay of discovery pending a motion to dismiss "must make out a clear case of hardship or inequity in being required to go forward …" *Landis v. North American Co.*, 299 U.S. 248, 255 (1936). In their attempt to stay Sunnyside from moving forward with this action, defendants portray themselves as victims in need of special protection from the Court from a "serial filer of lawsuits." Nothing could be further from the truth.

The judgment debtor in this case is a wholly-owned subsidiary of Sumitomo Corporation, one of the largest conglomerates in the world, with paid-in capital exceeding 200 billion Japanese Yen.[1] It has failed to pay a judgment for $4.9 million in California office rent that is justly due and owing.[2] The defendants have avoided making <u>any</u> payment of this just debt by transferring Opsys's ownership of the $19 million subsidiary CDT Oxford that held the valuable dendrimer technology to CDT Limited in 2005 for less than reasonably equivalent value -- indeed for nothing. Defendants do not need special protection. Although Defendants feign amazement at the steps Sunnyside has taken to enforce its judgment, such actions are traditional steps taken by creditors when confronted by a transaction in which affiliates receive assets valued at $19 million, and the debtor received only $5 million. Moreover, much of the additional litigation outside this forum was caused directly by CDT's present counsel, which sent Sunnyside on a wild goose chase to New York by making mischaracterizations to this Court in *Sunnyside I*. Far from being victims in need of protection, it is the defendants' own fast-and-loose actions in seeking to avoid their just debts that have caused the prior proceedings of which they now complain.

---

[1] See http://www.sumitomocorp.co.jp/english/
[2] Opsys has withdrawn its appeal the judgment rendered against it. That judgment is now final and is not subject to any further appeals.

Plaintiffs' Mem. in Opp. Motion For Stay
No. C-08-1780-MHP

Lastly, Defendants' motion proceeds on the erroneous concept that this action depends upon the outcome of Ninth Circuit's decision in *Sunnyside I*.  That appeal is based upon the principles of successor liability – i.e., by definition, the transfer of assets **to CDT, Inc.** (those in 2002 and 2004).  The present action, based on fraudulent conveyance of assets is based, by definition, upon transfers to **CDT Limited** (in 2005).  The two actions are necessarily distinct and mutually exclusive.  Therefore, the Ninth Circuit's appeal pertaining to transfers to CDT Inc. is not critical to this action against CDT Limited and CDT Oxford.  There is no need to await that appeal.

## II. FACTS

Defendants' motion professes shock that Sunnyside, being owed $4.9 million, would avail itself of the ordinary judgment creditor rights expressly afforded by California Law when affiliates receive assets worth $19 million, giving the debtor only $5 million.  As is explained below, Sunnyside's resort to those remedies hardly makes them a serial filer.

**A.    Sunnyside's 2004 Breach Of Contract Action Plainly Did Not "Overlap" With The May 2005 Transaction for Less Than Reasonably Equivalent Value.**

In its Motion to Stay, Defendants state that "*Sunnyside I* and *Sunnyside II* both allege that the May 2005 transaction were fraudulent." (Defts Mem at 2). This is simply nonsense.  The 2004 "*Sunnyside I*" Complaint sought to obtain a judgment for unpaid office rent owed by Opsys on a 2001 lease.  The issue in this action is whether the judgment debtor Opsys received reasonably equivalent value when it transferred CDT Oxford to CDT Limited in May of 2005 while it was insolvent.  This obviously was not an issue in the 2004 Compliant for unpaid office rent. The May 2005 transaction had, of course, not yet even occurred.  There is no "overlap."

Until Sunnyside obtained a judgment on the office rent claim it had no reason to believe that Opsys had rendered itself judgment proof by transferring its last remaining assets.

Presumably Defendants' reference to "*Sunnyside I*" is meant to refer not to the action itself (in which the transfers were not relevant), but to the Rule 25 post-verdict motion. Even to that extent, Defendants ignore that the Rule 25 motion was predicated, by definition on the successor liability doctrine – on transfers of assets **to CDT, Inc.**, not CDT Limited. Sunnyside's Rule 25 motion **expressly reserved litigating its fraudulent conveyance claims against other entities**, which is exactly what Sunnyside, as a judgment creditor, is doing now. Therefore CDT's arguments about this action being duplicative of the *Sunnyside I* case are superficial and misplaced.

**B.     The *In Rem* New York Escrow Proceeding Is Wholly Irrelevant to Defendants' Stay Request and, In Any Event, Was Caused by Defendants' Own Conduct.**

Defendants make much ado about the New York proceeding. Most significantly, defendants never explain how the fact of the New York *in rem* proceeding regarding the escrow account has anything whatsoever to do with a request to stay the instant action pending the resolution of the Ninth Circuit appeal. It simply does not. The issue in the instant case is whether Opsys received reasonably equivalent value when it transferred CDT Oxford to CDT Limited in May of 2005. The issue in the *in rem* New York proceeding was whether a Sunnyside, as a judgment creditor of Opsys, could attach the escrow account that was ostensibly created to protect creditors.

Defendants crow about the New York victory, ignoring why the New York proceeding was necessary in the first place. In order to avoid successor liability, defendants' counsel repeatedly told this Court, in essence, that Sunnyside should look not to CDT Inc. for payment, but instead should look to the New York escrow account that was established to "protect" Opsys's creditors. So, taking CDT at its word, Sunnyside jumped through all the hoops necessary to docket its judgment as a New York State judgment, and, as a judgment creditor,

3

attached the escrow account in a New York *in rem* action. Once Sunnyside arrived in New York however, CDT's east coast Pillsbury lawyers sang quite a different tune than had their west coast Pillsbury lawyers, and asserted that Sunnyside had absolutely no rights at all in the escrow account. Indeed, rather than being used to protect creditors, the funds in the escrow account were instead used to pay the Orrick and Pillsbury law firms.

Set forth below is a comparison of what CDT initially represented to Your Honor in California and what it later represented in New York, when Sunnyside attempted to actually get paid:

| CDT's REPRESENTATIONS TO THIS COURT TO AVOID SUCCESSOR LIABILITY | CDT's NEW YORK REPRESENTATIONS WHEN SUNNYSIDE ATTEMPTED TO GET PAID |
|---|---|
| "the proceeds of the transactions were held in escrow and trust for the benefit of creditors, known and unknown." <br><br> (CDT Post-Verdict Mem. at 2 (Dkt. 207)(Def. Ex. S) | "CDT Inc. did not . . assert that the purpose of the 2004 transactions and the Escrow Agreement was to benefit creditors…." <br><br> (CDT Mem. to New York at 10)(Heisenberg Aff. Ex. 12). |
| "most of the consideration paid to Opsys and its shareholders would be escrowed or placed in trust for the protection of Opsys' creditors, rather than simply be transferred outright to Opsys' shareholders." <br><br> (Dec. of CDT's M.Black ¶10 (Dkt. 204) (Def. Ex. P) | "the escrow was not designed to protect Opsys." <br><br> (CDT Mem. to New York, at 1) |
| "CDT Inc. took steps to ensure that it would not assume Opsys' liabilities and that Opsys would pay those liabilities itself. . . . CDT Inc. deposited part of this consideration into an escrow account as security for any unidentified liabilities of Opsy, including contingent liabilities." <br> (CDT Post-Verdict Mem. at 12)(Def. Ex. S) | "Opsys has no interest in the Escrow Assets, nor any claim on them." <br><br> (CDT Mem. to New York, at 2) |

| | |
|---|---|
| "The purpose of the escrow is … to assure that if any unknown liabilities did emerge, they would be satisfied by Opsys Limited from the escrowed portion of the consideration, and not by CDT."<br><br>(Opsys Post-Verdict Mem., at 12-13)(Dkt. 198). | "Opsys has no . . . right to require payment from BNY (as escrow agent)"<br><br>(CDT Mem. to New York at 13) |
| "The Transaction Agreement and Amended Settlement Agreement explicitly provided for the satisfaction of all of Opsys' identified liabilities, as well as providing for contingent liabilities and unidentified liabilities."<br><br>(CDT Post-Verdict Mem, at 19)(Def. Ex. S) | "There is no agreement of CDT Inc. to pay Opsys' unknown or contingent liabilities from the Escrow Assets."<br><br>(CDT Mem. to New York at 2 |
| CDT's counsel: Most of it is still sitting there either in a formal escrow or in something that is the equivalent of an escrow.<br>Judge Patel: That can be used to satisfy any judgment in this case?<br>CDT's Counsel: ..the money is there, its basically there for the sake of creditors.<br><br>(Tr. at 56-57)(Dkt. 218)(Def. Ex. U) (emphasis added). | "CDT Inc. never suggested that creditors had enforceable rights to access Escrow Assets."<br><br>(CDT Mem. to New York, at 23) |

Faced with this about-face, the New York District Court found that the statements made to Your Honor regarding the escrow account constituted "an extravagant mischaracterization." *Sunnyside Development Co. LLC v. Bank of New York*, 2008 U.S. LEXIS 11800 *6-7 (S.D.N.Y. Feb. 15, 2008).

In short, the fact of the New York proceeding in no way, shape or form supports defendants' request for a stay of this action. There is absolutely nothing improper, unusual or untoward about a judgment creditor seeking to restrain assets available to satisfy an unpaid multi-million dollar judgment. On the contrary, the turnover action was a direct result of, and caused by, Defendants' own "extravagant mischaracterizations" to this Court that the New York

5

escrow account protected judgment creditors.

**C.     Opsys's U.K. Insolvency.**

For some unexplained reason, Defendants think it strange that Opsys Limited, having given away its last asset to its affiliate, CDT Limited in 2005, has been placed into bankruptcy in England.

## III. ARGUMENT

### A.  DEFENDANTS HAVE NOT MADE OUT "A CLEAR CASE OF HARDSHIP OR INEQUITY IN BEING REQUIRED TO GO FORWARD."

**1.     The Equitable Balancing Test That Governs This Motion.**

A district court has discretionary power to stay proceedings in its own court under *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). In *Landis*, two holding companies sued the SEC in the District Court for the District of Columbia to enjoin enforcement of the Public Utility Holding Company Act of 1935 on the ground that it was unconstitutional. Numerous similar suits were filed, in the District of Columbia and elsewhere, against the SEC. The SEC filed a complaint in the Southern District of New York to compel other holding companies to comply with the terms of the Act. The District of Columbia district court stayed its suit, indicating that the stay would last until the New suit was decided on appeal by the or was otherwise finally resolved.

The Supreme Court reversed, holding:

> **[A party seeking] a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else.** Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both.

*Id*. at 255 (emphasis added).

In *Lockyer v. Mirant Corp.*, 398 F.3d 1098,1010 (9th Cir. 2005), the Ninth Circuit

reaffirmed that the following equitable factors to be considered where a *Landis* stay is requested:

> Where it is proposed that a pending proceeding be stayed, the competing interests which will be affected by the granting or refusal to grant a stay must be weighed. Among those competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

*Id*. at 1110, citing *CMAX, Inc. v. Hall*, 300 F.2d 265 (9th Cir. 1962).

### 2. The Balance of the Equities Tips Decidedly in Favor of Allowing This Action to Go Forward.

In this case, the balance of the equities clearly tips in favor of allowing this action to proceed. Sunnyside is a small Fremont, California property owner that holds an unsatisfied judgment of $4.9 million for unpaid office rent. CDT and its affiliates have received the benefit of the unpaid-for California office space, and then, in the 2005 transaction, received the benefit of Opsys's IP, transferring Opsys's subsidiary CDT Oxford (worth $19 million) to CDT Limited for no value. Moreover, CDT recently sold itself to Sumitomo -- a multibillion-dollar worldwide conglomerate -- for $285 million. A key driver of that sale was the valuable dendrimer technology used in a flat screen televisions and computer displays. It was this valuable technology that was the principal asset of CDT Oxford, and which was transferred by the judgment debtor Opsys to CDT Ltd. in May 2005 for no consideration while Opsys was insolvent.

Sunnyside has had <u>no</u> discovery from defendants concerning this May 2005 transfer. Indeed, the primary reason for defendants' stay in motion appears to be to prevent Sunnyside from obtaining discovery concerning this transfer. We have just recently, within the past few weeks, obtained from third-party Ernst & Young a copy of a valuation report commissioned by CDT to asses the fair value of that dendrimer technology. That valuation formed the basis for CDT's valuation of CDT Oxford at $19 million. (See Heisenberg Aff. Ex. 1). Defendants' goal

with this stay motion is to halt any discovery of the actual truth of its transfer, while attempting to foster the illusion that 2005 transfer has been addressed previously.

Defendants have not come close to "mak[ing] out a clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 254. Indeed, not only have defendants and their affiliates obtained the unpaid-for office space but, unlike plaintiff, they have borne virtually none of the legal costs of the prior action, since defendants paid the Pillsbury and Orrick law firms from the escrow account that was purportedly designed to protect Opsys's creditors.

**3. A Stay Is Not Necessary to "Advance the Orderly Course of Justice."**

The Ninth Circuit's review of this Court's Order denying the Rule 25 successor liability of CDT **Inc.** will have little or no effect upon the prosecution of this action, which concerns the 2005 transfer of CDT Oxford to CDT **Limited** for no consideration.

The issue to be decided by the Ninth Circuit -- whether CDT **Inc**. is liable under Rule 25 a successor in interest -- is based on other transfers to CDT, Inc. The resolution of those transfers has nothing to do with whether Opsys received reasonably equivalent value when it transferred CDT Oxford to CDT **Limited** in 2005. Whether that order is affirmed or reversed will have no effect upon Sunnyside's action against the transferee CDT **Limited.** The issue in this case is not successor liability, it is *transferee* liability. The liability of CDT **Limited** has nothing to do with it being an affiliate of Opsys -- a complete stranger would be just as liable as a fraudulent transferee if it received property from Opsys in 2005 without giving Opsys reasonably equivalent value in return.

While it is true that Sunnyside's judgment might become satisfied, and its claim mooted, should the Ninth Circuit holds that CDT Inc. is liable as a successor, this is clearly no reason to stay to claim against a transferee who received property from an insolvent debtor.

In short, defendants cannot "make out a clear case of hardship or inequity in being

8

required to go forward." On the contrary, allowing this case to go forward to a resolution on the merits is fair, just and equitable to all parties. The defendant's request for a stay should therefore be denied.

### IV. CONCLUSION

For the reasons set forth above, Sunnyside requests that the Court deny defendants' motion to stay discovery.

Dated: August 18, 2008

STIGLICH & HINCKLEY, LLP

By: s/ Michael Hinckley
    Michael L. Hinckley

The CCDS Building
502 Seventh Street
San Francisco, CA 94103
Telephone: (415) 865-2539

TRAIGER & HINCKLEY LLP
George R. Hinckley, Jr. (GH-7511)
Christoph C. Heisenberg (CH-8736)

501 Fifth Avenue, Suite 506
New York, NY 10022-4730
Tel.: (212) 759-4933