1  STIGLICH & HINCKLEY, LLP
2  MICHAEL HINCKLEY #161645
   The CCDS Building
3  502 Seventh Street
   San Francisco, CA  94103
4  Telephone:  (415) 865-2539
   Facsimile:  (415) 865-2538
5  hinckley@stiglichhinckley.com

6  TRAIGER & HINCKLEY LLP
7  CHRISTOPH C. HEISENBERG
   501 Fifth Avenue, Suite 506
8  New York, New York 10017
   cheisenberg@traigerlaw.com
9

10 Attorneys for Plaintiff
   SUNNYSIDE DEVELOPMENT COMPANY LLC
11

12              UNITED STATES DISTRICT COURT

13            NORTHERN DISTRICT OF CALIFORNIA

14              SAN FRANCISCO DIVISION

15

16 SUNNYSIDE DEVELOPMENT             No. C-08-1780-MHP
   COMPANY LLC,
17                                   **PLAINTIFF'S OPPOSITION TO**
                          Plaintiff, **CAMBRIDGE DISPLAY**
18                                   **TECHNOLOGY LIMITED'S MOTION**
                                     **TO DISMISS**
19      vs.                          **[REDACTED]**

20 CAMBRIDGE DISPLAY TECHNOLOGY
   LIMITED, CDT OXFORD LIMITED,      Date:  September 8, 2008
21 OPSYS LIMITED, and JOHN DOES I    Time: 2:00 p.m.
   through V,                        Courtroom 15, 18th Floor
22                                   Hon. Marilyn Hall Patel
                         Defendants.
23                                   Filed herewith:
24                                   1. Affirmation of Christoph C. Heisenberg

25

26

27

28
                                     Plfs. Opp. CDT Ltd.'s Motion to Dismiss
                                     No. C:08-01780-MHP

# TABLE OF CONTENTS

Page

I.    PRELIMINARY STATEMENT ..................................................................................1

II.   THE FACTS ...........................................................................................................4

      A.    The 2005 Transfer Of CDT Oxford To CDT Limited For No Consideration ........4

      B.    The 2004 *Sunnyside I* Action Against Opsys and CDT Limited. ...........................5

      C.    The Court's Dismissal Of Fraud In The Inducement Claims
            Against CDT Limited ...........................................................................................6

      D.    The Post-Verdict Rule Motion For Rule 69 Discovery And For Rule 25
            Successor Liability Against CDT, Inc. ...................................................................6

      E.    CDT's Mischaracterizations To This Court During The Post-Verdict Motion. ......7

      F.    The Court's Order On The Post-Verdict Motion. ....................................................8

III.  ARGUMENT...........................................................................................................10

      A.    There Is No Claim Preclusion, As The 2004 Claim Against CDT Limited
            Does Not Bar Suit On The Later 2005 Fraudulent Conveyance .........................10

            1.    The "Could Have Been Brought" Preclusion Does Not
                  Preclude Claims Based Upon Fraudulent Conveyances
                  That Arise After The Original Complaint...................................................10

            2.    The Present Action Asserts New Claims, Not The *Sunnyside I* Claims....11

      B.    There Is No Issue Preclusion ...............................................................................13

            1.    Issue Preclusion Is Irrelevant Because This Court Made No Finding
                  That Opsys Received Equivalent Value In The Transfers To CDT Ltd....14

            2.    Assuming, *Arguendo*, A Finding That Opsys Received Equivalent Value,
                  That Finding Does Not Create Collateral Estoppel .................................16

                  a.    The Rule 25 Motion Did Not "Actually Litigate" The
                        Transfers To CDT Limited ...........................................................16

            3.    The Rule 25 Motion Did Not Provide Sunnyside The Procedure Necessary
                  To Constitute A "Full And Fair" Opportunity To Litigate The Issue........18

# TABLE OF CONTENTS

Page

a.    Sunnyside did not "waive" its right to discovery or cross-examine witnesses. ..............................................20

4.    Any Discussion Of The Transfers To CDT Limited Were Not "Critical And Necessary" To Sunnyside's Rule 25 Motion Against CDT, Inc. ......21

C.    Defendants Are Barred From Asserting Collateral Estoppel Because Of Their Inequitable Conduct During The Post-Verdict Motion..........................23

D.    Sunnyside's Fraudulent Conveyance Claims Are Well Pleaded And Not Subject To Dismissal ........................................................................23

E.    Sunnyside's Claims Are Timely ...........................................................24

1.    All of Sunnyside's California Fraudulent Conveyance Claims Are Timely.....................................................................24

2.    Sunnyside's Constructive Trust and Common Law Fraudulent Conveyance Claim Are Timely .................................................24

3.    Sunnyside's Claim under the UK Insolvency Act 1986 Is Timely............24

F.    Sunnyside's Claims Under The UK Insolvency Act Should Not Be Dismissed For Lack Of Subject Matter Jurisdiction .........................................25

CONCLUSION.............................................................................................25

1

*Allen v. McCurry, 449 U.S. 90, 95 (1980)* ...................................................................18

2

*Bailey v. Andrews,* 811 F.2d 366, 370 (7th Cir. 1987) ...............................................19

3

*Bates v. Jones*, 127 F.3d 870, 872 (9th Cir. 1997) ......................................................23

4

*Bayview Hunters Point v. Metropolitan Transp.,*
5   177 F.Supp.2d 1011, 1024 (N.D.Cal. 2001) ...............................................12, 13, 18

6

*Cabrera v. City of Huntington Park,* 159 F.3d 374, 381 n.12 (9th Cir. 1998) ...................2, 10, 11

7

*Clark v. Bear Stearns & Co., Inc.,* 966 F.2d 1318, 1321 (9th Cir. 1992) ......................................14

8

*Colon v. Coughlin,* 58 F.3d 865, 869 (2d Cir. 1995) .......................................................18

9

10   *Cortez v. Vogt*, 52 Cal.App.4th 917 (1997) .......................................................24

11   *Coon v. Georgia Pacific Corp.*, 829 F.2d 1563, 1568-71 (11th Cir.1987) ...................................17

12   *Costantini v. Trans World Airlines,*
13   681 F.2d 1199, 1201 (9th Cir.), *cert. denied,* 459 U.S. 1087 (1982) .............................................11

14   *Cromwell v. County of Sac,* 94 U.S. 351, 353 (1876) ...................................................11

15   *Davis & Cox v. Summa Corp.,* 751 F.2d 1507, 1518-19 (9th Cir. 1985) ......................................14

16   *Eureka Fed. Sav. & Loan Ass'n v. American Casualty Co. of Reading, Penn.,*
17   873 F.2d 229, 233 (9th Cir.1989) ......................................................................3, 16, 18

18   *Estate of Myers*, 139 Cal.App.4th 434, 440 (Cal. App. 4th Dist. 2006) ...................................24

19   *Fleet National Bank v. Valente (In re Valente)*, 360 F.3d 256 (1st Cir. 2004) ............................24

20   *Fund for Animals, Inc. v. Lujan, 962 F.2d 1391, 1398 (9th Cir. 1992)* ....................................11

21   *Golino v. City of New Haven*, 950 F.2d 864, 869-870 (2d Cir. 1991) ......................................21

22

23   *Hawthorne Savings F.S.B. v. Reliance Ins. Co. of Ill.,* 421 F.3d 835 (9th Cir. 2005),
*amended on other grounds,* 433 F.3d 1089 (9th Cir. 2006) ......................................................16

24   *Hydranautics v. FilmTec Corp.,* 204 F.3d 880, 888 (9th Cir. 2000) ......................................10, 13

25   *In re Lucas Dallas, Inc.*, 185 B.R. 801 (B.A.P. 9th Cir. 1995) ...............................................7, 23

26   *King v. Fox*, 418 F.3d 121 (2d Cir. 2005) .......................................................................23

27

28

    Plfs. Opp. CDT Ltd.'s Motion to Dismiss
No. C:08-01780-MHP

*Kourtis v. Cameron,* 419 F.3d 989, 994 (9th Cir. 2005)............................................13

*Lawlor v. Nat'l Screen Serv. Corp.,* 349 U.S. 322, 328 (1955)........................... 10-11

*Locurto v. Giuliani,* 447 F.3d 159, 169 (2d Cir. 2006)...........................................19

*Los Angeles Branch NAACP v. Los Angeles,* 750 F.2d 731, 739 (9th Cir. 1984) ........................11

*Macedo v. Bosio,* 86 Cal. App. 4th 1044 (2001)....................................................24

*Maciel v. C.I.R.,* 489 F.3d 1018, 1023 (9th Cir. 2007) ............................................3, 19

*Memorex Corp. v. IBM,* 555 F.2d 1379, 1384 (9th Cir. 1977) ......................................21

*Montana v. United States,* 440 U.S. 147, 164 (1979) ............................................19, 23

*Pool Water Products v. Olin Corp.,* 258 F.3d 1024, 1031 (9th Cir. 2001)..........................3, 21

*Potlatch Corp. v. Superior Court,* 154 Cal. App. 3d 1144 (1984) ................................22

*Pleming v. Universal-Rundle Corp.,* 142 F.3d 1354 (11th Cir. 1998).............................17

*Resolution Trust Corp. v. Keating,* 186 F.3d 1110, 1115 (9th Cir.1999) ..........................21

*Steen v. John Hancock Mut. Life Ins. Co.,* 106 F.3d 904, 907 (9th Cir. 1997)...........................18

*Sunnyside Development Company LLC v. Opsys Limited,* No. 05-cv-00553 (MHP) .......... passim

*Sunnyside Development Company LLC v. Bank of New York,*
2008 U.S. Dist. LEXIS 11800 (S.D.N.Y. Feb. 15, 2008)........................................4, 23

*White v. Illinois,* 502 U.S. 346, 356 (1992) ....................................................21

*Wu v. Thomas,* 863 F.2d 1543, 1548-49 (11th Cir.1989) ..........................................17

*Wyzard v. Goller,* 23 Cal.App.4th 1183, 1191 (1994)..............................................24

*United States v. U.S. Currency in the Amount of $119,984,* 304 F.3d 165 (2d Cir. 2002)............19

**UK Sources**

*Hill v. Spread Trustee,* [2006] EWCA Civ 542 ....................................................24

Insolvency Act of 1986....................................................................24

Limitations Act of 1980...................................................................25

Plfs. Opp. CDT Ltd.'s Motion to Dismiss
No. C:08-01780-MHP

1

2    **<u>Other Sources</u>**

3    Fed. R. Civ. Pro. 69.................................................................................................6

4    *Oxford Dictionary and Thesaurus, American Edition* (1996), Oxford University Press ...............1

5    D.Glenn, *The Tease of Memory*, The Chronicle of Higher Education, July 23, 2004 ed ...............1

6
     18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper,
7    *Federal Practice and Procedure* § 4409 (Supp. 1998)....................................................11

8    18A Wright, Miller & Cooper, *Federal Practice and Procedure* § 4421 (1981)........................22

9    18 James Moore, *Moore's Federal Practice* § 132.03[a], at 132-77 (3d ed. 1999) ....................16

10   18 Moore, *Moore's Federal Practice* § 132.03[4][f] .................................................22

11
     *Restatement (Second) of Judgments* § 27 cmt. D........................................................16
12

13   *Restatement (Second) of Judgments* § 27, cmt. H.......................................................22

14   *Restatement (Second) Trusts* § 404...................................................................24

15   Cal. Civ. Code § 3439.04(b) .........................................................................24

16   Cal. Civ. Code §3439.05..............................................................................2

17   N.Y. C.P.L.R. §5223..................................................................................2

18

19

20

21

22

23

24

25

26

27

28

Plfs. Opp. CDT Ltd.'s Motion to Dismiss
No. C:08-01780-MHP

# I.    PRELIMINARY STATEMENT

CDT's reference to Yogi Berra's "déjà vu all over again" is more than a bit ironic, for déjà vu is "an illusory feeling of having already experienced a present situation,"[1] one that tricks the rational brain to "make something appear falsely familiar."[2]  Creating such an illusion of false familiarity is precisely what CDT strains to achieve here. There is no claim preclusion, as this action does not litigate the same claims on which Sunnyside sued CDT Limited in *Sunnyside Development Company LLC v. Opsys Limited*, No. 05-cv-00553 (MHP)("*Sunnyside I*").  Indeed, the new action arises from events <u>after</u> *Sunnyside I* was filed, making claim preclusion impossible.  And there is no issue preclusion.  The Court's post-verdict decision restricted its holdings to the transfers made to Cambridge Display Technology, Inc. ("CDT **Inc.**"), which are not at issue in this action. This action involves transfers to CDT **Limited**, which were not litigated or addressed in the post-verdict motion against CDT **Inc.**  Those critical differences are fatal to CDT's preclusion defenses, and are not overcome by CDT's attempts to create the illusion that Sunnyside has previously litigated these claims.

CDT's attempt to escape liability through misplaced technical defenses is certainly understandable, for those technical defenses appear to be its only means of avoiding a clear record of fraudulent transfers from its own files. Sunnyside holds a $4.9 million unpaid judgment against Opsys Limited, a wholly-owned subsidiary of Sumitomo Group, a multi-billion-dollar conglomerate.  In 2005, CDT Limited received 84% of Opsys's subsidiary, CDT Oxford Limited ("CDT Oxford")(which was literally worth at least $19 million), giving Opsys <u>nothing</u> in return.  Because Opsys received <u>no</u> value in return for this 2005 transfer, the only question for purposes of fraudulent conveyance law is whether CDT Oxford had <u>any</u> value, for, if CDT Oxford had <u>any</u> value, then, by definition, the transaction was made "[w]ithout receiving a reasonably equivalent value in exchange for the transfer."

There can be no dispute that CDT Oxford had more than just <u>any</u> value.  CDT Oxford held the valuable intellectual property related to dendrimer technology used in developing television and computer displays.  The value of that technology was determined in June 2004 when CDT                REDACTED

                                to asses the fair value of that dendrimer technology.  That report found that "

---

[1] *Oxford Dictionary and Thesaurus, American Edition* (1996), Oxford University Press.
[2] D.Glenn, *The Tease of Memory*, The Chronicle of Higher Education, July 23, 2004 ed.  Available at http://chronicle.com/free/v50/i46/46a01201.htm (visited August 11, 2008)

1    REDACTED                                                  ." (Ex. 1 to the accompanying Aff. of

2    Christoph Heisenberg, at EY000096).[3]  Upon "acquiring" CDT Oxford for nothing in May 2005, CDT Limited

3    recorded the value of CDT Oxford at $  REDACTED      as of June 30, 2005. (EY 000018).  Those values are

4    roughly consistent with this Court's finding that CDT Inc. paid $2.5 million for the initial 16% stake (160 shares) of

5    CDT Oxford in December 2002.  (August 29, 2007 Op. and Order ("Rule 25 Order" at 4).  That price implies a value

6    of more than $13 million for the remaining 84% of CDT Oxford.

7          The transfer to CDT Limited was made so that the dendrimer technology could be shared with Sumitomo,

8    unencumbered by the pending litigation.  On May 24, 2005 CDT Limited agreed to form a joint venture with

9    Sumitomo, centered around this dendrimer technology.  The technology proved to be as valuable as anticipated, and

10   in September 2007 Sumitomo paid $285 million to acquire CDT, Inc. and this technology.  In other words, CDT has

11   parlayed this dendrimer technology into the centerpiece of being acquired by one of the world's largest conglomerates

12   for $285 million – the same technology that Opsys Limited gave away for free to CDT Limited in May 2005.  A

13   classic violation of Cal. Civ. Code §3439.05.  CDT Limited does not seriously contest these facts.  Instead, it invokes

14   two misplaced defenses to argue that these issues already have been litigated and decided.  Neither applies.

15

16         **Claim Preclusion**: CDT argues that Sunnyside's present claims are the same as those it asserted against CDT

17   Limited in *Sunnyside I*.  The defense is absurd on its face, as the May 2005 transfer had not yet even taken place when

18   Sunnyside commenced that action in December 2004.  "We do not believe that the *res judicata* preclusion of claims

19   that 'could have been brought' in earlier litigation includes claims which arise after the original pleading is filed in the

20   earlier litigation." *Cabrera v. City of Huntington Park*, 159 F.3d 374, 381 n.12 (9th Cir. 1998).  Moreover, Sunnyside's

21   present claims would not be barred because they are different than those asserted against CDT Limited in the prior

22   action.  *Res judicata* applies only where "the prior litigation involved the <u>same claim or cause of action</u> as the later

23   suit." *Id.* (emphasis added).  CDT's argument that the claims are identical because both are "fraud based" is a

24   superficial call to create the illusion that the claims are identical.

25

26         **Issue Preclusion**:  Next, CDT Limited argues that this Court's order on the 2007 post-verdict motion against

27

28   _____
     [3]      Because the *Sunnyside I* action did not involve the transfers of assets, Sunnyside never obtained discovery into the
     transfers to CDT Limited.  However, since the conclusion of *Sunnyside I*, Sunnyside has obtained limited discovery through its
     New York's judgment creditor rights, contained in N.Y. C.P.L.R. §5223.

CDT, Inc. resolved the present claims.  The attempt fails for several reasons.

• Foremost, there is no finding that might preclude this action.  The Court's Rule 25 order **neither addressed whether Opsys received adequate consideration in the 2005 transfer to CDT Limited, nor made a ruling on it.** The Court's findings on adequacy of consideration that CDT invokes were specifically and <u>expressly</u> limited to the transfers to CDT, **Inc.**  CDT Limited cannot invoke issue estoppel on a finding that this Court never made, and it cannot substitute a finding directed at CDT **Inc.**, not CDT **Limited**.  To the extent any of the Court's findings are relevant, it is the Court's finding that CDT had paid $2.5 million for 16% of CDT Oxford, meaning the remaining 84% was worth at least $13 million. Having used corporate distinctions to avoid payment, CDT cannot now blur those distinctions.

• The lack of a ruling concerning the adequacy of consideration in the transfers to CDT Limited is not surprising, as **Sunnyside did not actually litigate the transfer**.  Instead, the motion stated that Sunnyside "may also seek leave to file a supplemental claim for relief for fraudulent conveyance."  As CDT itself emphasized on the prior motion:  "[Sunnyside] seeks to add CDT **Inc.** to a judgment here, not CDT **Ltd.**" (Def. RJN Ex. S, at 15)(emphasis in original).  Sunnyside did not plead that the 2005 transaction was made without adequate consideration because Sunnyside did not even have discovery into the economic terms of the transaction.  "If a party had good reason not to contest an issue vigorously during the first action and did not, in fact, vigorously contest the issue, that party generally should be entitled to relitigate the issue during the second action." *Maciel v. C.I.R.*, 489 F.3d 1018, 1023 (9th Cir. 2007).  "Collateral estoppel is inappropriate if there is any doubt as to whether an issue was actually litigated in a prior proceeding." *Eureka Fed. Sav. & Loan Assn v. Amer. Cas. Co. of Reading Penn.*, 873 F.2d 229, 233 (9th Cir.1989).

• Assuming *arguendo* that the 2005 transfer was "actually litigated" (i.e., put at issue by Sunnyside), CDT Limited cannot establish two additional elements.  Findings are preclusive **only** if (a) the issue was "essential" to the prior judgment, <u>and</u> (b) the prior proceeding provided a full and fair opportunity to litigate the fact.  "Litigants are not precluded from relitigating an issue if its determination was merely incidental to the judgment in the prior action." *Pool Water Products v. Olin Corp.*, 258 F.3d 1024, 1031 (9th Cir. 2001).  This limitation was created for exactly the circumstances here, to prevent a stray observation on a non-essential point in a prior litigation from becoming preclusive in a subsequent litigation.

• Collateral estoppel is an equitable doctrine, and using the findings of the *Sunnyside I* post-verdict

1    motion would not be equitable.  A sister United States District Court has determined that CDT made

2    "extravagant mischaracterizations" to this Court in those post-verdict proceedings.  Those mischaracterizations

3    went to the heart of the "adequate consideration" findings that CDT now seeks to invoke.  *Sunnyside*

4    *Development Company, LLC v. Bank of New York,* 2008 U.S. Dist. LEXIS 11800 (S.D.N.Y. 2008).

5         In sum, Sunnyside is afforded an express post-judgment remedy by Cal. Civ. Code § 3439.07 to recover

6    property transferred by the judgment debtor without adequate consideration.  There is no dispute that Opsys harmed

7    Sunnyside by transferring its 84% stake in a $19 million dollar subsidiary to CDT Limited for no consideration.

8    While there may be facial appeal to CDT's call that Sunnyside should not re-litigate issues previously litigated, that

9    argument rests on the false illusion that the CDT Limited transfers previously were litigated.  They were not, and

10    Sunnyside should be afforded its first day before this Court to actually litigate that claim.

## II.    THE FACTS

A.    **The 2005 Transfer Of CDT Oxford To CDT Limited For No Consideration.**

14        Until May 2005, CDT Oxford was a subsidiary of judgment debtor Opsys Limited.  It held the intellectual

15    property related to dendrimer processing used in developing LCD displays.  In October 2002 CDT Inc. paid Opsys

16    $2.5 million to acquire the initial 16% stake (160 shares) of CDT Oxford.  (Rule 25 Order at 4).  That per share price

17    implies a value of more than $13 million for the remaining 840 shares of CDT Oxford that Opsys continued to hold.

18        In the course of preparing the 2004 audited financial statements – just two months before the transfer—CDT

19    confirmed for its auditor, Ernst & Young LLP, that the $19 million value at which it carried CDT Oxford on its books

20    remained unimpaired.  In that March 3, 2005 email to Ernst & Young, CDT's Michael Black

21
      REDACTED
22

23

24    (EY000033)(Heisenberg Ex. 2).  Upon "acquiring" the stock of CDT Oxford for <u>nothing</u> in May 2005, CDT

25    Limited recorded the value of that stock on its balance sheet at $ REDACTED as of June 30, 2005.  (EY 000018).

26    (Heisenberg Ex. 3). Ernst & Young noted the

27
      REDACTED
28
                                                          (*id.*)

PLF'S OPP. TO CDT LTD.'s MOTION TO DISMISS
                                                                 No. C-08-1780 MHP

Also in May 2005, CDT entered into a memorandum of understanding to create a joint venture with Sumitomo Chemical Co., Ltd.  Opsys's dendrimer technology was the centerpiece of the acquisition:  "The joint venture will . . . have exclusive access to 'next generation' high efficiency materials based on dendrimer chemistry which CDT gained through the acquisition of Opsys in 2002."  (Heisenberg Ex. 4).  The joint venture was formed in November 2005 with CDT's contribution to the joint venture consisting of the dendrimer technology.  (Heisenberg Ex. 5).  Through the joint venture, Sumitomo became convinced of the market value of this dendrimer technology, and in September 2007 Sumitomo paid $285 million for CDT, Inc.  (Heisenberg Ex. 6).  Opsys received <u>nothing</u> for transferring the CDT Oxford stock to CDT Limited, while it was insolvent.

B.    **The 2004 *Sunnyside I* Action Against Opsys and CDT Limited**

Sunnyside and Opsys entered into a lease in February 2001 for Opsys to lease its Fremont, California offices ("the 2001 Lease").  When Opsys breached the lease, Sunnyside brought the *Sunnyside I* action on December 14, 2004 against Opsys Limited and CDT Limited.  Because of CDT's current claim preclusion defense, it is relevant to determine the nature of Sunnyside's prior claim against CDT Limited.  Sunnyside asserted a garden variety fraud in the inducement claim, alleging that both Opsys and CDT Limited had made misrepresentations in February 2001 that caused Sunnyside to enter into the Lease:

> On or about February 15, 2001, in Fremont, CA and also in Oxford, England, defendants CDT and Opsys Ltd, by their officers and agents Gary Rhea (CFO of Opsys) and Michael Holmes (CEO of Opsys) and other officials of defendants, made materially false representations to plaintiff in order to induce plaintiff to lease the property to them.  Defendants OPSYS Ltd and CDT had SCIENTER, i.e. knowledge, of the falsify of their representations which they made to plaintiff. CDT is liable for OPSYS Ltd's fraud also because such scienter must be imputed to CDT under the "alter ego theory" as explained *supra*

First Amended Compl. ¶ 15 (*Sunnyside I*, Dkt. 21).  It alleged further:

> This fraudulent scheme was concocted both by CDT and Opsys Ltd solely for the purpose of defrauding plaintiffs into signing the lease and allowing defendants to move into the Fremont buildings, doing work there without paying rent, dumping hazardous and toxic chemicals there, and then walking away from their lease obligations. . . .defendants intended to create a non-viable straw man "dummy shell" corporation ("Opsys USA"), which they intended to set up as a mere ploy and conduit by which they intended to escape liability under the lease. . .

*Id*. Sunnyside "relied on them to its detriment, in that it entered into the lease agreement." *Id*. ¶ 16.  CDT's motion to dismiss confirmed that the claim was for fraud in the inducement, not fraudulent conveyances:

PLF'S OPP. TO CDT LTD.'s MOTION TO DISMISS
No. C-08-1780 MHP

[T]he [First Amended Compl.] asserts in purely conclusory fashion that CDT and Opsys 'conspired' to dupe Plaintiff into signing the Lease in February 2001. Plaintiff contends that Defendants always intended to breach the Lease. . . Plaintiff makes no particularized mention of CDT [Ltd.] at all. CDT [Ltd.] was not a party to the Lease and cannot have made any representation in connection with Opsys' entering into the Lease.

(CDT Mem. to Dismiss *Sunnyside I* at 9)(Dkt. 24). Significant to claim preclusion, Sunnyside's complaint contained no allegation whatsoever about Opsys's transfer of assets to CDT Limited.

## C.    The Court's Dismissal Of Fraud In The Inducement Claims Against CDT Limited.

This Court's order, granting the motion to dismiss the claims against CDT Limited, recognized the claims as fraudulent misrepresentation claims, not asset conveyances for less than reasonable value:

As for plaintiff's fraud claims, the gravamen of those claims continues to lay, as it did in the initial complaint, in plaintiff's theory that Opsys Limited induced plaintiff to enter into the February 2001 lease agreement without ever having any intention to perform its obligations as lessee of the Fremont Boulevard property, although plaintiff now seeks to overcome the hurdle posed by Rule 9(b)'s particularity requirement by identifying several of Opsys Limited's officers as the source of the actionable misrepresentations that defendants allegedly made.

(August 8, 2005 Order, at 3)(Dkt. 39).

## D.    The Post-Verdict Rule Motion For Rule 69 Discovery And For Rule 25 Successor Liability Against CDT, Inc.

Following the entry of the $4.9 million judgment against Opsys, on April 2, 2007 Sunnyside made a motion under Rules 25(c) and 69 of the Federal Rules of Civil Procedure requesting two forms of relief. The first was a procedural amendment under Rule 25 to add CDT **Inc.** as a party to the action and judgment. The second was for leave to conduct discovery pursuant to Rule 69 to obtain details into some of the transactions. (Sunnyside Mem. at 2) (Dkt. 179)("Alternatively, prompt discovery and an evidentiary hearing pursuant to Rules 69(a) and 25(c) should be ordered with leave to file a fraudulent conveyance claim if needed.")

The motion did **not** assert **any** claims against CDT Limited, or otherwise plead the inadequacy of consideration in the transfers to CDT Limited. CDT relied upon that distinction, stating: "[a]s Plaintiff itself has repeatedly emphasized, it seeks to add CDT **Inc.** to a judgment here, not CDT **Ltd.**" (CDT Post-Verdict Mem. at 15). Opsys never even addressed the transfer in its opposition. There were two basic reasons why the inadequacy of consideration was not raised: First, CDT Limited was irrelevant to the Rule 25 portion of the motion – under California law, the receipt of assets is a necessary predicate to successor liability. (Rule 25 Order at 9). Second,

1  Sunnyside had no basis for alleging inadequate consideration – it had no information and needed discovery on the

2  transfer.  The transfer certainly appeared curious.  However, there had been no discovery on the transaction, and

3  Sunnyside knew absolutely nothing about its substance:

4          **I have not yet reviewed (since I understand Sunnyside does not have access) the actual**

5          **contracts and records** of Cambridge not attached to the SEC filings, and would expect to
           review them to complete an opinion as to whether Opsys Limited on behalf of its creditors

6          received fair value for the transfers of (i) Opsys Limited assets to the control of Cambridge
           and (ii) CDT Oxford Limited and the assets to Cambridge.

7  (Paul Ainslie Dec. ¶11, dated March 30, 2007) (Dkt. 180) (emphasis added).  Sunnyside was requesting discovery on

8  the 2005 transfers, and **expressly deferred** challenging the transfers until after discovery:

9
10         If an evidentiary hearing is required, plaintiff seeks leave under Rule 69(a) to conduct
           discovery related to the transfer of Opsys Limited assets to Cambridge and CDT Oxford

11         Limited (formerly Opsys UK and once owned by Opsys Limited). . . . <u>Plaintiff may also</u>
           <u>seek leave to file a supplemental claim for relief for fraudulent conveyance</u> against

12         Cambridge and CDT Oxford Limited, pursuant to Fed. R.Civ.P. Rule 18(b), so as to restore
           to Opsys for the benefit of Sunnyside all or part of the IP assets and patents from which the

13         judgment might be satisfied.

14 (*Sunnyside Motion* at 22 and 23)(Dkt. 179)(emphasis added).  The post-verdict motion sought discovery into the 2005

15 transaction, but did not yet advance any challenge to the adequacy of consideration in the transfer.

16 E.      **CDT's Mischaracterizations To This Court During The Post-Verdict Motion.**

17       In opposing the Rule 25 motion, CDT, Inc. made various statements to the Court related to the consideration

18 that Opsys supposedly received in return for the 2002 and 2004 transfers to CDT Inc.  Critical to CDT's argument was

19 the distinction between whether Opsys – or others – had **<u>received</u>** the monies:

20
21         The question is not . . . whether the [] defendants gave reasonably equivalent value; it is
           whether the debtor received reasonably equivalent value.

22 *In re Lucas Dallas, Inc.*, 185 B.R. 801, 807-08 (B.A.P. 9th Cir. 1995).  Opsys received $5 million in 2002, but it did

23 not receive the $11 million paid in 2004. (Def. Ex. S, CDT Post-Verdict Mem. at 16) (Dkt. 207).  Those monies went

24 to Opsys's shareholders, not Opsys.  To obscure that fact, CDT's papers created for the Court the false impression that

25 the $11 million was <u>available to Opsys</u>, representing to this Court that "most of the consideration paid to Opsys and its

26 shareholders would be escrowed or placed in trust for the protection of Opsys' creditors" (Def. Ex. P, Decl.of CDT's

27 M.Black at p.3)(Dkt. 204), or that "CDT Inc. deposited part of this consideration into an escrow account as security

28

    PLF'S OPP. TO CDT LTD.'s MOTION TO DISMISS
                                No. C-08-1780 MHP

1    for any unidentified liabilities of Opsys, including contingent liabilities." (CDT Post-Verdict Mem. at 12).[4]

2    In September 2007, Sunnyside filed suit in New York to avail itself of those supposed protections.  In

3    those proceedings, CDT argued that Opsys had received **no interest** in the 2004 escrow, and Judge Louis

4    Stanton agreed, and concluded that CDT's previous statements to this Court that Opsys had received an

5    interest in the escrow were "extravagant mischaracterizations":

6        In post-verdict proceedings in the Sunnyside case, Cambridge made the statement in materials submitted to
         the Court that 'the proceeds of the transactions were held in escrow and trust for the benefit of creditors,
7        known and unknown', and other statements to similar effect. . . . As regards the escrow account, such a
         statement is an extravagant mischaracterization.
8

9    *Sunnyside Development Co.*, supra, 2008 U.S. Dist. LEXIS 11800 *6 (S.D.N.Y. 2008).  By winning that argument,

10   CDT established that Opsys received only $5 million for IP worth at least $19 million.

11   F.    **The Court's Order On The Post-Verdict Motion.**

12   The Court's decision on successor liability evaluated the transfers to CDT, **Inc.**, since those were the basis for

13   the Rule 25 motion against CDT, Inc.  On pages 4-5, the Court addressed the 2002 transfers to CDT, Inc., noting the

14   $5 million that CDT Inc. had paid.  On page 6 the Court referenced the 2004 transaction and the $11 million CDT

15   paid into escrow, supposedly for the benefit of Opsys' creditors.  Following the recitation of facts, the Court engaged

16   in analysis of the 2002 and 2004 transactions.  On pages 14 to 15 the Court analyzed the transfers to CDT Inc., and

17   found the adequacy of consideration of the 2002 and 2004 transfers **to CDT, Inc.** – a finding that was expressly

18   founded upon the $11 million that CDT had mischaracterized to this Court as benefitting Opsys, when, in fact, it did not.

19   In contrast with those express findings concerning the 2002 and 2004 transfers to CDT, Inc., the Court

20   undertook no analysis and made no finding concerning the adequacy of consideration involved in the 2005 transfer to

21   CDT Limited.  The Court mentioned the 2005 transfer only twice during the decision.  First, on page 7, as part of the

22   recitation of background facts, the Court noted the 2005 transfer, but made no statements about any aspect of adequate

23   consideration, either concerning (a) the considerations involved in the transfer, or (b) the value of CDT Oxford. (Rule

24   25 Order at 7).  Its only finding about CDT Oxford's value was its notation that CDT Inc. had paid $2.5 million for

25   16% interest, which means the remaining 84% had a value of $13 million. (*Id.* at 4).  Then, on page 16 the Court again

26

27

28   ───────────────────
     [4] The inadequacy of consideration with respect to the transfers to CDT, Inc. is **NOT** being litigated here.  However, CDT's
     unclean hands before the Court is relevant to CDT's attempts to invoke this Court's findings about the 2002 and 2004 transfers.

PLF'S OPP. TO CDT LTD.'s MOTION TO DISMISS
                                                                No. C-08-1780 MHP

referenced the 2005 transfer, but only concerning actual fraudulent intent:

> Plaintiffs point to the fact that defendants transferred CDT Oxford Limited from Opsys Limited to CDT Limited in 2005, while this action was pending, leaving Opsys Limited with no assets.  CDT, Inc. claims that these transfers were planned in late 2004, prior to the initiation of this law suit.  At the time of these transfers, CDT Limited, rather than CDT, Inc. was a defendant in this action.  An asset transfer between defendants is hardly an attempt to thwart a plaintiff's ability to collect.  These facts do not support a finding of fraudulent transfer.

(*id.* at 16)(citations omitted).  At no point during either discussion of the 2005 transfer did the Court analyze whether Opsys Limited had received equivalent value in the transfer, or make any statements about the value of CDT Oxford or what consideration was provided to Opsys.  The Court had evaluated the transfers to CDT, Inc., concluding that "in addition to this [$5 million] cash consideration [paid in 2002], CDT, Inc. paid over $11 million worth of stock [in 2004] when it finally acquired Opsys Limited as a result of the [2004] settlement agreement. . .  Because CDT, Inc. paid consideration which was adequate in light of the assets it received, plaintiff has failed to demonstrate inadequate consideration." (*id.* at 14).

In summarizing this finding at the end of the opinion, the Court concluded about transfers to CDT, **Inc**.:

> Because plaintiff has failed to demonstrate [that CDT Inc. paid inadequate consideration] with respect to any of the transactions **at issue**, the fraudulent transfer exception does not apply.  In sum, plaintiff has clearly not established that CDT, **Inc**. should be added as a defendant pursuant to Rule 25(c). . . In light of the weakness of plaintiff's arguments, however, and the undisputed facts in the record, the court holds as a matter of law that CDT, **Inc**. is not a proper defendant to this action.

(*id.* at 17)(emphasis added).  By its express terms, this statement applied only to the transfers to CDT **Inc.**, not, as CDT now argues, the 2005 transfer to CDT Limited.  This summation was limited to the transactions "at issue," and this Court already had determined that transfers to CDT Limited were not at issue because successor liability hinged on transfer of assets to CDT, Inc. (id. at 7) (deeming a transfer to CDT Limited irrelevant because "[e]ven if this latter transaction may be considered an asset transfer, which is highly dubious, the 'assets' were transferred to CDT Limited, not CDT, Inc.")  The Court also made no findings on the 2002 transfer by Opsys **to CDT Limited** of the right to 98% of the CDT Oxford's profits, an encumbrance that CDT now contends destroyed the $19 million value of CDT Oxford stock and that also is the subject of the claim against CDT Limited.

III.    **ARGUMENT**

A.    **THERE IS NO CLAIM PRECLUSION, AS THE 2004 CLAIM AGAINST CDT LIMITED DOES NOT BAR SUIT ON THE LATER 2005 FRAUDULENT CONVEYANCE**

CDT Limited's attempt to invoke claim preclusion based on this Court's prior dismissal of the 2004 suit against CDT Limited is misplaced. **First**, the doctrine does not bar claims based on a conveyance that occurred after Sunnyside's original December 14, 2004 Complaint. Sunnyside could not have brought the present fraudulent transfer action in its original pleading because there had not yet been any transfer, and so there was no fraudulent conveyance claim to bring. **Second**, a subsequent action is barred by *res judicata* only where "the prior litigation involved the same claim or cause of action as the later suit." *Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 888 (9th Cir. 2000). CDT Limited cannot establish that element because the present action does not involve the same cause of action or claim as the 2001 fraudulent inducement claim.

1.    **The "Could Have Been Brought" Preclusion Does Not Preclude Claims Based Upon Fraudulent Conveyances That Arise After The Original Complaint.**

The *Sunnyside I* action – while asserting fraud in the inducement – raised no fraudulent conveyance claim. Since the fraudulent conveyance claim was not actually asserted in *Sunnyside I*, CDT's argument for claim preclusion rests on the absurd notion that the fraudulent conveyance claim nonetheless "could have been asserted" in *Sunnyside I*, even though the transfer had not yet occurred. Not only is that absurd, it is not the law: a judgment "cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case." *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 328 (1955). Articulating this common-sense element, the Ninth Circuit has stated, "[w]e do not believe that the *res judicata* preclusion of claims that 'could have been brought' in earlier litigation includes claims which arise after the original pleading is filed in the earlier litigation." *Cabrera*, 159 F.3d at 381 n.12. The original pleading was filed on December 14, 2004, and the transfer to CDT Limited occurred in 2005.

CDT wrongly suggests that Sunnyside was obligated to amend the complaint to add the 2005 fraudulent conveyance claim that developed after it filed its complaint. (CDT Mem. at 8). The Ninth Circuit has rejected that very argument, and held that the scope of the litigation is frozen at the time of the original pleading, and *res judicata* does not bar claims based on rights acquired during a pending action:

1

2

> The scope of litigation is framed by the complaint at the time it is filed. The rule that a judgment is conclusive as to every matter that might have been litigated "does not apply to new rights acquired pending the action which might have been, but which were not, required to be litigated."

3

4

*Los Angeles Branch NAACP v. Los Angeles*, 750 F.2d 731, 739 (9th Cir. 1984) (citations omitted). "Plaintiffs may

5

bring events occurring after the filing of the complaint into the scope of the litigation by filing a supplemental

6

complaint with leave of court, ***but there is no requirement that plaintiffs do so***" and "[w]e decline to impose a

7

potentially unworkable requirement that every claim arising prior to entry of a final decree must be brought into the

8

pending litigation or lost." *Id.* at 739 n.9 (emphasis added).[5] Thus, the rule that a judgment is conclusive as to every

9

matter that might have been litigated does not bar these subsequent claims.

10

In effect, CDT Limited argues that once it was sued by Sunnyside in December 2004, it received immunity

11

from any future wrongful acts against Sunnyside. "Acceptance of the respondents' novel contention [that a prior

12

judgment bars subsequent arising claims] would in effect confer on them a partial immunity from civil liability for

13

future violations. Such a result is consistent with neither the antitrust laws [which was the claim at issue in *Lawlor*] nor

14

the doctrine of res judicata." *Lawlor*, 349 U.S. at 328.

15

    2.    **The Present Action Asserts New Claims, Not The *Sunnyside I* Claims**

16

Claim preclusion also fails because the claims are different.  As CDT acknowledges, the doctrine of *res*

17

*judicata* applies only where the two actions involve "same alleged wrongs" (CDT Mem. at 8), or, in the words of the

18

Ninth Circuit, "the same cause of action."  *Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1398 (9th Cir. 1992);

19

*Cabrera,* 159 F.3d at 381.  Where the new claim is based upon a different wrongful conduct, there is no claim

20

preclusion. *Cromwell v. County of Sac*, 94 U.S. 351, 353 (1876) ("where the second action between the same parties is

21

upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in

22

issue or points controverted, upon the determination of which the finding or verdict was rendered.")  As CDT

23

acknowledges, "the crucial question is whether appellant has stated in the instant suit a cause of action different from

24

those raised in his first suit." *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201 (9th Cir.), cert. denied, 459

25

26

27

28

---

[5] Accord 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4409 (Supp. 1998)("Substantial disruption could result from forced amendment at any time after significant discovery has been accomplished, and it is hard to justify any test relating to the progress of discovery or other pretrial events so clear that plaintiffs could afford to apply it without seeking explicit judicial guidance.")

    PLF'S OPP. TO CDT LTD.'s MOTION TO DISMISS
No. C-08-1780 MHP

1  U.S. 1087 (1982). CDT has the burden of proving that the actions involve the same claim.

2        In addressing that question on pages 6-8 of its Memo, CDT directs its arguments only to establishing that the

3  2002 transactions are the same as the 2001 Lease transaction raised in *Sunnyside I*. Nowhere does CDT make an

4  argument that the 2005 transfer has any relation to the 2001 Lease. (CDT addresses the 2005 transaction only with

5  respect to the unrelated issue of whether the lack of knowledge of a claim at the time of filing the action would bar that

6  claim. That argument has no bearing on *whether* the 2005 transfer constitutes "the same claim" (i.e., arose out of the

7  2001 transaction).) Thus, CDT must be deemed to have conceded the lack of claim identity of the 2005 claim. It is

8  not surprising that CDT has not attempted to make the argument that the transaction occurring in May 2005 after the

9  filing of a complaint nonetheless is the same claim as a wrong that occurred more than four years prior in February

10  2001. This Court already has ruled that the 2002 and 2004 transactions were separate, and that it was "unwarranted"

11  to "conflate" the two. (Rule 25 Order at 16, 13).

12

13        Even with respect to the 2002 transactions, CDT's argument does not hold up. The *Sunnyside I* Complaint

14  alleged wrongful conduct in the February 15, 2001 representations by Mr. Rhea and Mr. Holmes to Sunnyside. (First

15  Amended Compl. ¶ 15)(Dkt. 21). The 2002 (and 2005) transactions being challenged herein involve the separate

16  wrongful act of Opsys transferring assets to CDT Limited, involving different Opsys officers as Mr. Rhea and Mr.

17  Holmes had already left Opsys more than two years ago. The present action constitutes "'a new wrong' and not

18  simply a 'new injury.'" *Bayview Hunters Point v. Metropolitan Transp.*, 177 F.Supp.2d 1011, 1024 (N.D.Cal. 2001)

19        CDT argues that "Sunnyside's fraudulent conveyance claims arise out of the same transactional nucleus of

20  facts as Sunnyside's fraud claims in *Sunnyside I*. However, even CDT's argument does not stand up: the *Sunnyside I*

21  transactional nucleus focused on the February 15, 2001 lease signing. Even if extended to the 2002 transactions, they

22  involved Opsys's transfer of the lease **liability** to Opsys US (i.e., the validity of the assignment litigated in *Sunnyside I*

23  (CDT Mem. at 7), whereas the present action relates to the separate fraudulent transfer of **assets** (*id.*). Opsys's failed

24  attempt to get rid of its liability by assigning the lease away in *Sunnyside I* is fundamentally different activity. The

25  present action involves the transfer of assets away from creditors so that such assets are unreachable by creditors. The

26  acts were conducted in two different time periods over two years apart and by totally different individual corporate

27  officers. The prior action would involve conversations from February 2001 (false statements to Mr. Chiu by Mr. Rhea

PLF'S OPP. TO CDT LTD.'s MOTION TO DISMISS
No. C-08-1780 MHP

or Mr. Holmes). (CDT Mem. to Dismiss *Sunnyside I*, at 8) (Dkt. 24). In contrast, the fraudulent conveyance transactions that do not involve any conversations between Messrs. Chiu, Rhea or Holmes. It involves Opsys transferring assets to CDT Limited. There is not a single overlapping element of wrongful conduct. The claim for fraudulent conveyance requires a showing (1) that CDT Limited received a transfer of assets from Opsys (2) made for less than reasonably equivalent value, (3) at the time that Opsys was insolvent. The claims are distinct, because a fraudulent conveyance claim is a judgment creditors' remedy seeking redress for its inability to enforce a judgment and does not require *scienter* or any interaction with the creditor. The fraudulent conveyance claim involves valuation issues concerning the estimated value of the profits compared to the benefit Opsys would receive in the transfers – conduct that has nothing to do with Messrs. Rhea or Holmes' wrongful conduct.

CDT dredges out two statements from the Complaint that mention CDT's undisclosed intention for Opsys to "get rid of its debt burdens owed to plaintiff under this lease" and "pawn off their debts under the lease on a straw man subsidiary, 'Opsys USA,' which defendants intended to set up as a straw man *with no viability whatsoever*." (CDT Mem. at 7). However, even those statements pertain to Opsys assigning the lease **liability** to Opsys US - again involving acts between Sunnyside and Opsys (but not CDT Limited). This current claim is based on the later fraudulent transfer of **assets (not liabilities)** from Opsys to CDT (not involving Sunnyside). That Opsys is common to the two claims does not create claim preclusion. *Bayview Hunters Point*, 177 F.Supp.2d at 1024 ("certainly the two actions are related; but such relation is insufficient to invoke the preclusive effects of res judicata.")

Finally, a judgment holding CDT Limited responsible for receiving transfers of assets fraudulently conveyed by Opsys in no way impacts or undermines the earlier judgment that CDT Limited did not induce Opsys to breach the lease four year earlier. See *Hydranautics*, 204 F.3d at 888 (although both actions involved the same patent, the malicious patent prosecution claim would not impair judgment about the patent itself.)

## B. THERE IS NO ISSUE PRECLUSION

"The doctrine of collateral estoppel (or issue preclusion) prevents relitigation of issues actually litigated and necessarily decided, after a full and fair opportunity for litigation, in a prior proceeding." *Kourtis v. Cameron*, 419 F.3d 989, 994 (9th Cir. 2005) (citation and internal quotation marks omitted).

1.    **Issue Preclusion Is Irrelevant Because This Court Made No Finding That Opsys Received Equivalent Value In The Transfers To CDT Ltd.**

In contrast with the doctrine of *res judicata*, "collateral estoppel treats as final only those questions actually and necessarily decided in a prior suit." *Brown v. Felsen*, 442 U.S. 127, 139 n.10 (1979). In invoking the defense, CDT "bears the burden of showing with clarity and certainty what was determined by the prior judgment." *Clark v. Bear Stearns & Co., Inc.*, 966 F.2d 1318, 1321 (9th Cir. 1992). "If the decision could have been rationally grounded upon an issue other than that which the defendant seeks to foreclose from consideration, collateral estoppel does not preclude relitigation of the asserted issue." *Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1518-19 (9th Cir. 1985).

Unlike claim preclusion which involves matters that <u>could</u> have been litigated, issue preclusion requires an <u>actual</u> finding on an issue. CDT Limited cannot meet its burden of establishing "with clarity and certainty" that this Court actually decided the adequacy of consideration in the 2005 transfer to CDT Limited. **CDT refers to no finding of adequate consideration received by Opsys in the 2005 transfer to CDT Limited**. The Court's only statements about the 2005 transfer were a recitation in the background facts (Rule 25 Order at 7), and then the following analysis in its discussion:

> Plaintiffs additionally point to the fact that defendants transferred CDT Oxford Limited from Opsys Limited to CDT Limited in 2005, while this action was pending, leaving Opsys Limited with no assets. CDT, Inc. claims that these transfers were planned in late 2004, prior to the initiation of this lawsuit. At the time of these transfers, CDT Limited, rather than CDT, Inc., was a defendant in this action. An asset transfer between defendants is hardly an attempt to thwart a plaintiff's ability to collect. These facts do not support a finding of fraudulent transfer.

(*Id.* at 16). As is plain from this language, the Court made no finding that Opsys received equal value in the 2005 transfer, so there is no finding that can estop Sunnyside's constructive fraudulent conveyance claim against CDT Ltd.

CDT Limited acknowledges that the Court made no specific finding about that Opsys received adequate consideration in the 2005 transfer to CDT Limited. Nonetheless, CDT argues that this Court's general summation that "plaintiff has failed to demonstrate [that the acquiring party paid inadequate consideration] with respect to any of the transactions at issue" (CDT Mem. at 12, quoting Rule 25 Order at 17) was meant to contain a new finding with respect to the 2005 transfers to CDT Limited. The attempt to apply this summation to the 2005 transfer is an unwarranted stretch of the language, because the Court limited its

PLF'S OPP. TO CDT LTD.'s MOTION TO DISMISS
No. C-08-1780 MHP

summation to the "transaction at issue," and the 2005 transaction was not at issue. The motion was against CDT **Inc**. and was necessarily limited to transfers to CDT **Inc**. (Rule 25 Order at 7) (holding that the transfer of assets to CDT Limited is irrelevant because "[e]ven if this latter transaction may be considered an asset transfer, which is highly dubious, the 'assets' were transferred to CDT Limited, not CDT, Inc.") Any doubt about the scope of the Court's language is resolved by the paragraphs that precede and follow the statement. The Court's prior and the subsequent paragraphs each addressed only the CDT **Inc**. transfers: in the preceding paragraph this Court stated that "[a]s discussed above . . . it is undisputed that Opsys Limited received adequate consideration for the assets acquired, if any, **by CDT, Inc**." (*id*. at 16) (emphasis added). The "above" reference is to the Court's discussion on page 14, in which the Court addressed the 2002 and 2004 (but not 2005) transfers to CDT, Inc. (*id*. at 14). A similar conclusion comes from the paragraph that follows, in which the Court states that "the court holds as a matter of law that CDT**, Inc**. is not a proper defendant in this action." (*id*.)(emphasis added). The context makes clear that the Court was speaking about the transfer "at issue" – i.e., those going to CDT **Inc.**

Further, the Court's lack of any analysis of the adequacy of consideration with respect to the 2005 transfer is in stark contrast with the Court's analysis of the relevant transfers to CDT, Inc. in 2002 and 2004. With respect to those transfers to CDT, Inc., the Court made specific statements analyzing the value of the transactions. (See *id.* at 12-13)(analyzing the economic terms of the 2002 and 2004 transfers). It made no such evaluation on 2005.[6] Moreover, the Court's reference to "undisputed facts in the record" further shows that the Court could not had intended the statement to apply to the CDT Limited transactions. Certainly this was not a reference to the 2005 transaction, as to which Mr. Ainslie's declaration showed that CDT Oxford had a fair value of $19 million in 2005, and as to which CDT had not identified any consideration received by Opsys for the stock transfer. Lastly, the Court's Order made no finding on the encumbrance of the right to receive profits, a transfer CDT now contends destroyed the value of CDT Oxford.

---

[6] The Court's statements about its perceived lack of a predominant fraudulent intent is not identical to the standard applied under UK Insolvency Act of 1986. *Inland Revenue Commissioners v Hashmi and anor, CA,* 3 May 2002 ¶23 ("It is sufficient if the statutory purpose can properly be described as a purpose and not merely as a consequence, rather than something which was indeed positively intended.")(Heisenberg Ex. 11).

1    If anything, issue preclusion leads to a conclusion of "**in**adequate consideration" with respect to the

2    2005 transaction.  The Court found that "CDT Inc. paid Opsys Limited $2.5 million in exchange for 16% of

3    the shares of [CDT Oxford]," meaning CDT Oxford was worth more than $16 million. (*id*. at 4).  CDT's Mr.

4    Black identified no consideration going back to Opsys. (Def. Ex. P at ¶ 33 (Dkt.175)).  Thus, if the Court is

5    inclined to apply its prior statements, they support Sunnyside's current claim, rather than preclude it.

6    2.    **Assuming, *Arguendo*, A Finding That Opsys Received Equivalent Value, That Finding**
            **Does Not Create Collateral Estoppel**

7

8    CDT cannot establish numerous elements of collateral estoppel, any one of which is fatal.

9    a.    **The Rule 25 Motion Did Not "Actually Litigate" The Transfers To CDT Limited**

10    "For issue preclusion to apply, the issue must have actually been litigated."  James Moore, *Moore's*

11    *Federal Practice* § 132.03[a], at 132-77 (3d ed. 1999). For an issue to be actually litigated, the issue has to be

12    raised by appropriate pleading that asserts it through a claim or cause of action against the other.  In addition

13    to the issue having to be properly raised, the issue must be submitted for determination and then actually

14    determined by the adjudicatory body. *Restatement (Second) of Judgments* § 27 cmt. d. The court is required to

15    examine with great scrutiny whether the plaintiff submitted a pleading that requested determination and had

16    the same incentive to litigate the issue.  "Collateral estoppel is inappropriate if there is any doubt as to whether

17    an issue was actually litigated in a prior proceeding." *Hawthorne Savings F.S.B. v. Reliance Ins. Co. of Ill.*,

18

19    421 F.3d 835, 856 n.22 (9th Cir. 2005), amended on other grounds, 433 F.3d 1089 (9th Cir. 2006), quoting

20    *Eureka Fed. Sav. & Loan*, 873 F.2d at 233.

21    CDT cannot show that the transfers to CDT Limited – as distinct from the transfers to CDT Inc. – were

22    actually litigated.  It was not raised "by appropriate pleading, [] through a claim or cause of action against the

23    other" – the Rule 25 motion did **not** assert ANY claims against CDT Limited.  Sunnyside's pleadings did not

24    allege that the 2005 transfer lacked adequate consideration, and did not advance that claim to this Court for

25    determination.  Sunnyside was not in a position to do so – it had first learned of the transfer in 2007 during the

26    course of the post-verdict proceedings, but had no information about the economic terms of the transfer.

27    Accordingly, the motion expressly **deferred** bringing the claim: "Plaintiff may also seek leave to file a

28    supplemental claim for relief for fraudulent conveyance." (Sunnyside Mem. at 2)(Dkt. 179).

PLF'S OPP. TO CDT LTD.'s MOTION TO DISMISS
No. C-08-1780 MHP

Although Sunnyside referenced the 2005 transfer in the post-verdict motion, it did so in the context of requesting Rule 69 discovery. Referencing a fact in a motion does not constitute "actually litigating" the fact. That distinction was explored in *Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354 (11th Cir. 1998), where the court distinguished between facts introduced as an element of a cause of action being litigated, and secondary facts that, while introduced in pleadings or even at trial, are not being "actually litigated" because they are not part of the claim:

> Pleming's references to the October 1994 incidents of alleged discrimination during the first lawsuit are similar to the references that we have held insufficient to assert a claim before a district court. In her response to Universal-Rundle's motion for summary judgment, Pleming argued that the October 1994 incidents demonstrated pretext in connection with the July 1993 hiring decision and asserted that the incidents constituted evidence of a "continuing violation." Pleming also used the October 1994 incidents in her objections to the magistrate judge's report to provide evidence of discriminatory intent.

*Pleming,* 142 F.3d at 1358. Notwithstanding those repeated references the prior acts in pleadings, the matters were insufficient to constitute the claims being "actually litigat[ed]."

> Pleming's references to the incidents in her briefs were insufficient to put her claims of discrimination and retaliation arising out of the October 1994 incidents before the district court pursuant to the Federal Rules of Civil Procedure. Accordingly, these references were insufficient to actually assert these claims in the prior litigation . . . .

*Id.* at 1359.[7]

Applying those principles here shows that Sunnyside never actually asserted claims based on transfers to CDT Limited. Although CDT now references Mr. Ainslie's Affidavit as supposedly showing that the claims were being asserted in the motion, that affidavit actually makes plain that Sunnyside was not putting the CDT Limited transactions at issue, because Sunnyside had not even had discovery needed to assert and litigate the 2005 claim:

> **I have not yet reviewed (since I understand Sunnyside does not have access) the actual contracts and records** of Cambridge not attached to the SEC filings, and would expect to review them to complete an opinion as to whether Opsys Limited on behalf of its creditors received fair value for the transfers of (i) Opsys Limited assets to the control of Cambridge and (ii) CDT Oxford Limited and the assets to Cambridge.

(Def. Ex. N, Ainslie Dec. ¶11) (Dkt. 180). At no point did Sunnyside advance any pleading about the 2002 transfer of profits to CDT Limited, which is at issue in this action.

---

[7] See also *Wu v. Thomas*, 863 F.2d 1543, 1548-49 (11th Cir.1989) (inclusion of testimony in a prior action that touched on the substance of second cause of action for retaliation did not constitute "actually litigated"); *Coon v. Georgia Pacific Corp.*, 829 F.2d 1563, 1568-71 (11th Cir.1987) (plaintiff's references to unpled incidents in her pretrial stipulation, in her motions before the court, and throughout the conduct of discovery were no substitute for the factual allegations of a complaint).

Further evidence of the lack of the CDT issues being litigated comes from Opsys' opposition to the Rule 25

motion, which did not even mention the 2005 transfer.

Similarly, CDT contends that the Court's Rule 25 decision's passing reference to the 2005 transfer "is

sufficient to satisfy requirement that an issue actually have been litigated." (CDT Mem. at 9. See also *id.* at 13).

However, the *Steen v. John Hancock Mut. Life Ins. Co.* decision cited by CDT <u>for</u> that proposition, actually stands

<u>against</u> that proposition. In *Steen*, the Ninth Circuit **refused** to apply collateral estoppel – even upon a fact expressly

decided in a prior order – based on the ambiguous record as to whether a fact had been actually litigated: "We believe

that because of the apparent confusion in our AIA-BIT disposition that there is doubt about whether AIA-BIT's status

as an ERISA plan was actually litigated, and for this reason alone, statements about AIA-BIT's status do not have

collateral estoppel effect." *Steen*, 106 F.3d 904, 907 (9th Cir. 1997) citing *Eureka Fed. Sav.*, 873 F.2d at 233. Because

of this "doubt" about whether the issue was litigated, the Ninth Circuit concluded that defendant "made an insufficient

showing that Cal Council had an "actual, full, and fair" opportunity to litigate the ERISA status of AIA-BIT or the Cal

Council Plan." *Steen*, 106 F.3d at 908. The same conclusion is found in *Bayview Hunter*:

> MTC relies heavily on a single statement from one of the Court's orders to support its
> position. However, the Court is not persuaded that this single statement--out of hundreds of
> pages of orders in that case--indicates that the issue was actually litigated. To the contrary,
> the Court, which is obviously familiar with the 1989 litigation since it presided over the
> proceedings, finds that the implementation status of TCM 2 was not actually litigated at that
> time.

*Bayview Hunters Point*, 177 F.Supp.2d at 1025(citation omitted). Accord *Visa U.S.A., Inc. v. First Data Corp.*, 369

F.Supp.2d 1121, 1124 (N.D. Cal. 2005) (refusing to adhere to court's statement in prior case because issue was not

litigated). Collateral estoppel does not apply if there is any doubt that an issue was actually litigated:

> Issue preclusion will apply only if it is quite clear that these requirements have been
> satisfied, lest a party be "precluded from obtaining at least one full hearing on his or her
> claim."

*Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir. 1995). See also *Steen*, 106 F.3d at 908.

3.   **The Rule 25 Motion Did Not Provide Sunnyside The Procedure Necessary To Constitute A "Full And Fair" Opportunity To Litigate The Issue**

Even if an issue is placed at issue by a pleading, the doctrine of collateral estoppel "cannot apply when

the party against whom the earlier decision is asserted did not have a 'full and fair opportunity' to litigate the

PLF'S OPP. TO CDT LTD.'s MOTION TO DISMISS
No. C-08-1780 MHP

issue in the earlier case." *Allen v. McCurry*, 449 U.S. 90, 95 (1980). "Redetermination of issues is warranted

if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation."

*Montana v. United States*, 440 U.S. 147, 164 n.11 (1979). The Ninth Circuit has stressed that courts must be

particularly cautious about applying collateral estoppel where the prior action was not a plenary action

affording the litigant basic rights such as an opportunity to take discovery.

> In deciding whether an opportunity to litigate is "full and fair," a court must make a
> practical judgment based on at least two considerations. First, the court must compare the
> procedures in the prior and subsequent actions. If "procedural opportunities unavailable in
> the first action . . . could readily cause a different result" in the first action, then the results
> of the first action generally should not be given preclusive effect. Second, the court must
> consider the parties' incentives to litigate in the two actions. If a party had good reason not
> to contest an issue vigorously during the first action and did not, in fact, vigorously contest
> the issue, that party generally should be entitled to relitigate the issue during the second
> action.

*Maciel v. C.I.R.*, 489 F.3d 1018, 1023 (9th Cir. 2007) (citations omitted). Among the procedural rights is the

fundamental ability to obtain discovery on the claim, and to cross-examine adverse witnesses. No collateral estoppel

is created by non-plenary actions because the "procedural mechanism[s] crucial" to gather probative evidence were

either not present or were limited. *Maciel*, 489 F.3d at 1024, citing *United States v. U.S. Currency in the Amount of*

*$119,984*, 304 F.3d 165 (2d Cir. 2002). Discovery is a critical element of those procedural mechanisms:

> An opportunity to litigate is neither full nor fair when a litigant is denied discovery,
> available in the ordinary course, into matters going to the heart of his claim.

*Locurto v. Giuliani*, 447 F.3d 159, 169 (2d Cir. 2006). Accord *Bailey v. Andrews*, 811 F.2d 366, 370 (7th Cir.

1987) (finding of hearing, at which suspect was not allowed to present evidence or cross-examine witnesses,

not given preclusive effect in subsequent suit).

As the Court knows, the post-verdict briefing did not have the benefit of any discovery into the 2005 transfer,

and the testimony of CDT Inc. witnesses, by affidavit, was not subject to cross-examination or even rebuttal in a reply

brief (which was not permitted). In response, CDT argues that "Sunnyside did take discovery of the transactions at

issue" (CDT Mem. at 10), but relies only to the fact that Sunnyside took discovery with regard to the *Sunnyside I*

breach of contract action that might incidentally have touched on the 2002 transfers to CDT Limited. (CDT Mem. at

2, citing *Sunnyside I* Dkt. 68-70). Thus, CDT implicitly acknowledges that there was not the first scrap of discovery

with respect to the 2005 transfer to CDT Limited, which is, after all, the transfer on which CDT asks the Court to

PLF'S OPP. TO CDT LTD.'s MOTION TO DISMISS
No. C-08-1780 MHP

1    impose collateral estoppel.  The **only** evidence as to the 2005 transfer, and the consideration for it, came from the

2    Declarations of CDT's David Fyfe and Michael Black.  However those declarations were first submitted on reply,

3    meaning Sunnyside had no ability to cross examine the declarants, or even to submit opposition to their "extravagant

4    mischaracterizations."

5                    a.    **Sunnyside did not "waive" its right to discovery or cross-examine witnesses.**

6        CDT acknowledges the lack of procedural opportunities in the prior action, but urges that "Sunnyside chose to

7    proceed by motion rather than filing a new action." (CDT Mem. at 10).  That argument is both irrelevant and

8    unfounded in fact.  It is irrelevant, because even if Sunnyside's decision to proceed by motion somehow would

9    constitute a "waiver" of its right to a full and fair litigation (and there was no such waiver, see below), that waiver

10   would extend only to pursuing claims against CDT Inc., not CDT Limited.  There is nothing in the record to support

11   CDT's conclusory assertion that Sunnyside also elected to proceed on its claims against CDT Limited without

12   discovery or cross-examination rights, which Sunnyside was requesting.

13

14       In any event, CDT's claim that Sunnyside waived rights to discovery finds no support in the record.  The

15   motion that Sunnyside filed expressly asked for discovery.  (Dkt. 179 at 1).  At the next opportunity, during the

16   argument on the motion, Sunnyside repeated this request for discovery:

17           And it struck me that in order to really understand everything here we need to have some
             discovery against all of those CDT entities and get the documents related to where are the
18           assets and how they are being exploited.

19   Transcript of May 16, 2007 Proceedings, at 51(Dkt.218) (Def. Ex. U) (emphasis added).

20           And I have to give it to the Defendants, they created triable issues of fact and I think that it
21           probably …We have to have further proceedings, they're all equitable they don't require a
             jury, but they will require some explanation.
22

23   *id*. at 54-55 (emphasis added).   Later, Sunnyside's counsel reiterated the need for discovery concerning the transfers

24   at issue in CDT's shift of assets.

25           We may need discovery with respect to all of them.  If their position is that each one of
             these is an insulating layer and has no assets, then that's a problem and I think we need to
26           address having all of them before the Court or at least for purposes of discovery.

27   *id*. at 67-68.  Thus, the record does not bear out CDT's allegation that Sunnyside waived its right to discovery.

28       Further, Sunnyside did not have the ability to cross-examine CDT's witnesses.  As Sunnyside stated at

argument: "in terms of the pleadings that have been filed by the defendant, which we haven't had a chance to respond to, factually or legally." Even if the Court was within its discretion to limit the post-verdict process, the consequence is that the findings do not create issue preclusion. *Golino v. City of New Haven*, 950 F.2d 864, 869-870 (2d Cir. 1991)(refusing to apply collateral estoppel where party received no discovery, "has no right to call any witnesses" and prior court "declined to exercise discretion to permit [the party] to call witnesses or offer evidence.")

Against this record, CDT argues that "there is no reason to believe that any procedural differences between *Sunnyside I* and *Sunnyside II* would cause a different result." (CDT Mem. at 10). It takes real chutzpa for CDT to advance that argument, given the subsequent findings by the New York District Court that CDT made "extravagant mischaracterizations" during the post-verdict proceedings, but Sunnyside lacked the ability to examine those witnesses. Cross-examination is "the greatest legal engine ever invented for the discovery of truth," and serves the "promotion of the integrity of the fact finding process." *White v. Illinois*, 502 U.S. 346, 356 (1992). Even the barest right to examine either CDT witness would have exposed the core untruth of CDT's mischaracterizations.

4.    **Any Discussion Of The Transfers To CDT Limited Were Not "Critical And Necessary" To Sunnyside's Rule 25 Motion Against CDT, Inc.**

CDT also fails in its burden of showing that any findings as to the CDT Limited transfers were "essential" to the court's denial of the Rule 25 motion against CDT, Inc. Collateral estoppel does not apply to every finding by a Court – CDT has to show that the *Sunnyside I* findings were "a critical and necessary part of the judgment." *Clark.*, 966 F.2d at 1320. "Preclusive force attaches only to issues that were necessary to support the judgment in the prior action. Litigants are not precluded from relitigating an issue if its determination was merely incidental to the judgment in the prior action." *Pool Water Prods.*, 258 F.3d at 1031, citing *Resolution Trust Corp. v. Keating*, 186 F.3d 1110, 1115 (9th Cir.1999). The limitation on the doctrine serves "to prevent the incidental or collateral determination of a nonessential issue from precluding reconsideration of that issue in later litigation." *18 Moore, supra, at* § 132.03[4][f]. A fact is "incidental" where it was not a critical element of the prior claim.

> It is well established that although an issue was litigated and a finding made on that issue in prior litigation, the prior judgment will not foreclose reconsideration of that issue if the issue was not necessary to the rendering of the prior judgment, and hence was incidental, collateral, or immaterial to that judgment.

*Memorex Corp. v. IBM*, 555 F.2d 1379, 1384 (9th Cir. 1977)(citations omitted).

PLF'S OPP. TO CDT LTD.'s MOTION TO DISMISS
No. C-08-1780 MHP

1   Here, the transfers to CDT Limited were irrelevant to the successor liability claims against CDT, Inc.  First,

2   this Court disposed of the Rule 25 motion based on the basis that the transfers were not "asset" transfers.  (Rule 25

3   Order at 9-10) citing *Potlatch Corp. v. Superior Court*, 154 Cal. App. 3d 1144 (1984).  The New York District Court

4   adopted CDT's argument that the discussion to this Court about the transactions creating the escrow "were not

5   germane to the decision Judge Patel reached. . . .  Judge Patel held that, as a matter of California law, successor

6   liability does not apply to a stock-for-stock acquisition like this, but only to purchases of all the assets of the debtor."

7   *Sunnyside Development,* 2008 U.S. Dist. LEXIS *7.  Second, even with respect to the Court's discussion of those

8   transfers, the transfers to CDT Limited were not critical to CDT Inc.'s potential liability which depended, by

9   definition, upon a transfer **to CDT, Inc**.  Accordingly, any findings by this Court about transfers to CDT Limited fail

10  to satisfy the requirement that those findings were essential to the judgment.

> Issue preclusion operates to preclude the relitigation of only those issues necessary to
> support the judgment entered in the first action. Relitigation of an issue presented and
> decided in a prior case is therefore not foreclosed if the decision of the issue was not
> necessary to the judgment reached in the prior litigation. ... When the jury or the court
> makes findings of fact, but the judgment is not dependent on those findings, they are not
> conclusive between the parties in a subsequent action based on a different cause of action.

15  *18 Moore, supra, at § 132.03[4][a] (footnotes omitted).*.  The practical reason for this limitation is explained by the

16  recognition that where an issue is addressed only peripherally, it is not given the same attention as it would have been

17  were it a necessary component of liability.  18A Wright, Miller & Cooper, *Federal Practice and Procedure* § 4421

18  (1981) (where "the adjudication of an issue does not dictate the judgment, [it] is thereby deprived, to some degree, of

19  the assurances of integrity and correctness that the judicial process affords to genuinely dispositive adjudications.").

20  For that reason:

> Such determinations have the characteristics of dicta, and may not ordinarily be the subject
> of an appeal by the party against whom they were made. In these circumstances, the interest
> in providing an opportunity for a considered determination, which if adverse may be the
> subject of an appeal, outweighs the interest in avoiding the burden of relitigation.

25  *Restatement (Second) of Judgments* § 27, cmt. h. This Court's passing mention of the 2005 transaction – consisting of

26  its observation about the apparent lack of actual fraud—fits squarely into this doctrine.  The observation was not

27  critical to the judgment against CDT, Inc., since a transfer to CDT Limited would not support the imposition of

28  liability against CDT, Inc.  It is respectfully submitted that the Court's observation about the transfer is a byproduct of

the issue not being essential to the claims against CDT Inc., and thus receiving limited treatment.

C.    **DEFENDANTS ARE BARRED FROM ASSERTING COLLATERAL ESTOPPEL BECAUSE OF THEIR INEQUITABLE CONDUCT DURING THE POST-VERDICT MOTION.**

There is one last reason that prevents CDT from applying collateral estoppel, even if it could show each of the above prerequisites for invocation of collateral estoppel. "Collateral estoppel 'is an equitable doctrine — not a matter of absolute right. Its invocation is influenced by considerations of fairness in the individual case.'" *King v. Fox*, 418 F.3d 121, 130 (2d Cir. 2005). It should not be applied when "other special circumstances warrant an exception to the normal rules of preclusion." *Montana v. United States*, 440 U.S. at 155. Accord *Bates v. Jones*, 127 F.3d 870, 872 (9th Cir. 1997)(no estoppel "if injustice would result"). CDT's "extravagant mischaracterizations" to this Court during the course of the post-judgment motion provides compelling reason to preclude CDT from invoking the Court's findings.

"Equivalent value" depended upon showing not what CDT **paid**, but what Opsys **received**. *In re Lucas Dallas, Inc.*, 185 B.R. at 807-08. During the post-verdict motion, CDT told the Court that Opsys had received the $11 million escrow, which was available to pay Opsys's creditors. Those representations were made to show that Opsys received not only the $5 million paid in 2002, but also the benefit of the $11 million paid in 2004. However, the New York District Court has concluded CDT's statements to this Court about Opsys's interest in the escrow created from the $11 million payment in 2004 were simply untrue:

> In post-verdict proceedings in the Sunnyside case, Cambridge made the statement in materials submitted to the Court that "the proceeds of the transactions were held in escrow and trust for the benefit of creditors, known and unknown", and other statements to similar effect. . . . As regards the escrow account, such a statement is an extravagant mischaracterization.

*Sunnyside Development Company*, 2008 U.S. Dist. LEXIS 11800 *6. The consequence of those untruths destroys the Court's "equivalent value" ruling that CDT attempts to invoke here. Rather than Opsys having received $16 million (as CDT had mischaracterized) for its technology worth $19 million, Opsys received only $5 million. These mischaracterizations constitute "other special circumstances" precluding estoppel.

D.    **SUNNYSIDE'S FRAUDULENT CONVEYANCE CLAIMS ARE WELL PLEADED AND NOT SUBJECT TO DISMISSAL**

CDT's motion challenges the Fifth Cause of Action as failing to state a claim, and not pleading fraud with the required specificity. (CDT Mem. at 15-17). The argument rests upon CDT's confusing a fraudulent misrepresentation claim with Sunnyside's common law fraudulent conveyance claim. Sunnyside's Fifth Cause of

Action is a common law fraudulent conveyance claim, not a fraudulent misrepresentation claim as CDT argues. See *Macedo v. Bosio*, 86 Cal. App. 4th 1044, 1051 (2001) ("[T]he UFTA is not the exclusive remedy by which fraudulent conveyances and transfers may be attacked. They may also be attacked by, as it were, a common law action."). Therefore, CDT's arguments about the elements of a fraudulent misrepresentation claim have no application to the common law fraudulent conveyance action, which is pleaded with sufficiency. Cal. Civ. Code §3439.04(b); *Wyzard v. Goller*, 23 Cal.App.4th 1183, 1191 (1994).

E.    **SUNNYSIDE'S CLAIMS ARE TIMELY**

CDT does not contend that the claims based upon the 2005 transfer to CDT Limited is untimely. Therefore there is no basis for dismissing any causes of action. Nonetheless, CDT asks this Court to preclude Sunnyside's action "to the extent it is based on the October 2002 transaction." (CDT Mem. at 18). That argument is unfounded.

1.    **All of Sunnyside's California Fraudulent Conveyance Claims Are Timely**

The simple answer to CDT's statute of limitations argument is that "the limitation period does not commence to run until the judgment in the underlying action becomes final." *Cortez v. Vogt*, 52 Cal.App.4th 917, 937 (Cal.App.4th Dist. 1997); *Macedo*, 86 Cal.App.4th at 1051; *Blackmun v. Superior Court of San Joaquin County*, 2003 WL 658694 at *7(Cal.App. 3d Dist. 2003)("the limitations period is tolled until judgment is obtained in the pending litigation on the underlying debt"). Here, the claims were asserted well within four years of the 2007 judgment.

2.    **Sunnyside's Constructive Trust and Common Law Fraudulent Conveyance Claim Are Timely**

CDT presents the same arguments concerning the timeliness of the common law fraudulent conveyance claim and the constructive trust claims. (CDT Mem. at 21). The same accrual rules pertain to those claims. *Macedo*, 86 Cal.App.4th at 1051 (fraudulent transfers "may also be attacked by. . . a common law action. . . the cause of action accrues not when the fraudulent transfer occurs but when the judgment against the debtor is secured . . ."). In addition, Sunnyside is entitled to the remedy of a constructive trust on the assets wrongfully conveyed. See *Restatement (Second) Trusts* § 404. See *Fleet National Bank v. Valente (In re Valente)*, 360 F.3d 256 (1st Cir. 2004). The same tolling principle applies to the constructive trust claim. *Estate of Myers*, 139 Cal.App.4th 434, 440 (4th Dist. 2006).

3.    **Sunnyside's Claim under the UK Insolvency Act 1986 Is Timely**

CDT does not present any argument that Sunnyside's claim under UK Insolvency Act Section 423 is

1   untimely. That claim is timely. See *Hill v. Spread Trustee*, [2006] EWCA Civ 542 (Heisenberg Ex. 7).

2          CDT argues that Plaintiff's section 238 claim is untimely under the section's 2-year limitations period. CDT's

3   argument ignores section 32 of the U.K. Limitations Act of 1980, which extends the period for bringing an action

4   where "the action is based upon the fraud of the defendant" in which case "the period of limitation shall not begin to

5   run until the plaintiff has discovered the fraud, concealment or mistake (as the case may be) or could with reasonable

6   diligence have discovered it." (Heisenberg Ex. 8). Here, the action is based upon fraud, and CDT never disclosed the

7   lack of consideration in the 2005 transfer until CDT filed the affidavit of Mr. Black in May 6, 2007. Although CDT

8   disclosed the transfer in its SEC filings, those filings did not disclose the fact making the transfer fraudulent – the lack

9   of any consideration involved in the transfer.

10  **F.    SUNNYSIDE'S CLAIMS UNDER THE UK INSOLVENCY ACT SHOULD NOT BE
11         DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION**

12         Sunnyside acknowledges that the claim for violation of section 238 of the UK Insolvency Act must be

13  brought by the "office holder." However, sections 139 and 231 of the Insolvency Act provide for appointment of

14  creditors to that position. (Heisenberg Ex. 10). Sunnyside is in the process of obtaining such authorization, and has

15  been led to believe that it will be appointed to that position. (Heisenberg Ex. 9). Sunnyside requests that the 238 claim

16  be stayed, rather than dismissed, until such authorization is confirmed.
17

18         CDT wrongly argues that the High Court of England has exclusive jurisdiction with respect to section 423 of

19  the Insolvency Act. (CDT Mem. at 18). However, the High Court's jurisdiction is not exclusive, as section 426

20  expressly provides for the courts of other countries to exercise concurrent jurisdiction:

21              The courts having jurisdiction in relation to insolvency law in any part of the United
                Kingdom shall assist the courts having the corresponding jurisdiction in any other part of the
22              United Kingdom or any relevant country or territory.

23  Insolvency Act § 426(4). Therefore, contrary to CDT's argument, the Act does not vest exclusive jurisdiction in the

24  High Court, and this Court is a court with corresponding jurisdiction in "any relevant country."

25                                      IV.    **CONCLUSION**

26         CDT Limited has received Opsys's last significant asset – its 84% interest in a $19 million subsidiary, CDT

27  Oxford. Opsys received no consideration in return. For the reasons set forth above, Sunnyside requests that the Court

28  deny defendants' motion to dismiss the Complaint.

1

Dated:  August 18, 2008

2

3                                          STIGLICH & HINCKLEY, LLP

4

5                                          By:  s/Michael Hinckley
                                                Michael L. Hinckley

6

7                                          The CCDS Building
                                           502 Seventh Street
                                           San Francisco, CA 94103
8                                          Telephone: (415) 865-2539

9                                          TRAIGER & HINCKLEY LLP
                                           George R. Hinckley, Jr. (GH-7511)
10                                         Christoph C. Heisenberg (CH-8736)

11                                         501 Fifth Avenue, Suite 506
                                           New York, NY 10022-4730
12                                         Tel.: (212) 759-4933

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLF'S OPP. TO CDT LTD.'s MOTION TO DISMISS
       No. C-08-1780 MHP

# ANNEX 1

# THE 2002 OPSYS TRANSACTIONS



# THE 2004 CDT, INC. TRANSACTIONS

# THE 2005 CDT LIMITED TRANSFER

