1  PILLSBURY WINTHROP SHAW PITTMAN LLP
   BRUCE A. ERICSON #76342
2  ALICE KWONG MA HAYASHI #178522
   ELIANA P. KAIMOWITZ RODRIGUEZ #256712
3  50 Fremont Street
   Post Office Box 7880
4  San Francisco, CA  94120-7880
   Telephone:  (415) 983-1000
5  Facsimile:  (415) 983-1200
   bruce.ericson@pillsburylaw.com
6  alice.hayashi@pillsburylaw.com
   eliana.kaimowitz@pillsburylaw.com
7
   Attorneys for Defendants
8  CAMBRIDGE DISPLAY TECHNOLOGY LIMITED
   and CDT OXFORD LIMITED
9

10            UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12            SAN FRANCISCO DIVISION

13

14  SUNNYSIDE DEVELOPMENT
    COMPANY LLC,
15
                        Plaintiff,
16
        vs.
17
    CAMBRIDGE DISPLAY TECHNOLOGY
18  LIMITED, CDT OXFORD LIMITED,
    OPSYS LIMITED, and JOHN DOES I
19  through V,
20
                        Defendants.
21

| | |
|---|---|
| | No. C-08-1780-MHP |
| | **REPLY MEMORANDUM IN SUPPORT OF DEFENDANT CAMBRIDGE DISPLAY TECHNOLOGY LIMITED'S MOTION TO DISMISS COMPLAINT** |
| | [Fed. R. Civ. P. 9(b), 12(b)(1), 12(b)(6)] |
| | Date:     September 8, 2008<br>Time:    2:00 pm<br>Courtroom 15, 18th Floor<br>Hon. Marilyn Hall Patel |
| | Filed herewith:<br>Supplemental Foreign Authorities |

22

23

24

25

26

27

28

1

# TABLE OF CONTENTS

2                                                                                    **Page**

3  I.     INTRODUCTION. ................................................................................................1

4  II.    ARGUMENT. ....................................................................................................1

5         A.    Sunnyside improperly relies on matters outside the pleadings. ....................1

6         B.    Sunnyside's claims are barred by the doctrine of claim preclusion. ..............3

7               1.    Sunnyside's claims based on the May 2005 transaction are
                      barred because Sunnyside could have asserted them in
8                     *Sunnyside I* ...........................................................................................3

9               2.    Sunnyside's current fraud claims are the same as its previous
                      fraud claims. ..........................................................................................5

10        C.    Sunnyside's claims are barred by the doctrine of issue preclusion. ..............6

11              1.    The parties litigated and this Court decided the consideration
12                    given in 2005. ........................................................................................7

13              2.    Sunnyside had a full and fair opportunity to litigate the
                      consideration given in 2005. ................................................................10
14

15              3.    The Court's ruling was not dicta but necessary to the
                      decision. ...............................................................................................12

16              4.    Sunnyside's claims of inequitable conduct are baseless. ................12

17        D.    Sunnyside's fraud claim must be dismissed. .................................................13

18        E.    Sunnyside's claims under the UK Insolvency Act 1986 must be
                dismissed. ......................................................................................................14
19

20        F.    The Court should not follow Sunnyside's statute of limitations
                authority. ........................................................................................................15

21 III.   CONCLUSION. ...............................................................................................15

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

Page

### Cases

*Cabrera v. City of Huntington Park,*
  159 F.3d 374 (9th Cir. 1998) ........................................................................ 4

*California v. Campbell,*
  138 F.3d 772 (9th Cir. 1998) ...................................................................... 11

*Clark v. Bear Stearns & Co., Inc.,*
  966 F.2d 1318 (9th Cir. 1992) .................................................................... 12

*Cortez v. Vogt,*
  52 Cal. App. 4th 917 (1997) ....................................................................... 15

*Gulf Ins. Co. v. Clark,*
  20 P.3d 780 (Mont. 2001) ........................................................................... 15

*Harnett v. Billman,*
  800 F.2d 1308 (4th Cir. 1986) ................................................................. 3, 4

*In re Calpine Corp. Sec. Litig.,*
  288 F. Supp. 2d 1054 (N.D. Cal. 2003) ....................................................... 1

*In re Varat Enterprises, Inc.,*
  81 F.3d 1310 (4th Cir. 1996) ....................................................................... 3

*Int'l Union of Operating Eng'rs-Employers Constr. Indus. Pension, Welfare*
  *& Training Trust Funds v. Karr,*
  994 F.2d 1426 (9th Cir. 1993) ..................................................................... 6

*Johnson v. SCA Disposal Services of New England, Inc.,*
  931 F.2d 970 (1st Cir. 1991) ....................................................................... 3

*K-B Bldg. Co. v. Sheesley Constr., Inc.,*
  833 A.2d 1132 (Pa. Super. Ct. 2003) ........................................................ 15

*Lawlor v. National Screen Service Corp.,*
  349 U.S. 322 (1955) ..................................................................................... 4

*Levy v. Markal Sales Corp.,*
  724 N.E.2d 1008 (Ill. App. Ct. 2000) ........................................................ 15

*Los Angeles Branch NAACP v. Los Angeles Unified School District,*
  750 F.2d 731 (9th Cir. 1985) ....................................................................... 4

*Memorex Corp. v. IBM,*
  555 F.2d 1379 (9th Cir. 1977) .................................................................... 12

*Metzler Inv. GmbH v. Corinthian Colleges, Inc.,*
  --- F.3d ----, No. 06-55826, 2008 WL 2853402 (9th Cir. July 25,
  2008) ............................................................................................................. 1

- ii -

*Munson v. Del Taco,*
    522 F.3d 997 (9th Cir. 2008) .................................................................... 15

*Pool Water Products v. Olin Corp.,*
    258 F.3d 1024 (9th Cir. 2001) .................................................................. 12

*SASCO 1997 NI, LLC, v. Zudkewich,*
    767 A.2d 469 (N.J. 2001) ......................................................................... 15

*Steen v. John Hancock Mutual Life Insurance Co.,*
    106 F.3d 904 (9th Cir. 1997) .................................................................... 10

*Sunnyside Dev. Co., LLC, v. Bank of New York,*
    No. 07 Civ. 8825 (LLS), 2008 WL 463722
    (S.D.N.Y. Feb. 19, 2008) .......................................................................... 13

*Tahoe-Sierra Preservation Council, Inc. v. Tahoe Reg'l Planning Agency,*
    322 F.3d 1064 (9th Cir. 2003) .................................................................... 3

*Tatum v. City & County of San Francisco,*
    441 F.3d 1090 (9th Cir. 2006) .................................................................. 11

**Statutes and Codes**

California Civil Code
    Section 3439 ............................................................................................... 7

UK Insolvency Act 1986
    Section 230(3) ........................................................................................... 14
    Section 238 ................................................................................................ 14
    Section 390 ................................................................................................ 14
    Section 423 ................................................................................................ 14
    Section 423(3) ........................................................................................... 14
    Section 426 ................................................................................................ 14
    Section 426(11) ......................................................................................... 15
    Section 426(11)(b) ..................................................................................... 15
    Section 426(4) ..................................................................................... 14, 15

UK Limitation Act 1980
    Section 32 .................................................................................................. 14

**Rules and Regulations**

Federal Rules of Civil Procedure
    Rule 9(b)..................................................................................................... 14
    Rule 12(b)(1) ............................................................................................... 1
    Rule 12(b)(6) ............................................................................................... 1
    Rule 18(b)..................................................................................................... 9
    Rule 25(c) ........................................................................................... passim
    Rule 56(f)................................................................................................... 11
    Rule 69 ...................................................................................................... 10

**Other Authorities**

18 Moore et al., *Moore's Federal Practice Civil* §132.03[2][a]
  (3d ed. 1999)................................................................................................. 8

Restatement (Second) of Judgments § 27 cmt. d (1982)........................................ 8

- iv -

I.      **INTRODUCTION.**

Sunnyside devotes the first part of its opposition ("Opp'n") to arguments about documents nowhere mentioned in its complaint—a tacit admission that its complaint does not pass muster.  It argues that claim preclusion does not bar claims that arose during *Sunnyside I*, a position rejected by three court of appeals opinions.  It argues that issue preclusion does not bar its "adequacy of consideration" claim even though this Court considered and rejected that claim in *Sunnyside I*.  It argues that its fraud claim is not a fraud claim, even though it is labeled "Common Law Fraud," and that its UK Insolvency Act 1986 claim may be litigated here, even though it lacks standing and the Court lacks jurisdiction.  These arguments all lack merit; the complaint should be dismissed.

II.     **ARGUMENT.**

A.      **Sunnyside improperly relies on matters outside the pleadings.**

This is a Rule 12(b)(6) motion.  The parties therefore are limited to the complaint, documents incorporated by reference into the complaint, and matters that can be judicially noticed. *Metzler Inv. GmbH v. Corinthian Colleges, Inc.,* --- F.3d ----, No. 06-55826, 2008 WL 2853402, *1 & n.1 (9th Cir. July 25, 2008).  Sunnyside ignores this rule.  Instead, it devotes part II of the Opp'n to factual arguments based on documents it recently subpoenaed from Ernst & Young in New York.  A plaintiff cannot, in opposing a motion to dismiss, seek to rely on documents not attached to the complaint unless the complaint necessarily relies on them.  *In re Calpine Corp. Sec. Litig.,* 288 F. Supp. 2d 1054, 1076-77 (N.D. Cal. 2003).  That is not the case here.

It is tempting to ignore Sunnyside's factual arguments as improper, but lest the Court be curious about them, we reply to them briefly.

*The argument that CDT Ltd. paid nothing for assets worth $19 million:*  This argument ignores the Court's determination in *Sunnyside I* that the CDT entities paid adequate consideration for Opsys' assets—namely, $5 million in cash and $11 million in CDT Inc. stock.  *See* Rule 25(c) Order, Sunnyside I Dkt. 224, at 4, 11-14, Request for Judicial Notice, Dkt. 25 ("RJN") Ex. V at 312, 319-22.  It also ignores the fact that Sunnyside's number of $19 million is not some surprise found in the documents it recently subpoenaed from E&Y, but can be found in publicly available documents that Sunnyside used in making its Rule 25(c) Motion in *Sunnyside I*—namely, the

1   Form 10-K of CDT Inc. filed with the SEC in March 2005.  *See* Ainslie Decl., Ex. B (*Sunnyside I*

2   Dkt. 180), Form 10-K, note 3, at F-15 to F-16.  Moreover, Sunnyside's argument is circular:  The

3   $19 million carried as an asset on CDT Inc.'s financial statements reflects not some academic

4   appraisal of the value of Opsys' assets but the total amount paid by CDT Inc. and subsidiaries to

5   acquire Opsys and Opsys UK, as detailed in the 10-K.  *Id.*  Valuing an asset at the amount paid for

6   the asset in an arm's length transaction is hardly a novel proposition.

7         *The argument that Opsys did not get all the $19 million:*  Of course, it didn't; this was a

8   stock purchase, not an asset purchase.  Therefore, much of the consideration would have gone to

9   the sellers—Opsys' shareholders—had it not gone instead to creditors.  Moreover, the 2002

10   transaction gave Opsys the right to be paid the full consideration itself, by exercising the Opsys UK

11   Put Option.  Brown Decl. Ex. B (Dkt. 27-3) §§ 3.1, 3.7, at 13-15 ("…on the Option Exercise Date

12   CDT shall issue such number of CDT Shares and *shall deliver to Opsys* certificates representing

13   the Option Exercise Price …") (emphasis added).  Opsys' then management (Messrs. Holmes and

14   Zervoglos) chose not to do this, instead exercising the "Opsys Limited Option."  *Id.* § 9.

15         Because Opsys exercised the Opsys Limited Option, the consideration paid in 2004 went

16   into the three buckets described in the opposition of CDT Inc. to the Rule 25(c) Motion in

17   *Sunnyside I*.  RJN Ex. S at 215-16.  CDT Inc. believed that creditors were not being disadvantaged

18   because (i) Opsys had represented that all known creditors had been dealt with, many of them by

19   being paid by CDT Inc. at a cost of $1.6 million (the "Schedule A creditors"); (ii) CDT Inc. used

20   the escrow to settle with Reddy; and (iii) all other known creditors of Opsys (e.g., Kodak) who

21   were not included in Schedule A agreed to become preferred beneficiaries of the shares to be held

22   in trust by Opsys Management Limited ("OML").  Therefore, CDT Inc. believed all creditors had

23   been dealt with to their satisfaction, and it had good reason to do so.

24         When the Sunnyside claim became known in January 2005, it was too late for CDT Inc. to

25   do anything:  the deal had been done and the shares issued.  The May 2005 transaction is an

26   irrelevance since CDT Oxford had already agreed (in 2002) to give 98% of any future profits to

27   CDT Ltd. in exchange for CDT Ltd.'s agreement to manage and fund CDT Oxford's operations,

28   and so CDT Oxford's shares had negligible value.  RJN Ex. P at 183.

1    Sunnyside was not listed as a creditor of Opsys in Schedule A, or made a beneficiary of

2    OML, because Opsys (under its old management) represented that the Sunnyside lease had been

3    assigned, and CDT Inc. believed that representation, having no reason not to believe it.  For more

4    than 18 months, Sunnyside did not attempt to make CDT aware of its claim; it did not serve its

5    complaint until January 2005, *after* CDT Inc. had closed its IPO and concluded the 2004

6    transaction.  Sunnyside knew of CDT Inc.'s S-1 IPO filing and had access to the relevant

7    documents.  Sunnyside could have asserted its claim before it was too late.  Instead, Sunnyside

8    made a calculated risk to keep quiet, wait for the IPO and then go after what it saw as deep pockets.

9    Because of its own choice to lie in the weeds, Sunnyside is the only creditor of Opsys not expressly

10   included in arrangements, and the only one claiming any wrongdoing.

11   **B.    Sunnyside's claims are barred by the doctrine of claim preclusion.**

12   Sunnyside does not dispute that CDT Ltd. has satisfied the first two requirements of claim

13   preclusion—identity or privity between the parties and a final judgment on the merits.  *See Tahoe-*

14   *Sierra Preservation Council, Inc. v. Tahoe Reg'l Planning Agency,* 322 F.3d 1064, 1077 (9th Cir.

15   2003) (citations omitted).  It argues only that the third requirement—identity of claims—is not met

16   because its claims based on the May 2005 transfer arose after the filing of *Sunnyside I.*  It also

17   argues that its claims based on the 2002 transactions are not the same as its fraud claims in

18   *Sunnyside I.*  Neither argument has merit.

19   **1.    Sunnyside's claims based on the May 2005 transaction are barred because Sunnyside**

20   **could have asserted them in *Sunnyside I.***

21   Claims based on Opsys' May 2005 transfer of its interest in CDT Oxford to CDT Ltd. are

22   precluded even though these claims did not arise until after the filing of Sunnyside's complaint in

23   *Sunnyside I* and whether or not Sunnyside knew of these claims.  *See* Mem. Supp. CDT Ltd.'s Mot.

24   to Dismiss, Dkt. 32 ("Mot."), at 8.  "Actual knowledge of a potential claim is not a requirement for

25   application of the rules of merger and bar."  *Harnett v. Billman,* 800 F.2d 1308, 1313 (4th Cir.

26   1986).  *Accord, In re Varat Enterprises, Inc.,* 81 F.3d 1310, 1316 (4th Cir. 1996); *Johnson v. SCA*

27   *Disposal Services of New England, Inc.,* 931 F.2d 970, 966 n.20 (1st Cir. 1991).

28   In *Harnett,* plaintiff sued for fraud based on acts that occurred before entry of judgment in

1   an earlier action, claiming he did not know of the acts when judgment was entered. *Id.* at 1312.

2   The court held: "For purposes of res judicata, it is not necessary to ask if the plaintiff knew of his

3   present claim at the time of the former judgment, for it is the existence of the present claim, not

4   party awareness of it, that controls." *Id.* at 1313. *Harnett* distinguished *Lawlor v. National Screen*

5   *Service Corp.,* 349 U.S. 322 (1955), on which Sunnyside relies. "This principle [that the existence

6   of a claim, not party awareness, controls] distinguishes from this case those cases where the

7   challenged claim did not exist at the time of the prior litigation." 800 F.2d at 1313 (citing *Lawlor*).

8   "Here, the record is clear that at the time of the judgment in *Harnett I,* the [acts complained of] had

9   already taken place." *Id.* In *Lawlor,* the claim did not even arise until after the prior action had

10  been dismissed. 349 U.S. at 325 ("Petitioners seek damages for resulting injuries suffered from

11  August 16, 1943—in other words, for a period beginning several months after the dismissal of the

12  1942 complaint."). *Lawlor* held: "While the 1943 judgment precludes recovery on claims arising

13  prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exist

14  and which could not possibly have been sued upon in the previous case." *Id.* at 328. Unlike the

15  claims in *Lawlor,* Sunnyside's claims *did* exist and could have been sued upon in *Sunnyside I.*[1]

16          CDT Ltd. does not seek to bar claims based on events occurring after entry of judgment:

17  The May 2005 transfer occurred only a few months after the filing of Sunnyside's original

18  complaint (*Sunnyside I* Dkt. 1, filed Dec. 14, 2004; RJN Ex. A), the same month as the filing of its

19  first amended complaint (*Sunnyside I* Dkt. 21, filed May 11, 2005; RJN Ex. D), and before such

20  preliminaries as the filing of the parties' ADR certifications (*Sunnyside I* Dkt. 29-31, filed June 27,

21  _____

22  [1]      Sunnyside's other cases are inapposite. In *Cabrera v. City of Huntington Park,* 159 F.3d
    374 (9th Cir. 1998), the court dismissed a malicious prosecution claim on statute of limitations
23  grounds. It stated: "In light of this disposition, the issue of claim preclusion is moot." *Id.* at 382.
    Although it commented on claim preclusion, it did so only in a footnote which assumed, solely for
24  purposes of argument, that plaintiff had not effectively raised his malicious prosecution claim in
    the earlier action. *Id.* at 382 n.12. *Los Angeles Branch NAACP v. Los Angeles Unified School*
25  *District,* 750 F.2d 731 (9th Cir. 1985) applies California preclusion law (750 F.2d at 736-37), not
    the federal preclusion law applicable here. *See* Mot. 4-5. Pursuant to a stipulation about the scope
26  of trial, the court applied res judicata to claims based on acts occurring before the trial in the prior
    action (in 1969). 750 F.2d at 739. The court declined to bar claims based on acts occurring after
27  the trial (during numerous appeals and the "remedy enforcement phase" of the litigation, which did
    not conclude until 1981). *Id.* at 739-41.

28

1    2005) and their first joint case management statement (*Sunnyside I* Dkt. 33, filed July 1, 2005).  In

2    sum, whether or not Sunnyside knew of the May 2005 transfer, its claims based on that transfer—

3    like its claims based on the 2002 and 2004 transactions—are barred.

4    **2.       Sunnyside's current fraud claims are the same as its previous fraud claims.**

5        *The 2005 transaction:*  Contrary to Sunnyside's assertion, its claims based on the May 2005

6    transfer arise out of the same transactional nucleus of facts as its fraud claims in *Sunnyside I*.  Both

7    arise out of the transactions in which CDT Ltd. obtained management control and 98% of the

8    profits of CDT Oxford (in 2002) and then full equity ownership of CDT Oxford and Opsys (in

9    2005).  Mot. 7.  Indeed, Sunnyside's first amended complaint in *Sunnyside I* alleged that CDT Ltd.

10   "entered unto [*sic*] *sub rosa* negotiations to purchase Opsys Ltd. as a corporate acquisition."

11   *Sunnyside I* Dkt. 21 ¶ 11 (RJN Ex. D at 42).  Sunnyside also alleged that "one of the *SINE QUA*

12   *NON* CONDITIONS which CDT created for its purchase of Opsys Ltd. was that Opsys Ltd.

13   somehow get rid of its debt burdens owed to plaintiff under this lease."  *Id.* (emphasis in original).

14   Hence, Sunnyside asserted in *Sunnyside I* that CDT Ltd. structured its acquisition of Opsys to

15   avoid Opsys' obligations to Sunnyside.  But this is the same claim it makes now in *Sunnyside II.*

16   Sunnyside itself has portrayed the May 2005 transfer as the final transaction in a series designed to

17   shield Opsys' assets from Sunnyside.  Rule 25(c) Motion at 11-12, RJN Ex. M at 123-24.

18       *The 2002 transactions:*  Sunnyside now says that *Sunnyside I* involved only fraudulent

19   inducement claims, not fraudulent transfer claims.  Not so.  Its first amended complaint alleged that

20   CDT Ltd. sought to obtain control of Opsys' assets in 2002 while shielding itself from Opsys'

21   obligations to Sunnyside.  *See Sunnyside I* Dkt. 21 ¶¶ 11, 15 (RJN Ex. D at 42:8-25, 44:9-25).  This

22   is the same claim that Sunnyside asserts now in *Sunnyside II:*  "Defendants specifically structured

23   the 2002 transactions in a manner to deprive the California creditors—including specifically

24   Sunnyside—from obtaining recourse against the assets transferred by Opsys (or the monies paid by

25   CDT)."  Compl. (Dkt. 1) ¶ 12; *see also id.* ¶ 34.

26       Moreover, Sunnyside's counsel stated in his declaration opposing defendants' motion to

27   dismiss the original complaint:  "Plaintiff is informed and believes that the defendant CDT Limited

28   participated in the bifurcation of Opsys Limited and Opsys US so that Opsys Limited would have

1  all of the assets and Opsys US would have all of the debts and liabilities as part of the deal for CDT

2  to acquire those assets." *Sunnyside I* Dkt. 15 ¶ 6.  He added:  "Plaintiff is also entitled to conduct

3  discovery to obtain information on the extent and value of assets of Opsys Limited removed from

4  the premises that are the subject of this lawsuit, and what part of those assets ended up in the

5  custody and control of defendant CDT Limited."  *Id.* ¶ 7.  At the hearing on the motion*,* he argued:

6  "We have documents indicating that this Opsys U.S. was ready to be stripped down, you know,

7  become nonoperative at the very time that they were claiming this was a viable, you know,

8  company."  *Sunnyside I* Dkt. 37, at 13:24-14:2.[2]

9      "'Whether two events are part of the same transaction or series depends on whether they

10  were related to the same set of facts and whether they could conveniently be tried together.'"  *Int'l*

11  *Union of Operating Eng'rs-Employers Constr. Indus. Pension, Welfare & Training Trust Funds v.*

12  *Karr,* 994 F.2d 1426, 1429 (9th Cir. 1993) (citation omitted).  Res judicata bars "not only all claims

13  that were actually litigated, but also all claims that 'could have been asserted' in the prior action."

14  *Id.* at 1430 (citation omitted).  There can be no question here that Sunnyside's claims based on the

15  2002 transactions are related to the same set of facts and could have been conveniently tried

16  together with its claims in *Sunnyside I.*  Sunnyside's claims based on the 2002 transactions "could

17  have been asserted" in *Sunnyside I,* and they should have been.  Sunnyside does not even argue that

18  its claims based on the 2004 transactions are not precluded.  Hence, all its claims—whether based

19  on the 2002, 2004 or 2005 transactions—should be dismissed.

20  **C.    Sunnyside's claims are barred by the doctrine of issue preclusion.**

21      Issue preclusion requires identity or privity of parties and a final judgment.  Sunnyside does

22  not dispute that these requirements are satisfied.  It does not dispute that its claims based on the

23  ───────────────

24  [2]    Sunnyside attempts to distinguish between claims based on the transfer of Opsys' lease liability to Opsys US and claims based on the transfer of Opsys' assets to CDT Oxford.  *See* Opp'n

25  12.  But the lease assignment was executed on October 22, 2002 (Black Decl. ¶ 12, Ex. A at 9 (*Sunnyside I* Dkt. 204-1), the day before the 2002 transactions, in which Opsys expressly warranted

26  that it was not a party to, nor had any liability under, any lease.  Rule 25(c) Order at 4-5, RJN Ex. V at 312-13.  Opsys' Disclosure Letter of October 23, 2002 provided to CDT Inc. with the

27  2002 transaction, explicitly represents that the Sunnyside lease has been assigned to Opsys US, and attaches the assignment agreement.  Black Decl. ¶ 12, Ex. A at 9 (*Sunnyside I* Dkt. 204-1).

28

1   2002 and 2004 transactions are issue-precluded.  It concedes that the Court in *Sunnyside I* ruled

2   that the 2005 transaction did not involve fraudulent intent.  *See* Opp'n at 14.  Thus, Sunnyside

3   contests issue preclusion only with respect to the adequacy of the consideration given to Opsys in

4   May 2005.  Here, the questions are:  whether this issue was actually litigated and necessarily

5   decided; whether Sunnyside had a full and fair opportunity to litigate it; and whether the issue was

6   necessary to the Rule 25(c) Order.  All these questions must be answered affirmatively.

7   **1.      The parties litigated and this Court decided the consideration given in 2005.**

8          In *Sunnyside I,* Sunnyside alleged that, following the 2002 and 2004 transactions, "the only

9   remaining asset of Opsys Limited—its majority shareholding in CDT Oxford Limited (IP and

10  patents)—was transferred to Cambridge in 2005 *while this action was pending*."  *Sunnyside I* Dkt.

11  179, at 11; RJN Ex. M at 123 (emphasis in original).  Sunnyside claimed that "Opsys Limited was

12  thus 'hollowed out,' its assets stripped and transferred to Cambridge."  *Id.* at 12; RJN Ex. M at 124.

13  It added:  "[I]n 2005 defendants during the pendency of this action transferred the patent-rich CDT

14  Oxford Limited subsidiary, owned 84% by Opsys Limited when the case began, to Cambridge

15  directly, leaving Opsys Limited, according to Cambridge, with 'no assets.'"  And:  "the final and

16  most alarming transfer that occurred during the pendency of this case occurred only in 2005."  *Id.*

17  at 21, 22 n.35; RJN Ex. M at 133-34.

18         Sunnyside argued inadequacy of consideration in its Rule 25(c) Motion to support its

19  claims that CDT Inc. should be held liable as Opsys' successor because CDT Inc. was a mere

20  continuation of Opsys and because Opsys' assets were transferred for the fraudulent purpose of

21  escaping liability for Opsys' debts.  *Id.* at 19-22; RJN Ex. M at 131-34.  Sunnyside argued that the

22  May 2005 transfer left Opsys with no assets and, by implication, that Opsys had received no

23  consideration for its interest in CDT Oxford.  *Id.* at 12, 21; RJN Ex. M at 124, 133.  Sunnyside

24  cited the Uniform Fraudulent Transfer Act ("UFTA"; Cal. Civ. Code § 3439 *et seq.*), the same

25  statute under which it brings its first three claims in *Sunnyside II*.  *Id.* at 22, RJN Ex. M at 134.

26         In response, CDT Inc. explained the timing and purpose of the May 2005 transfer, argued

27  that adequate consideration was given for Opsys' assets, and submitted evidence that Opsys'

28  interest in CDT Oxford (the asset transferred in May 2005) had only nominal value because CDT

1   Ltd. had been entitled to 98% of CDT Oxford's profits since 2002. *Sunnyside I* Dkt. 207, at 7, 16-

2   19 & n.6, 23-24, RJN Ex. S at 216, 225-28, 232-33; Black Decl. ¶ 36 (*Sunnyside I* Dkt. 204), RJN

3   Ex. P at 183. At the hearing, when asked to identify what asset transfers had taken place,

4   Sunnyside's counsel listed the May 2005 transfer, argued that Opsys no longer had any assets and

5   concluded: "in May of 2005 everything that Opsys Limited owned went out the window."

6   *Sunnyside I* Dkt. 218, at 48, 51-52, 60-61; RJN Ex. U at 283, 286-87, 295-96.

7            The parties thus litigated the May 2005 transfer, and this Court also ruled on it. After

8   describing the May 2005 transfer, the Court's Rule 25(c) Order rejected any claim of fraudulent

9   intent as to the transfer: "At the time of these transfers, CDT Limited, rather than CDT Inc., was a

10  defendant in this action… An asset transfer between defendants is hardly an attempt to thwart a

11  plaintiff's ability to collect. These facts do not support a finding of fraudulent transfer."

12  *Sunnyside I* Dkt. 224, at 7, 16; RJN Ex. V at 315, 324. And the Court concluded, citing the UFTA:

13  "A prerequisite for the various forms of fraudulent transfer is that the acquiring party pays

14  inadequate consideration. Because plaintiff has failed to demonstrate this with respect to *any of the*

15  *transactions at issue,* the fraudulent transfer exception [to the general rule barring successor

16  liability] does not apply." *Id.* at 17; RJN Ex. V at 325 (emphasis added). In short, the record in

17  *Sunnyside I* demonstrates that the parties actually litigated, and this Court decided, the adequacy of

18  the consideration given in May 2005.

19           In the face of all this, Sunnyside now argues that adequacy of consideration was not

20  actually litigated because the issue was not raised in a cause of action stated in a "pleading."

21  Opp'n 16-17. But Sunnyside's authorities do not support this view. "The 'actually litigated'

22  requirement simply requires the issue to have been raised, contested by the parties, submitted for

23  determination by the court, and determined." 18 Moore et al., *Moore's Federal Practice—Civil*

24  § 132.03[2][a] (3d ed. 1999); *see also* Restatement (Second) of Judgments § 27 cmt. d (1982)

25  ("When an issue is properly raised, by the pleadings *or otherwise,* and is submitted for

26  determination, and is determined, the issue is actually litigated….") (emphasis added).

27           Sunnyside argues that the 2005 transfer was not litigated because it was a transfer to CDT

28  **Ltd**., and the Rule 25(c) Motion asserted claims only against CDT **Inc**. Opp'n 16. Sunnyside

1   claims that the 2005 transfer was therefore not at issue, and this Court's ruling that Sunnyside had

2   failed to demonstrate inadequate consideration "with respect to any of the transactions at issue" did

3   not include the 2005 transfer.  Opp'n 14-15.  But Sunnyside's Rule 25(c) Motion plainly put the

4   2005 transfer at issue; the Court discussed this transfer only two paragraphs before concluding that

5   Sunnyside had failed to demonstrate inadequate consideration.  The question is whether adequacy

6   of consideration was litigated, not whether claims against CDT Ltd. were litigated.

7          Sunnyside argues that the Court could not have addressed adequacy of consideration

8   because the Court denied the Rule 25(c) Motion as a matter of law, based on "the undisputed facts

9   in the record."  *Sunnyside I* Dkt. 224, at 17; RJN Ex. V at 325.  Sunnyside disagrees with the Court,

10  arguing that facts were disputed.  Opp'n 15.  In fact, however, it was undisputed that CDT Ltd. has

11  since 2002 been entitled to 98% of CDT Oxford's profits, if any, in exchange for managing and

12  funding CDT Oxford.  Black Decl. ¶ 36 (*Sunnyside I* Dkt. 204), RJN Ex. P at 183.  This fact alone

13  suffices to support the Court's conclusion that adequate consideration was given in May 2005.

14         Sunnyside argues that, regardless of the pages of briefs and oral argument it devoted to the

15  May 2005 transfer, it really did not intend to litigate this transfer in the Rule 25(c) proceedings,

16  noting its request for leave to add a fraudulent conveyance claim under Rule 18(b) of the Federal

17  Rules of Civil Procedure.  Opp'n 16.  But Sunnyside sought to add a claim targeting transfers to

18  CDT Inc. and CDT Oxford, not CDT Ltd.  *Sunnyside I* Dkt. 179, at 1, 23; RJN Ex. M at 113, 135.

19  The proposed claim did not include the May 2005 transfer to CDT Ltd.

20         Sunnyside's expert for the Rule 25(c) Motion, Paul Ainslie, opined as to the May 2005

21  transfer.  Ainslie Decl. ¶ 10 (*Sunnyside I* Dkt. 180-1); RJN Ex. N at 139.  Although he had not yet

22  reviewed *all* the documents he wanted before saying whether Opsys had received fair value "for

23  the transfers of (i) Opsys Limited assets to the control of Cambridge and (ii) *CDT Oxford Limited*

24  *and its assets to Cambridge,*" he concluded that, "my initial opinion is that the series of

25  transactions were either designed to or had the effect of impairing the interests of Opsys Limited

26  creditors, including Sunnyside."  *Id.* ¶ 11; RJN Ex. N at 139-40 (emphasis added).  This does not

27  show, as Sunnyside claims, that it had deferred its claims about the May 2005 transfer.  *Cf.* Opp'n

28  17.  It shows that Sunnyside was actively pursuing those claims and that Ainslie—like every

1   expert—wanted room to revise his opinion if needed.

2       Sunnyside did not raise the May 2005 transfer only "in the context of requesting Rule 69

3   discovery." *See* Opp'n 17.  Adequacy of consideration was a major element of Sunnyside's

4   successor liability claim.  Sunnyside invoked Rule 69 primarily as a ground for adding CDT Inc. to

5   the judgment rather than to support a request for discovery.  Rule 25(c) Motion at 13-17, RJN Ex.

6   M at 125-29; *see* Rule 25(c) Order at 18 n.3, RJN Ex. V at 326.

7       This is not a case in which the court's order is unclear, confusing or contradictory.  *Cf.*

8   *Steen v. John Hancock Mutual Life Insurance Co.,* 106 F.3d 904, 914-15 & n.7 (9th Cir. 1997).

9   This Court explicitly stated that Sunnyside had failed to demonstrate inadequate consideration

10  "with respect to any of the transactions at issue."  Rule 25(c) Order at 17; RJN Ex. V at 325.

11  Sunnyside should therefore be precluded from litigating adequacy of consideration "with respect to

12  any of the transactions at issue," including the May 2005 transaction.

13  **2.**      **Sunnyside had a full and fair opportunity to litigate the consideration given in 2005.**

14      In its appeal to the Ninth Circuit from the Court's Rule 25(c) Order, Sunnyside argues that

15  it should have been permitted more discovery before the Court denied its Rule 25(c) Motion and

16  that, as a result, it did not have a full and fair opportunity to litigate the adequacy of the

17  consideration given in May 2005.  Opp'n 18-20.  But none of the cases it cites holds—as

18  Sunnyside suggests—that, whatever the circumstances, issue preclusion does not apply absent full

19  discovery and cross-examination in the prior proceeding.  *See* Opp'n 19.

20      Sunnyside does not deny that it chose to proceed by motion rather than by filing a new

21  action.  It argued in its Rule 25(c) Motion that there were no genuine issues of material fact, and it

22  asked the Court to decide the motion *summarily*.  While stating that an "[e]videntiary [h]earing

23  [a]fter [d]iscovery *[m]ay* [b]e [a]ppropriate" (Rule 25(c) Motion 22:4-5; RJN Ex. M at 134

24  (emphasis added)), it argued that its motion was "supported by a large volume of publicly-filed

25  documents and undisputed exhibits."  *Id.* at 9:5-7; RJN Ex. M at 121.  Although it asked for leave

26  to conduct discovery "[i]f an evidentiary hearing is required" (*id.* at 22:23-24; RJN Ex. M at 134),

27  it stated, "Sunnyside believes the public record facts and Cambridge's participation to date

28  mandate that Cambridge should be added to the judgment."  *Id.* at 22:18-19; RJN Ex. M at 134.  It

1    thus urged the Court "to hold Cambridge responsible for the judgment," requesting discovery and

2    an evidentiary hearing only as an alternative. *Id.* at 23:15-18; RJN Ex. M at 135.

3        Midway through the hearing on the Rule 25(c) Motion, Sunnyside changed course and

4    pushed for further proceedings, but only after it became apparent that the Court might deny the

5    motion. Then counsel asserted only that Sunnyside needed to "have some discovery against all

6    those CDT entities and get the documents related to where are the assets." *Sunnyside I* Dkt. 218, at

7    51; RJN Ex. U at 286. He did not identify any particular documents or explain why the SEC

8    filings and other public documents did not suffice. Parties requesting additional discovery under

9    Rule 56(f) "must show (1) that they have set forth…the specific facts that they hope to elicit from

10   further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are 'essential'

11   to resisting the summary judgment motion." *California v. Campbell,* 138 F.3d 772, 779 (9th Cir.

12   1998); *Tatum v. City & County of San Francisco,* 441 F.3d 1090, 1101 (9th Cir. 2006).

13   Sunnyside's failure to specify what discovery it sought—and its equivocation about whether it

14   needed discovery—undercut its argument that it should have been permitted to have discovery.

15       Sunnyside argues that it was denied an opportunity to file a reply brief in support of its Rule

16   25(c) Motion. Opp'n 20. What it neglects to mention is that both sides waived reply briefs on

17   their post-trial motions. *Sunnyside I* Dkt. 174, at 15-16.

18       Sunnyside contends that, even if it waived its right to discovery against CDT Inc., the

19   waiver would not extend to CDT Ltd. Opp'n 20. But it does not cite any authority to support its

20   claim that it should be permitted a second bite at the apple because it has now filed the same claims

21   against another defendant. That would contravene the policies behind issue preclusion—

22   conserving judicial resources and avoiding repetitive litigation.

23       Sunnyside does not dispute that it had every incentive to litigate its claims vigorously in the

24   Rule 25(c) proceedings. It also had ample procedural opportunities. This Court denied the Rule

25   25(c) Motion without further discovery only after finding that there were no genuine issues of

26   material fact. Rule 25(c) Order at 17, RJN Ex. V at 325. Sunnyside has already had a full and fair

27   opportunity to litigate the adequacy of the consideration given in May 2005.

28

**3.      The Court's ruling was not dicta but necessary to the decision.**

Sunnyside argues that the Court's ruling on adequacy of consideration was not necessary to its decision. But the Court held that adequacy of consideration was an essential element of Sunnyside's de factor merger argument, its continuation of the business argument and its fraudulent purpose argument. Rule 25(c) Order at 11-17, RJN Ex. M at 319-25 (describing adequacy of consideration as "the 'crucial factor'" and failure to prove it as "fatal to plaintiff's claims of mere continuation"). Nor do Sunnyside's authorities improve its argument. *Clark v. Bear Stearns & Co., Inc.,* 966 F.2d 1318, 1322 (9th Cir. 1992) involved an arbitration; the defendants could not show what issues were determined because the arbitration panel did not elaborate on its findings and defendant did not submit a transcript. *Pool Water Products v. Olin Corp.,* 258 F.3d 1024, 1033 (9th Cir. 2001), involved an administrative proceeding; the court stated that although some of the issues may have been identical, the plaintiff did not meet its burden of identifying them. *Memorex Corp. v. IBM,* 555 F.2d 1379, 1384 (9th Cir. 1977), did not reach the res judicata issue, but noted it only in dicta.

**4.      Sunnyside's claims of inequitable conduct are baseless.**

Sunnyside's argument that CDT Ltd. should be barred from asserting collateral estoppel on equitable grounds rests on its own misinterpretation of statements made to the Court by CDT Inc., not CDT Ltd. As CDT Inc. explained in its opposition to the Rule 25(c) Motion, none of the CDT Inc. stock paid in 2004 was paid directly to Opsys' shareholders as such. Some went to cover known liabilities of Opsys (the Schedule A creditors). Some went into escrow, from which CDT Inc. could take it to resolve contingent or unidentified liabilities. The rest went to OML in trust, to be distributed to a creditor of Opsys (Kodak), former debt holders who had provided capital, and only then to Opsys' former shareholders. RJN Ex. S at 215-16. In the introduction to its opposition, CDT Inc. said this three-bucket structure was not an "attempt[] to defraud creditors; here, in contrast, the proceeds of the transactions were held in escrow and trust for the benefit of creditors, known and unknown." RJN Ex. S at 210-11.

Sunnyside, allegedly in reliance on this and similar statements, filed a turnover petition in New York to seize the escrow funds—and lost. In dismissing Sunnyside's turnover petition, the

1    New York court held that neither Opsys nor any creditor of Opsys (such as Sunnyside) had any

2    interest in or right to the escrow. *Sunnyside Dev. Co. v. Bank of New York,* No. 07 Civ. 8825

3    (LLS), 2008 WL 463722, at *1-*2 (S.D.N.Y. Feb. 19, 2008). The New York court stated that, *as

4    regards the escrow,* CDT Inc.'s statement (quoted above) and others to similar effect were an

5    "extravagant mischaracterization." *Id.* at *3. In other words, the court said that if the statement

6    were construed to refer only to the escrow—and not to the "Schedule A" stock held for creditors or

7    the stock transferred to OML to be held in trust for creditors and debt holders—the statement

8    would be inaccurate. In fact, however, CDT Inc.'s statement covered all three buckets—"in

9    escrow *and trust.*" Viewed in this light, the New York court had no problem with the statement:

10   "Such a statement [by CDT Inc.] may be a generally fair, even if rough, description of the

11   $1,607,256 worth of shares set aside to cover the list of known and identified Opsys liabilities.

12   That is not a matter before this Court." *Id.* at *3. The New York court did not find any inequitable

13   conduct by CDT Inc. and expressly found no basis for judicial estoppel. It thus ruled in CDT Inc.'s

14   favor. Fond of the "extravagant mischaracterization" sound bite, Sunnyside repeats it at every

15   opportunity, but its estoppel argument has no merit.

16        Sunnyside also argues in the alternative that if creditors have no interest in the escrow (a

17   ruling it is appealing to the Second Circuit), then the escrow ought not to be counted as

18   consideration received by Opsys even though it was paid by CDT Inc. Opp'n 23. But Sunnyside

19   made a similar argument in the Rule 25(c) proceedings—and lost. *See* Rule 25(c) Motion at 11:20-

20   21, 12:2-3, RJN Ex. M at 123-24; *Sunnyside I* Dkt. 218, at 63 (claiming that "the only cash that

21   went to Opsys Limited itself was $5 million"), RJN Ex. U at 298.

22   **D.    Sunnyside's fraud claim must be dismissed.**

23        Sunnyside cannot salvage its fifth cause of action, for "Common Law Fraud" (Compl. (Dkt.

24   1), at 19), by relabeling it a fraudulent conveyance claim. The claim alleges that "Defendants have

25   engaged in fraud." *Id.* ¶ 100. The term "fraudulent conveyance" never appears in this cause of

26   action. Instead, Sunnyside alleges that "Defendants concealed the wrongful transfer of the assets

27   during the relevant time period, including failing to disclose the lack of consideration payable in

28   the 2005 transaction." *Id.* ¶ 101. This is an allegation that defendants concealed something they

1    should have disclosed; it would support a fraud claim, *not* a fraudulent conveyance claim.

2    Sunnyside does not dispute that, if this is a fraud cause of action, it failed to plead it with

3    particularity, as required by Rule 9(b).  It also does not dispute that it failed to plead four of the five

4    elements of a fraud claim—scienter, intent to induce reliance, justifiable reliance, and resulting

5    damage.  Because the fifth cause of action *is* a cause of action for fraud, it should be dismissed.

6    **E.      Sunnyside's claims under the UK Insolvency Act 1986 must be dismissed.**

7            Sunnyside's claim under section 238 of the UK Insolvency Act 1986 must be dismissed for

8    two reasons.  First, Sunnyside concedes that only an administrator or liquidator may bring a section

9    238 claim.  It asks the Court to stay the claim while it seeks to be named liquidator in the UK

10   insolvency proceedings it initiated against Opsys.  Opp'n 25.  But only a qualified insolvency

11   practitioner may be appointed liquidator.  UK Insolvency Act 1986 § 230(3) .  Sunnyside does not

12   qualify.  *See id.* § 390 (a "person who is not an individual is not qualified to act as an insolvency

13   practitioner").  Second, Sunnyside's claim is untimely.  Sunnyside does not dispute that section

14   238 applies to transactions that occur within two years before the onset of insolvency.  Mot. 20;

15   Opp'n 25.  Sunnyside erroneously asserts that this two-year period is extended by section 32 of the

16   UK Limitation Act 1980.  But section 32 applies "in the case of any action for which a period of

17   limitation is prescribed by this Act [the Limitation Act 1980]."  The two-year period set by section

18   238 of the Insolvency Act 1986 is not a period of limitation prescribed by the Limitation Act 1980.

19           Sunnyside's claim under section 423 of the Insolvency Act 1986 also must also be

20   dismissed for two reasons.  First, a section 423 claim requires a showing that the person who

21   entered into the transaction did so for a fraudulent purpose.  Mot. 14-15 (citing UK Insolvency Act

22   1986 § 423(3)).  But Sunnyside is estopped from arguing fraudulent intent, and it does not contend

23   otherwise.  Second, the section 423 claim must be dismissed for lack of subject matter jurisdiction.

24   Sunnyside erroneously argues that section 426 of the Insolvency Act 1986 allows the courts of

25   other countries to exercise concurrent jurisdiction over section 423 claims.  Opp'n 25.  Section

26   426(4) provides as follows:  "The courts having jurisdiction in relation to insolvency law in any

27   part of the United Kingdom shall assist the courts having the corresponding jurisdiction in any

28   other part of the United Kingdom or any relevant country or territory."  As is evident from the

1    plain text, section 426(4) does not confer any jurisdiction on any court.  It only provides for

2    cooperation among courts that already have jurisdiction.  Furthermore, section 426(11) defines

3    "any relevant country or territory" as "(a) any of the Channel Islands or the Isle of Man, or (b) any

4    country or territory designated for the purposes of this section by the Secretary of State by order

5    made by statutory instrument."  Neither the United States nor California is one of the Channel

6    Islands or the Isle of Man.  They also do not fall within section 426(11)(b).  *See* Dkt. 45, Exs. C-E.

7    **F.     The Court should not follow Sunnyside's statute of limitations authority.**

8            Based on the plain language of the UFTA, the Mot. (at 18-20) argued that Sunnyside's

9    UFTA claims are time-barred to the extent based on the 2002 transactions.  The Opp'n argues that

10   the UFTA limitations period was tolled until entry of judgment in *Sunnyside I,* relying principally

11   on *Cortez v. Vogt,* 52 Cal. App. 4th 917 (1997).  Counsel for CDT Ltd. did not know of *Cortez*

12   when they prepared the Mot.  Nevertheless, *Cortez* ought not to change the result here.  *See*

13   *Munson v. Del Taco,* 522 F.3d 997 (9th Cir. 2008) (a federal court need not follow a decision by an

14   intermediate state court if there is convincing evidence that the highest court of the state would

15   decide it differently).  Here, the California Supreme Court has not addressed the issue raised in

16   *Cortez,* which has been heavily criticized by courts in other jurisdictions, including other states'

17   supreme courts.  *See, e.g., Gulf Ins. Co. v. Clark,* 20 P.3d 780, 788 (Mont. 2001) ("we join other

18   jurisdictions which have criticized the ultimate determination of the California court in *Cortez*");

19   *SASCO 1997 NI, LLC, v. Zudkewich,* 767 A.2d 469, 587-88 (N.J. 2001); *K-B Bldg. Co. v. Sheesley*

20   *Constr., Inc.,* 833 A.2d 1132, 1136-37 (Pa. Super. Ct. 2003) ("*Cortez* has been roundly criticized

21   and is against the weight of authority"); *Levy v. Markal Sales Corp.,* 724 N.E.2d 1008, 1011-12

22   (Ill. App. Ct. 2000).  *Cortez* flies in the face of the UFTA's plain language.  Applying it here would

23   allow Sunnyside to resuscitate statutory claims that are now almost six years old.

24   **III.    CONCLUSION.**

25           This action should be dismissed with prejudice.

26           Dated:  August 25, 2008.

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PILLSBURY WINTHROP SHAW PITTMAN LLP
BRUCE A. ERICSON
ALICE KWONG MA HAYASHI
ELIANA P. KAIMOWITZ RODRIGUEZ
50 Fremont Street
Post Office Box 7880
San Francisco, CA  94120-7880


By _____ /s/ Bruce A. Ericson _____
                   Bruce A. Ericson
Attorneys for Defendants
CAMBRIDGE DISPLAY TECHNOLOGY LIMITED
and CDT OXFORD LIMITED