| | |
|---|---|
| 1 | PILLSBURY WINTHROP SHAW PITTMAN LLP |
|   | BRUCE A. ERICSON #76342 |
| 2 | ALICE KWONG MA HAYASHI #178522 |
|   | ELIANA P. KAIMOWITZ RODRIGUEZ #256712 |
| 3 | 50 Fremont Street |
|   | Post Office Box 7880 |
| 4 | San Francisco, CA  94120-7880 |
|   | Telephone:  (415) 983-1000 |
| 5 | Facsimile:  (415) 983-1200 |
|   | bruce.ericson@pillsburylaw.com |
| 6 | alice.hayashi@pillsburylaw.com |
|   | eliana.kaimowitz@pillsburylaw.com |

Attorneys for Defendants
CAMBRIDGE DISPLAY TECHNOLOGY LIMITED
and CDT OXFORD LIMITED

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

SUNNYSIDE DEVELOPMENT COMPANY LLC,

　　　　　　　　　Plaintiff,

　vs.

CAMBRIDGE DISPLAY TECHNOLOGY LIMITED, CDT OXFORD LIMITED, OPSYS LIMITED, and JOHN DOES I through V,

　　　　　　　　　Defendants.

No. C-08-1780-MHP

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT CDT OXFORD LIMITED'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

[Fed. R. Civ. P. 12(b)(2)]

Date:　September 8, 2008
Time:　2:00 p.m.
Courtroom 15, 18th Floor
Hon. Marilyn Hall Patel

Filed herewith:
1.　Declaration of Hilary Charles
2.　Supplemental Request for Judicial Notice

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION. ..................................................................................................1

II. ARGUMENT. .........................................................................................................1

    A. Sunnyside may not rely on unsupported allegations to establish personal jurisdiction. ..................................................................................1

    B. Sunnyside cannot establish specific jurisdiction based on the 2002 Transaction Agreement. .............................................................................2

        1. Sunnyside cannot establish purposeful availment. ............................2

        2. Sunnyside cannot establish the requisite relationship between its claims and the 2002 transaction. .....................................................3

        3. It would not be reasonable to exercise jurisdiction over CDT Oxford. .................................................................................................4

            a. CDT Oxford has not interjected itself into California's affairs. .......................................................................................4

            b. It would be burdensome to CDT Oxford to defend itself in California. .....................................................................6

            c. California has no greater interest in adjudicating this dispute than the UK. ..............................................................7

    C. Sunnyside cannot establish specific jurisdiction based on its tort allegations. ..................................................................................................8

III. CONCLUSION. ....................................................................................................11

# TABLE OF AUTHORITIES

**Cases**

*Air Products & Controls, Inc., v. Safetech International, Inc.*,
    503 F.3d 544 (6th Cir. 2007) .................................................................................. 9, 10

*Ballard v. Savage*,
    65 F.3d 1495 (9th Cir. 1995) .......................................................................................... 1

*Bancroft & Masters, Inc. v. Augusta National Inc.*,
    223 F.3d 1082 (9th Cir. 2000) ............................................................................... passim

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ..................................................................................................... 2, 3

*Doe v. Unocal Corp.*,
    248 F.3d 915 (9th Cir. 2001) .......................................................................................... 3

*Gator.Com Corp. v. L.L. Bean, Inc.*,
    341 F.3d 1072 (9th Cir. 2003) ........................................................................................ 3

*Hall v. LaRonde*,
    56 Cal. App. 4th (1997) .................................................................................................. 3

*Harris Rutsky & Co. Ins. Servs., Inc., v. Bell & Clements Ltd.*,
    328 F.3d 1122 (9th Cir. 2003) ........................................................................................ 1

*In the Matter of Opsys Ltd.*, No. 357 of 2008 ..................................................................... 7

*Levey v. Hamilton (In re Teknek, LLC)*,
    354 B.R. 181 (Bankr. N.D. Ill. 2006) ....................................................................... 9, 10

*Pebble Beach Co. v. Caddy*,
    453 F.3d 1151 (9th Cir. 2006) ........................................................................................ 3

*Pena v. Valo*,
    563 F. Supp. 742 (C.D. Cal. 1983) ................................................................................. 1

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*,
    148 F.3d 1355 (Fed. Cir. 1998) ...................................................................................... 6

*State Farm Mutual Automobile Co. v. Tz'Doko V'Chesed of Klausenberg*,
    543 F. Supp. 2d 424 (E.D. Pa. 2008) ....................................................................... 9, 10

*Verizon Online Services, Inc. v. Ralsky*,
    203 F. Supp. 2d 601 (E.D. Va. 2002) ......................................................................... 1, 2

*West Corp. v. Superior Court*,
    116 Cal. App. 4th 1167 (2004) ...................................................................................... 7

*Wong v. Tenneco, Inc.*,
    39 Cal. 3d 126 (1985) ..................................................................................................... 7

701234572v2                    - ii -                    REPLY BRIEF IN SUPPORT OF
                                                         CDT OXFORD'S MOTION TO DISMISS
                                                         No. C-08-1780 MHP

**Statutes and Codes**

California Civil Code
    Section 3439 .................................................................................................................. 8

UK Insolvency Act (1986)
    Section 238 .................................................................................................................... 7
    Section 423 .................................................................................................................... 8
    Section 423(4) ............................................................................................................... 8

**Rules and Regulations**

Federal Rules of Civil Procedure
    Rule 7.1 .......................................................................................................................... 6
    Rule 25(c) .............................................................................................................. 2, 4, 10
    Rule 26(a)(1)(A) ............................................................................................................ 6

## I. INTRODUCTION.

Sunnyside does not argue that CDT Oxford's contacts with California are sufficient to establish general jurisdiction. It argues only that California has specific jurisdiction over CDT Oxford based on (1) the 2002 Transaction Agreement to which CDT Oxford was a party,[1] and (2) alleged fraudulent conveyances that harmed Sunnyside, a California resident. Neither of these grounds for jurisdiction holds up on inspection.

## II. ARGUMENT.

### A. Sunnyside may not rely on unsupported allegations to establish personal jurisdiction.

Sunnyside does not dispute that it has the burden of demonstrating that the Court has jurisdiction over CDT Oxford. *See* Opp'n 6-7. It argues that "the Court must take as true Sunnyside's version of the facts" (*id.*), but this is inaccurate. A plaintiff's version of the facts is taken as true "[u]nless directly contravened." *Harris Rutsky & Co. Ins. Servs., Inc., v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003). The declaration of Scott Brown in support of CDT Oxford's motion to dismiss (Dkt. 27) directly contravenes the jurisdictional allegations in Sunnyside's complaint. Sunnyside may not therefore rely on the "conclusory allegations of [its] complaint" to establish personal jurisdiction. *See Pena v. Valo,* 563 F. Supp. 742, 747 (C.D. Cal. 1983). Although conflicts in the facts contained in the parties' affidavits would be resolved in Sunnyside's favor, there are no such conflicts here because Sunnyside has not submitted any affidavits. The cases cited by Sunnyside are not to the contrary. Neither *Ballard v. Savage,* 65 F.3d 1495, 1498 (9th Cir. 1995), nor *Bancroft & Masters, Inc. v. Augusta National Inc.,* 223 F.3d 1082, 1087 (9th Cir. 2000), discusses how conflicts between a plaintiff's jurisdictional allegations and a defendant's affidavits should be resolved. *Verizon Online Services, Inc. v. Ralsky,* 203 F. Supp. 2d 601 (E.D. Va. 2002), does not bind this Court. Moreover, the declarations

---

[1] Sunnyside states in its opposition that its claims against CDT Oxford are based only on the 2002 transactions, not the 2004 transactions or the 2005 transactions. Opp'n 1 & n.1; *see also id.* 3 & n.2. Hence, the 2004 and 2005 transactions are not at issue here.

1  submitted by defendants in that case only denied the plaintiff's substantive allegations,
2  which were intertwined with the jurisdictional issues. *Id.* at 609. Here, Dr. Brown's
3  declaration contains specific facts directly contravening Sunnyside's jurisdictional
4  allegations. The Court may not assume as true any jurisdictional allegations in Sunnyside's
5  complaint that are contradicted by that declaration or any other competent evidence.

6  **B.    Sunnyside cannot establish specific jurisdiction based on the 2002 Transaction**
7  **      Agreement.**

8  **1.    Sunnyside cannot establish purposeful availment.**

9  Sunnyside argues that the fact that two of the eight parties to the 2002 Transaction
10 Agreement were California residents— Opsys US Corporation ("Opsys US") and Opsys 2
11 Corporation ("Opsys 2")—is sufficient to establish jurisdiction over CDT Oxford. But the
12 United States Supreme Court has held, "If the question is whether an individual's contract
13 with an out-of-state party *alone* can automatically establish sufficient minimum contacts in
14 the other party's home forum, we believe the answer clearly is that it cannot." *Burger King*
15 *Corp. v. Rudzewicz,* 471 U.S. 462, 478 (1985) (emphasis in original). As discussed in CDT
16 Oxford's opening brief (at 7), Sunnyside has not even pled—much less proven—any of the
17 factors that courts weigh in determining the existence of jurisdiction based on a contract,
18 including the contract terms relating to CDT Oxford and the two California residents, the
19 parties' actual course of dealing, and future consequences. *Id.* at 479.
20 Here, the 2002 Transaction Agreement separated Opsys' UK operations from its US
21 operations. The future consequences were that CDT Oxford would be entirely independent
22 of the two California residents, Opsys US and Opsys 2. *See* CDT Oxford's Mot. to Dismiss
23 ("Mot.") (Dkt. 28), at 7-8. Unlike *Burger King,* where the contract at issue created a "20-
24 year relationship that envisioned continuing and wide-reaching contacts with [the plaintiff]
25 in Florida" (471 U.S. at 480), the 2002 Transaction Agreement did not create any sort of
26 continuing relationship between CDT Oxford and either Opsys US or Opsys 2. As this
27 Court found, the 2002 transactions were "structured to avoid both the assets and liabilities
28 of Opsys Limited's US business—in other words, the entire operation." Rule 25(c) Order

1  at 16; Request for Judicial Notice ("RJN") (Dkt. 25) Ex. V at 324.

2      Neither *Hall v. LaRonde,* 56 Cal. App. 4th (1997), nor *Gator.Com Corp. v. L.L.*
3  *Bean, Inc.,* 341 F.3d 1072 (9th Cir. 2003), *on rehearing en banc,* 398 F.3d 1125 (9th Cir.
4  2005), purport to change the rule stated by the Supreme Court in *Burger King. Hall*
5  involved a contract by which the defendant "created a '"continuing obligation[]"' between
6  himself and a resident of California." 56 Cal. App. 4th at 1347 (citing *Burger King,*
7  471 U.S. at 475-76). *Gator.Com* held that L.L. Bean, Inc., the retailer, was subject to
8  general jurisdiction based on its substantial mail-order and internet-based commerce in
9  California. The case did not address specific jurisdiction. 342 F.3d at 1077 n.2.

10     Because Sunnyside cannot establish purposeful availment based on the 2002
11 transactions, it cannot establish personal jurisdiction based on those transactions. It is
12 therefore unnecessary to consider the other two requirements for specific jurisdiction, the
13 relationship between the plaintiff's claims and the alleged contacts, and whether it would be
14 reasonable to exercise jurisdiction. *See Pebble Beach Co. v. Caddy,* 453 F.3d 1151, 1155
15 (9th Cir. 2006). Even assuming *arguendo* that Sunnyside could establish purposeful
16 availment, it could not satisfy these other requirements.

17 **2.    Sunnyside cannot establish the requisite relationship between its claims and the**
18     **2002 transaction.**

19     "The claim must be one which arises out of or results from the defendant's forum-
20 related activities." *Doe v. Unocal Corp.,* 248 F.3d 915, 923 (9th Cir. 2001). Although
21 Sunnyside informed the Court at the initial case management conference in this matter that
22 it sought to unwind one transaction in particular, the 2005 transfer by Opsys of its interest
23 in CDT Oxford to CDT Ltd. (*see* Mot. 9-10), it has now backtracked and claims that, as to
24 CDT Oxford, the transaction at issue is the 2002 transaction. But Sunnyside cannot
25 establish the requisite relationship between its claims and the 2002 transaction. In
26 particular, Sunnyside cannot show that its claims arise out of its agreements with Opsys US
27 or Opsys 2 contained in the 2002 Transaction Agreement. Neither Opsys US nor Opsys 2
28 has anything to do with this litigation. Indeed, they are each mentioned exactly once in

1 Sunnyside's complaint—in the paragraph alleging that their participation in the 2002
2 Transaction Agreement creates jurisdiction over CDT Oxford.  Compl. (Dkt. 1) ¶ 11.
3       Even taking the 2002 Transaction Agreement as a whole, however, Sunnyside
4 cannot show that, but for the agreement, it would be able to satisfy its judgment against
5 Opsys.  See *Bancroft,* 223 F.3d at 1088 (setting forth "but for" test).  As discussed in the
6 Mot. at 13, the evidence suggests that, but for the 2002 Transaction Agreement, Opsys
7 could not have continued operations.  As this Court found, "Opsys Limited was in serious
8 financial trouble in 2002, having £17 million in liabilities."  Rule 25(c) Order at 3; RJN Ex.
9 V at 311; *see also* Rule 25(c) Motion at 9; RJN Ex. M at 121 ("In fall 2002, judgment
10 debtor Opsys Limited had debts in excess of 17 million British pounds….").  CDT Oxford
11 does not argue, as Sunnyside asserts, that Sunnyside must show that the 2002 transaction is
12 responsible for the "entirety" of Sunnyside's alleged injury.  *See* Opp'n 12.  But it is
13 Sunnyside's burden to establish jurisdiction, and Sunnyside has not shown that, but for the
14 2002 transaction, it would have been able to recover *any part* of its judgment against
15 Opsys.  *See* Opp'n 12-13 (failing to cite or discuss evidence).  Indeed, permitting Sunnyside
16 to recover damages in this action would put Sunnyside in a better position than if the 2002
17 transaction had never occurred, which appears to have been Sunnyside's design all along,
18 as it did not serve its complaint in *Sunnyside I* until January 10, 2005, well after the claimed
19 breach of lease in November 2002 and CDT Inc.'s acquisition of Opsys in 2004.  *See*
20 *Sunnyside I* Dkt. 1, Ex. A ¶ 2, RJN Ex. A at 2; *see also Sunnyside I* Dkt. 207, at 22-23, RJN
21 Ex. S at 231-32 (discussing Sunnyside's delay).
22 **3.    It would not be reasonable to exercise jurisdiction over CDT Oxford.**
23       Exercise of jurisdiction over CDT Oxford would not be reasonable.  Sunnyside
24 claims that none of the factors considered in determining reasonableness weigh in CDT
25 Oxford's favor (Opp'n 13), but it discusses only three at any length:
26 **a.    CDT Oxford has not interjected itself into California's affairs.**
27       Notwithstanding Sunnyside's vague assertions otherwise (*see* Opp'n 13:22-23),
28 CDT Oxford has not interjected itself into California's affairs in any way.  Sunnyside

identifies only two alleged interjections: the licensing of IP to Litrex Corp. and Add-Vision, Inc. Opp'n 13-14.[2] As Sunnyside concedes, however, CDT *Ltd.* licensed IP to Litrex and Add-Vision—not CDT *Oxford.* Compl. (Dkt. 1) ¶ 16 (alleging that "Defendant CDT *Ltd.* licenses its IP to California companies" and referring to CDT *Ltd.*'s agreement with Add-Vision) (emphasis added), ¶ 17 (referring to CDT *Ltd.*'s August 15, 2003 Joint Venture Agreement with Litrex and CDT *Ltd.*'s Share Purchase Agreement with Litrex).

Sunnyside argues that CDT Ltd. acted as CDT Oxford's agent. But the fact that CDT Ltd. has acted as CDT Oxford's agent for some purposes does not mean that CDT Ltd. has acted as CDT Oxford's agent *in California.* Nor does it mean, clearly, that every action ever taken by CDT Ltd. was taken on behalf of CDT Oxford. CDT Ltd. did *not* act as CDT Oxford's agent in licensing IP to Litrex and Add-Vision:

*Litrex:* It is a matter of public record that CDT Ltd. never licensed any CDT Oxford IP to Litrex. The August 25, 2003 Share Purchase Agreement among CDT Inc., CDT Ltd., Litrex, and Ulvac Inc. (a Japanese corporation not relevant here) explicitly states: "The Corporation [Litrex] does not utilize any Intellectual Property licensed from or otherwise provided by Opsys US or CDT Oxford Limited (formerly known as Opsys UK Limited)." Supp. RJN Ex. A § 11.37, at 26, § 13.31, at 42.

*Add-Vision:* CDT Ltd. never licensed any CDT Oxford IP to Add-Vision either. See Declaration of Hilary Charles, filed herewith, ¶ 3. Indeed, the Add-Vision license does not even refer to Opsys Limited, Opsys UK or CDT Oxford. *Id.* ¶ 5.

Even assuming *arguendo* that CDT Ltd. *had* acted as CDT Oxford's agent in licensing IP to Litrex and Add-Vision, this would not show that CDT Oxford has interjected itself into California's affairs. Indeed, contrary to Sunnyside's allegation otherwise, and except for its payment provisions, CDT Ltd.'s agreement with Add-Vision is governed by UK law and provides for arbitration in London. *Id.* ¶ 4; *compare* Compl.

---

[2] Sunnyside expressly concedes that it is not relying on alter ego or successor liability theories to establish jurisdiction. Opp'n 14.

1   (Dkt. 1) ¶ 16 (alleging that the agreement is governed by California law).  Moreover,

2   "doing business with California…do[es] not constitute doing business in California."

3   *Bancroft,* 223 F.3d at 1086 (discussing effect of license agreements with television

4   networks and vendors).  Although the *Bancroft* court made this statement in analyzing a

5   defendant's contacts for general jurisdiction, it demonstrates that licensing activity in and of

6   itself is not a significant contact with a forum state.  Sunnyside argues that the two license

7   agreements here involve Opsys' IP, unlike the agreements in *Bancroft,* which were

8   ancillary to the plaintiff's claims.  But this distinction is immaterial because, as Sunnyside

9   admits, it does not claim that these two agreements could create jurisdiction on their own.

10  *See* Opp'n 16:6-9.[3]  To sum up, CDT Oxford has not interjected itself in California's

11  affairs, and it would not be reasonable for the Court to exercise jurisdiction on the basis of

12  any alleged interjection.

13  **b.    It would be burdensome to CDT Oxford to defend itself in California.**

14         Sunnyside appears to argue that it cannot be burdensome for a corporation to be

15  sued in a foreign country as long as its parent corporation is subject to jurisdiction and is

16  also sued.  Opp'n 16.  But this makes no sense, even if both corporations are represented by

17  the same counsel.  Thus far in this litigation, CDT Oxford has incurred the expense of

18  preparing its disclosure statement pursuant to Rule 7.1 of the Federal Rules of Civil

19  Procedure (Dkt. 18), its own initial disclosures pursuant to Rule 26(a)(1)(A), and this

20  motion to dismiss.  Furthermore, Sunnyside has made clear that its claims against CDT

21  Oxford are based on the 2002 transactions, while it says its claims against CDT Ltd. are

22  based on the 2005 transactions.  Thus, if CDT Oxford is not dismissed from this litigation,

23  it will be put to the expense of preparing a defense as to claims that otherwise would not be

---

[3]   In *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.,* 148 F.3d 1355 (Fed. Cir. 1998), the court held that entering into a license agreement with a company that does business in the forum state is not sufficient to create jurisdiction.  Sunnyside argues that the license agreements here are with California residents.  As discussed above, however, it is well settled that contracts with forum residents are insufficient on their own to create jurisdiction.

1   litigated.  It is self-evident, in any event, that CDT Oxford and CDT Ltd. are not the same

2   corporation, and any facts, documents, testimony, analyses, or conclusions relevant to one

3   would not necessarily obtain as to the other.

4         Sunnyside contends that it would be unreasonable to require it to pursue its claims

5   in the UK, but it already is doing so.  As CDT Oxford discussed in its motion (at 14),

6   Sunnyside has retained a firm of solicitors and has initiated insolvency proceedings in the

7   UK against Opsys.  *In the Matter of Opsys Ltd.,* No. 357 of 2008 (High Court of Justice,

8   Companies Court) (RJN Ex. W); *see* Joint Case Management Statement (Dkt. 20), at 1-2.

9   In its opposition to CDT Ltd.'s motion to dismiss, Sunnyside asks this Court not to dismiss

10  its claim under section 238 of the UK Insolvency Act 1986 because it is in the process of

11  obtaining authorization to be appointed the liquidator in those proceedings.  Sunnyside's

12  Unredacted Opp'n at 25.  Sunnyside's actions demonstrate that it is ready, willing and able

13  to pursue its claims in the UK.

14  **c.     California has no greater interest in adjudicating this dispute than the UK.**

15        Sunnyside cites cases stating that California has a strong interest in protecting its

16  residents from breach of contract or tortious conduct.  *See, e.g., West Corp. v. Superior*

17  *Court,* 116 Cal. App. 4th 1167, 1180 (2004) (in a putative class action against nonresident

18  telemarketing corporation, plaintiff's alleged damages were so small that, if she were

19  required to litigate outside California, "she would essentially be denied an opportunity to

20  seek redress"); *see also Wong v. Tenneco, Inc.,* 39 Cal. 3d 126, 128 (1985) (plaintiff may

21  not enlist the aid of California courts to recover damages allegedly suffered as a result of

22  losing his illegal farming operations in Mexico; Sunnyside cites—improperly—to a

23  statement made in the dissenting opinion in a conflict-of-law analysis).  But none of these

24  cases demonstrate that, under the circumstances here, California has a greater interest in

25  adjudicating Sunnyside's claims than other forums.  *See Bancroft,* 223 F.3d at 1088

26  (identifying both the extent of the conflict with the sovereignty of the defendant's state, and

27  the existence of an alternative forum, as factors to be weighed in determining whether it is

28  reasonable to exercise jurisdiction).

1      Contrary to Sunnyside's arguments (Opp'n 16-17), the fact that California has
2 enacted the Uniform Fraudulent Transfer Act (Cal. Civ. Code § 3439 *et seq.*) does not
3 speak to whether California has more or less of an interest in adjudicating a dispute
4 involving a foreign debtor than other possible jurisdictions. After all, numerous
5 jurisdictions have adopted the *Uniform* Fraudulent Transfer Act. The UK also has a strong
6 interest in adjudicating disputes between creditors and debtors, as evidenced by its adoption
7 of the Insolvency Act 1986, under which Sunnyside purports to bring its fourth cause of
8 action here. Indeed, section 423(4) of the UK Insolvency Act 1986 gives exclusive
9 jurisdiction over claims under section 423 (such as Sunnyside's) to the High Court of
10 England and Wales.
11     Sunnyside asserts that its claims should not be transferred to the UK because it
12 would take its UK solicitors significant time and effort to familiarize themselves with the
13 facts. Opp'n 17-18. But time and expense have not prevented Sunnyside from changing
14 counsel twice in this Court (and filing new actions in New York). *See* Joint Case
15 Management Statement (Dkt. 20), at 9-10, regarding the New York actions. Moreover,
16 contrary to Sunnyside's claim that its insolvency proceedings against Opsys in the UK
17 involve only Opsys' "current condition" (Opp'n 17), Sunnyside is already pursuing the
18 same claims there as here. In a June 23, 2008 letter to the Official Receiver's Office at the
19 Insolvency Service, Sunnyside's solicitors state, "Our client believes that the company sold
20 a key asset at a time when it knew that a client was likely to be a major creditor of the
21 company. Our client believes that the proceeds of sale was [*sic*] transferred to the
22 shareholders ahead of the creditors, which requires an investigation of issues that may result
23 in a return to the creditors. To that end, our client would like to request the Secretary of
24 State's appointment of a liquidator." Heisenberg Affirmation (Dkt. 35) ¶ 7, Ex. 9 (Dkt. 36-
25 7). In short, Sunnyside has already availed itself of an alternative forum for its claims.
26 **C.     Sunnyside cannot establish specific jurisdiction based on its tort allegations.**
27     Sunnyside also attempts to establish specific jurisdiction based on its fraudulent
28 conveyance allegations. To show purposeful availment based on tort allegations outside the

1  forum, a plaintiff must satisfy the "effects test." *Bancroft,* 222 F.3d at 1086-87. Although
2  Sunnyside purports to distinguish between the cases it cites and those cited by CDT Oxford,
3  it does not dispute that, under the "effects test," a defendant must have committed an
4  intentional act that was *expressly aimed* at the forum state and caused harm "which the
5  defendant knows is likely to be suffered in the forum state." *E.g., id.* at 1087; *see* Opp'n 9.
6      In *Air Products & Controls, Inc., v. Safetech International, Inc.,* 503 F.3d 544
7  (6th Cir. 2007), the court ruled that the purposeful availment requirement was satisfied
8  based on a nine-year business relationship between the parties involving hundreds of
9  communications. *Id.* at 551. In addition, the court ruled that the "effects test" was satisfied
10 where plaintiff alleged that defendants engaged in an allegedly fraudulently transfer;
11 defendants knew they "owed a judgment debt to [plaintiff] *at the time* [of the allegedly
12 fraudulent transfer]"; defendants transferred the assets with the intent to hinder, delay, or
13 defraud plaintiff; and defendants knew that "the focal point of [their] actions and the brunt
14 of the harm would be in [the forum state]." *Id.* at 552-53 (emphasis in original).
15     Similarly, in *State Farm Mutual Automobile Co. v. Tz'Doko V'Chesed of
16 Klausenberg,* 543 F. Supp. 2d 424 (E.D. Pa. 2008), the court concluded that the "expressly
17 aimed" requirement was satisfied where plaintiff alleged that a judgment debtor liquidated
18 itself to avoid paying a judgment in the forum state. In *Levey v. Hamilton (In re Teknek,
19 LLC),* 354 B.R. 181, 199 (Bankr. N.D. Ill. 2006), the court held the "effects test" was
20 satisfied where it was alleged, among other facts, that the defendants withdrew money from
21 a limited liability company during the pendency of litigation against the company, forcing
22 the company to file for bankruptcy and rendering the company unable to pay the judgment
23 against it. *Id.* at 199 (alleging both fraudulent intent and constructive fraud).
24     The facts of *Air Products, State Farm,* and *Levey* differ markedly from the ones
25 here. In each of those cases, it was alleged that the defendant knew of the judgment debt,
26 that the allegedly fraudulent transfer was made after the entry of judgment, or that it was
27 made during the pendency of the litigation. Acknowledging this, Sunnyside alleges that
28 CDT Oxford knew that the 2002 transaction would harm Sunnyside. Opp'n 11. But the

1   evidence contradicts this allegation.  There was no lawsuit at the time of the 2002

2   transactions, much less a judgment.  As part of the 2002 transactions, Opsys represented in

3   writing that the lease with Sunnyside had been assigned to Opsys US, and it attached the

4   assignment agreement.  Black Decl. ¶ 12, Ex. A at 9 (*Sunnyside I* Dkt. 204-1).  CDT Inc.

5   did not know of Sunnyside's claim even at the time of the 2004 transactions.  Fyfe Decl.

6   ¶ 14, RJN Ex. Q at 188; Black Decl. ¶¶ 30-31, RJN Ex. P at 182.  Sunnyside did not file its

7   complaint in *Sunnyside I* until December 14, 2004 (*Sunnyside I* Dkt. 1; RJN Ex. A), and it

8   did not serve it until January 10, 2005.  RJN Ex. A ¶ 2 at 2.

9          Furthermore, it was alleged in *Air Products, State Farm,* and *Levey* that the

10  defendants acted with fraudulent intent.  As discussed in CDT Oxford's motion (at 12), this

11  Court has already rejected Sunnyside's claim that the 2002 transaction was structured to

12  avoid obligations to Sunnyside:  "There is no indication that Opsys Limited's attempts to

13  maintain its UK operations by seeking financing from CDT, Inc. was specifically designed

14  to dodge the liabilities of the US operations.  Rather, Opsys Limited unsuccessfully sought

15  a financing partner for Opsys US at the same time it was working out its arrangement with

16  CDT, Inc. regarding Opsys UK."  Rule 25(c) Order at 16; RJN Ex. V at 324.  Although

17  Sunnyside has challenged the preclusive effect of the Rule 25(c) Order as to the May 2005

18  transactions, it has not done so as to the 2002 (or 2004) transactions.  *See* Dkt. 40 at 14-16.

19  Thus, CDT Oxford did not "individually target" Sunnyside in the same way that the

20  plaintiffs were targeted in *Air Products, State Farm,* and *Levey*.  *See Bancroft,* 222 F.3d at

21  1087 (an act is "expressly aimed" at a forum state "when the defendant is alleged to have

22  engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a

23  resident of the forum state").  Moreover, the Court's ruling that the 2002 transaction did not

24  involve fraudulent intent undercuts any allegation that CDT Oxford knew that "the focal

25  point of its actions and the brunt of the harm" would be in California.  *Cf. Air Products,*

26  503 F.3d at 553.

27         As CDT Oxford discussed in its motion (at 10), it is not sufficient to allege an act

28  with foreseeable effects in the forum state.  Sunnyside has not alleged the "something

1  more" that is required.  *See Bancroft,* 223 F.3d at 1087.  This is not a case where the

2  defendant took action for the very purpose of having its consequences felt in the forum

3  state, or where the forum effect of a defendant's action was not only foreseeable, but

4  contemplated and bargained for.  *See id.* at 1087-88 (citing cases).  Accordingly, because

5  Sunnyside cannot satisfy the "express aiming" requirement, it cannot show purposeful

6  availment based on its tort allegations.  It cannot therefore establish jurisdiction over CDT

7  Oxford based on these allegations, and it is not necessary to consider the relationship

8  between Sunnyside's claims and the alleged contacts or the reasonableness of exercising

9  jurisdiction.  Even assuming *arguendo* that these two requirements were relevant,

10 Sunnyside cannot demonstrate that they are satisfied for all the reasons discussed in

11 sections II.B.2-3 above (which address all of Sunnyside's arguments as to these two

12 requirements).

13 **III.    CONCLUSION.**

14      For the foregoing reasons, CDT Oxford submits that this action should be dismissed

15 with prejudice as to it.

16      Dated:  August 25, 2008.

17                                      PILLSBURY WINTHROP SHAW PITTMAN LLP
                                        BRUCE A. ERICSON
18                                      ALICE KWONG MA HAYASHI
                                        ELIANA P. KAIMOWITZ RODRIGUEZ
19                                      50 Fremont Street
                                        Post Office Box 7880
20                                      San Francisco, CA  94120-7880

21
                                        By  _____/s/ Alice Kwong Ma Hayashi_____
22                                              Alice Kwong Ma Hayashi
                                        Attorneys for Defendants
23                                      CAMBRIDGE DISPLAY TECHNOLOGY
                                        LIMITED and CDT OXFORD LIMITED

24

25

26

27

28