UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUNNYSIDE DEVELOPMENT COMPANY LLC, | No. C 08-01780 MHP |
| Plaintiff, | **MEMORANDUM & ORDER** |
| v. | **Re: Defendants Cambridge Display Technology Limited and CDT Oxford Limited's Rule 12(b)(6) Motion to Dismiss or, Alternatively, to Stay Proceedings Pending Appeal** |
| CAMBRIDGE DISPLAY TECHNOLOGY LIMITED, CDT OXFORD LIMITED, OPSYS LIMITED, and JOHN DOES I though V, | |
| Defendants. | |

   Plaintiff Sunnyside Development Company LLC ("plaintiff") prevailed in a diversity breach of contract action against defendant Opsys Ltd. in this court. On March 9, 2007, a jury awarded plaintiff approximately $4.85 million. In this action, plaintiff challenges the conveyance of certain Opsys Ltd. assets—including its 84% ownership of CDT Oxford Ltd. ("CDT Oxford")—to other corporate entities, including Cambridge Display Technology Ltd. ("CDT Limited"). Plaintiff alleges that these transfers rendered Opsys Ltd. insolvent and unable to satisfy the judgment. Plaintiff seeks to set aside or void these transfers, so that plaintiff can satisfy its judgment against Opsys Ltd. Defendants CDT Limited and CDT Oxford have moved to dismiss the complaint and to stay any part of the complaint not dismissed.

   This memorandum and order address CDT Limited's motion to dismiss, which is joined by CDT Oxford. The court rules on CDT Oxford's separate motion to dismiss for lack of personal jurisdiction in a companion memorandum and order. Having considered the parties' arguments and for the reasons stated below, the court enters the following memorandum and order.

BACKGROUND

The factual background underlying plaintiff's outstanding judgment is set forth in this court's order on defendant's motion for summary judgment, Sunnyside Dev. Co. v. Opsys Ltd., No. C 05 0553 MHP, 2007 WL 419865 (N.D. Cal. Feb. 6, 2007). Additional procedural and factual background is set forth in this court's order on plaintiff's motion to add CDT Incorporated as a party to the action and judgment, Sunnyside Dev. Co. v. Opsys Ltd., No. C 05 0553 MHP, 2007 WL 2462142 (N.D. Cal. Aug. 29, 2007) ("2007 Rule 25(c) Order"). Procedural and factual background relevant to the present motions is as follows.

I.     Sunnyside's Judgment Against Opsys Ltd.

Plaintiff Sunnyside Development Company sued defendant Opsys Ltd. for a breach of contract resulting from a breached lease agreement. Plaintiff Sunnyside is a limited liability company organized under the laws of California. Complaint ¶ 3. On March 9, 2007, a jury returned a verdict in favor of plaintiff, finding $4,853,017 in damages. Docket Entry 25, Exh. L (verdict form). The jury found a purported assignment of Opsys Ltd.'s lease liabilities to another entity to be ineffective. Id. To date, plaintiff has been unsuccessful in recovering its award against Opsys Ltd., which is in insolvency proceedings in the United Kingdom. See Docket Entry 25, Exh. W (petition to wind up Opsys Ltd.). Defendants CDT Limited and CDT Oxford are companies registered under the laws of the United Kingdom. Complaint ¶¶ 5 & 6. These defendants are indirect wholly-owned subsidiaries of Sumitomo Chemical Co. Ltd., which is a wholly-owned subsidiary of Sumitomo Corporation, a Japanese trading conglomerate. Id. ¶ 7. Plaintiff alleges that Opsys Ltd. has no assets to satisfy the judgment owed to plaintiff because of a series of transactions occurring between 2002 and May 2005.

II.    The 2002, 2004, and 2005 Transactions

Between 2002 and 2005, the now-judgment debtor Opsys Ltd. engaged in a series of complex transactions with CDT Incorporated its subsidiaries. Plaintiff has filed a one-page

2

graphical overview of its interpretation of the various corporate entities and alleged transactions, available at Docket Entry 40 (Opp.), Annex 1. The primary transactions in 2002 and 2004 were between Opsys Ltd. and CDT *Incorporated*, whereas the 2005 transaction was between Opsys Ltd. and CDT *Limited*, a subsidiary of CDT Incorporated and a party to this action.

Before October 2002, Opsys Ltd. was an independent corporation. It owned 100% of a subsidiary, Opsys UK. In October 2002, Opsys Ltd. engaged in a transaction ("the 2002 transaction") whereby it sold 16% of Opsys UK and an option to purchase Opsys Ltd. to CDT Incorporated. At that time, Opsys UK was the owner of certain intellectual property ("the IP") in the area of dendrimer solution processing. See Complaint ¶ 20. Under the 2002 transaction agreement ("2002 Transaction Agreement"), CDT Incorporated paid Opsys Ltd. $2.5 million for the 16% ownership stake in Opsys UK. Id. ¶¶ 37-40. CDT Incorporated also gained management control over Opsys UK and the right to 98% of its profits. Id. ¶ 39. Opsys UK was renamed "CDT Oxford Ltd." Id. ¶ 42.

In 2004, CDT Incorporated exercised its option to purchase Opsys Ltd. CDT Incorporated tendered several millions of dollars worth of shares to Opsys Limited and its shareholders in exchange for 100% ownership of Opsys Ltd. See 2007 Rule 25(c) Order at 4. At that time, Opsys Ltd. still owned 84% of CDT Oxford, the owner of the IP. Id. CDT Incorporated also paid over five million dollars into two escrow accounts ("the escrow accounts"). Id. The purpose of these escrow accounts was to cover any loss or costs that might incur to CDT Incorporated as a result of the purchase of Opsys Ltd. Id. at 7. Upon completion of the 2004 series of deals ("the 2004 transaction"), Opsys Ltd. was a wholly-owned subsidiary of CDT Incorporated. Opsys Ltd. was at that time still the owner of 84% of CDT Oxford, which owned the valuable IP. Indeed, Opsys Ltd. had become merely a holding company; its ownership share of CDT Oxford was its only significant remaining asset. Complaint ¶ 36 & 51. Plaintiff estimates the value of the 84% ownership interest to have been more than $10 million. Id. ¶ 64.

In November 2004, Opsys Ltd. and CDT *Limited* agreed to an additional transaction ("the 2005 transaction"), which was consummated in May 2005. Complaint ¶¶ 50-52. Like Opsys Ltd., CDT Limited was at that time and is now a wholly owned subsidiary of CDT Incorporated. In the

3

2005 transaction, Opsys Ltd. transferred its 84% ownership of CDT Oxford to CDT Limited, allegedly for no consideration. Id.[1]

III.   Procedural History

Plaintiff filed its original breach of contract suit on December 14, 2004, in California Superior Court. That suit, *Sunnyside I*, originally named Opsys Ltd. and CDT Limited as defendants. Defendants removed the action to this court on February 7, 2005. Defendants filed a motion to dismiss, and the court ruled on this motion in its order of August 8, 2005, Sunnyside Dev. Co. v. Opsys Ltd., No. C 05 0553 MHP, 2005 WL 1876106 (N.D. Cal. Aug. 8, 2005) (Patel, J.) ("2005 Dismissal Order").

In the 2005 dismissal order, the court ruled on plaintiff's allegations of breach of contract and fraud as to both defendants. The court examined allegations relating to the 2002 and 2004 transactions. The complaint did not include allegations relating to the 2005 transaction, and the court did not address it. Plaintiff's fraud claims against both defendants were dismissed, because plaintiff failed to plead the elements of fraud with the particularity required by Federal Rule of Civil Procedure 9(b). The breach of contract claim against CDT Limited was also dismissed. Plaintiff relied on an alter ego theory to hold CDT Limited liable for Opsys Ltd.'s breach of contract, but here too plaintiff failed to plead the allegations relevant to this claim, which sounded in fraud, with the required particularity. Thus, the 2005 order dismissed CDT Limited entirely from the lawsuit.

On November 2, 2005, plaintiff filed a motion to join CDT Incorporated (the parent company of CDT Limited) as a successor-in-interest pursuant to Federal Rule of Civil Procedure 25(c). The court denied plaintiff's motion as premature but subject to renewal if and when the primary liability of Opsys Ltd. on the lease had been established. After the jury awarded plaintiff its verdict against Opsys Ltd. in March 2007, plaintiff renewed its motion to join CDT Incorporated.

In an order dated August 29, 2007, the court denied the motion. Sunnyside Dev. Co. v. Opsys Ltd., No. C 05 0553 MHP, 2007 WL 2462142 (N.D. Cal. Aug. 29, 2007) (Patel, J.) (2007 Rule 25(c) Order). The court ruled that plaintiff had failed, as a matter of law, to establish successor liability on any theory, including express or implied assumption, consolidation or merger,

4

1  continuation, or fraudulent purpose.  The court found that Opsys had received adequate
2  consideration in the 2002 and 2004 transactions.  It also ruled that a finding of fraudulent purpose
3  could not be supported with regard to the transactions at issue, i.e., the 2002 and 2004 transactions.
4  Plaintiff has appealed the court's 2007 Rule 25(c) order in *Sunnyside I* to the Court of Appeals,
5  where it has been fully briefed and is pending.  See Docket Entry 43, Exh. A (appellant's brief).

6  　　　　In the meantime, plaintiff sought to enforce its judgment via an action in Southern District of
7  New York.  Specifically, plaintiff sought to obtain funds from the escrow accounts.  The district
8  court ruled that "the provisions and structure of the escrow agreement [do] not grant an interest in
9  the escrow fund to Opsys or an Opsys creditor."  Sunnyside Dev. Co. v. Bank of New York, 07 Civ.
10 8825 (LLS) at 3 (S.D.N.Y. Feb. 15, 2008) ("Stanton Order").  Judge Stanton also rejected plaintiff's
11 judicial estoppel argument.  Plaintiff claimed that it had filed the New York suit in reliance upon
12 certain statements, made in the *Sunnyside I* litigation in this court, in which defendants stated that
13 the escrow accounts were set up for the benefit of Opsys creditors.  Although the New York court
14 found some of the challenged statements to be "extravagant mischaracterizations," it ruled that
15 judicial estoppel did not apply because this court had not relied upon these misrepresentations.  See
16 id. at 6-8.  Plaintiff was not allowed to reach the escrow funds.  Subsequent to Judge Stanton's
17 ruling, plaintiff filed the instant suit, here styled *Sunnyside II*.

18

19 LEGAL STANDARDS

20 I.　　　Failure to State a Claim

21 　　　　A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal
22 sufficiency of a claim."  Navarro v. Block, 250 F.3d 729, 732 (9th Cir.2001).  Because Rule 12(b)(6)
23 focuses on the "sufficiency" of a claim rather than the claim's substantive merits, "a court may
24 [typically] look only at the face of the complaint to decide a motion to dismiss."  Van Buskirk v.
25 Cable News Network, Inc., 284 F.3d 977, 980 (9th Cir.2002).  Although the court is generally
26 confined to consideration of the allegations in the pleadings, when the complaint is accompanied by
27 attached documents, such documents are deemed part of the complaint and may be considered in
28

5

evaluating the merits of a Rule 12(b)(6) motion. Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir.1987).

A motion to dismiss should be granted if plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, ___ U.S. ___, ___, 127 S.Ct. 1955, 1974 (2007). Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.1990). Allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir.1996). The court need not, however, accept as true allegations that are conclusory, legal conclusions, unwarranted deductions of fact or unreasonable inferences. See Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.2001); Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir.1994).

II. Pleading Fraud

A plaintiff alleging a fraudulent course of conduct to support a claim in which fraud is a required element or which "sounds in fraud" must satisfy the heightened pleading requirement of Federal Rule of Civil Procedure 9(b). See Vess. v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103-04 (9th Cir. 2003). Rule 9(b) requires that the circumstances constituting fraud be pleaded with particularity. Moreover, where a plaintiff pleads allegations of fraud against more than one defendant, Rule 9(b) "requires that a plaintiff plead with sufficient particularity attribution of the alleged misrepresentations or omissions to each defendant." In re Silicon Graphics, Inc. Sec. Litig., 970 F. Supp. 746, 752 (N.D. Cal. 1997) (Smith, J.).

III. Motion to Stay

A court may stay proceedings as part of its inherent power "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. North Am. Co., 299 U.S. 248, 254 (1936). Use of this power "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." Id. at 254-55. It is

6

within a district court's discretion to grant or deny such a stay. See Lockyer v. Mirant Corp., 398 F.3d 1098, 1105, 1109 (9th Cir. 2005).

DISCUSSION

In its complaint, plaintiff advances six separate claims, two of which (California Civil Code, section 3439.07(a)(1), and constructive trust) are actually remedies related to other listed claims, rather than separate claims. The actual causes of action alleged are: (1) actual fraudulent conveyance under California Civil Code, section 3439.04; (2) constructive fraudulent conveyance under California Civil Code, section 3439.05; (3) fraudulent conveyance under the United Kingdom's Insolvency Act of 1986; and (4) common law fraud under California law. Defendants move under Rule 12(b)(6) to dismiss the complaint. Alternatively, defendants request a stay of any surviving portion of this proceeding until the Court of Appeals has ruled on plaintiff's appeal of this court's 2007 Rule 25(c) order in *Sunnyside I*.

I.   Claim and Issue Preclusion

   A.   Causes of Action Arising From the 2002 and 2004 Transactions

Plaintiff refers throughout its complaint to the 2002, 2004, and 2005 transactions between the judgment debtor, Opsys Ltd., and various CDT-owned entities. Defendants argue that all of plaintiff's claims are barred by the doctrines of claim preclusion (res judicata) and issue preclusion (collateral estoppel).[2]

In a diversity action, the forum state's law applies to determine the preclusive effect of a previous judgment. Bates v. Union Oil Co. of Cal., 944 F.2d 647, 649 (9th Cir. 1991). California courts apply the same three-part test to preclusion, regardless of whether the defense is issue or claim preclusion: "The prerequisite elements for applying the doctrine to either an entire cause of action or one or more issues are the same: (1) A claim or issue raised in the present action is identical to a claim or issue litigated in a prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the party against whom the doctrine is being asserted was a party or in privity with a party to the prior proceeding." People v. Barragan, 32 Cal.4th 236, 252-53 (2004)

1  (emphasis and internal quotation marks omitted).³  "Res judicata [claim preclusion] prevents

2  litigation of all grounds for, or defenses to, recovery that were previously available to the parties,

3  regardless of whether they were asserted or determined in the prior proceeding." Kay v. City of

4  Rancho Palos Verdes, 504 F.3d 808, 809 (9th Cir. 2007), quoting Robi v. Five Platters, Inc., 838

5  F.2d 318, 324 (9th Cir. 1988) (interpreting California law).

6       Plaintiff does not dispute that the 2005 dismissal order was a final judgment on the merits.

7  Nor does plaintiff argue that the defendants in *Sunnyside II* (CDT Limited and CDT Oxford) do not

8  have identity or privity with the original defendants in *Sunnyside I* (CDT Limited and Opsys Ltd.).

9  Plaintiff instead focuses on the first prong of the test, arguing that the instant claims are different

10 from those disposed of by the court's 2005 dismissal order.

11      California law defines a claim or cause of action by employing a primary rights theory, under

12 which "the violation of one primary right gives rise to a single cause of action." Takahashi v. Bd. of

13 Trustees, 783 F.2d 848, 851 (9th Cir. 1986), quoting Slater v. Blackwood, 15 Cal.3d 791, 795

14 (1976). "There is only a single cause of action for the invasion of one primary right, even if multiple

15 theories of recovery are asserted." Citizens for Open Access to Sand and Tide, Inc., 60 Cal. App.

16 4th 1053, 1065 (1998) (citations and internal quotations omitted). "[T]he significant factor is the

17 harm suffered; that the same facts are involved in both suits is not conclusive." Agarwal v. Johnson,

18 25 Cal.3d 932, 954-955 (1979).

19      *Sunnyside I* challenged the 2002 and 2004 transactions on an alter ego theory, while the

20 instant action challenges the same transactions, alleging essentially the same facts, on a fraudulent

21 conveyance theory. Plaintiff alleged in its first amended complaint in *Sunnyside I* that "one of the

22 *SINE QUA NON* CONDITIONS which CDT created for the purchase of Opsys Ltd. was that Opsys

23 Ltd. somehow get rid of its debt burdens owed to plaintiff under this lease." *Sunnyside I* First

24 Amended Complaint ¶ 11. In this action, plaintiff again claims that the 2002 and 2004 transactions

25 were structured so as to deprive plaintiff from obtaining recourse to assets held by Opsys Ltd.

26 Complaint ¶¶ 65-66, 76-80, 90-92. The underlying harm (plaintiff's ability to collect on its

27 judgment) and, therefore, the underlying primary right (the right to collect money owed by a debtor)

28 is the same in this action as in *Sunnyside I*. Plaintiff has merely proffered an alternate theory of

8

recovery, fraudulent conveyance, to vindicate the same primary right. *Sunnyside I* advances the same claim as *Sunnyside II*; therefore, all of plaintiff's claims are barred as to the 2002 and 2004 transactions per the doctrine of claim preclusion.[4]

Separately, plaintiff's causes of actions against CDT Limited for actual fraudulent conveyance and common law fraud arising from the 2002 and 2004 transactions would also be barred by the doctrine of issue preclusion. An element of actual fraudulent conveyance under the California statute is "actual intent to hinder, delay, or defraud any creditor or debtor." Cal. Civ. Code § 3439.04. Similarly, among the elements of California common law fraud are knowledge of falsity ("scienter") and intent to defraud, i.e., to induce reliance. Bank of the West v. Valley Nat'l Bank of Ariz., 41 F.3d 471, 477 (9th Cir. 1994) (citing California law). In its 2005 dismissal order, the court rejected plaintiff's allegations of fraudulent intent as inadequate. The court, finding that plaintiffs failed to plead the scienter element of common law fraud, concluded that plaintiffs claims against CDT Limited failed as a matter of law. 2005 Dismissal Order at 6. Thus, the court has already ruled on the question of knowledge of falsity and, a fortiori, fraudulent intent as regards the 2002 and 2004 transactions.

Plaintiff argues that defendants are barred from asserting issue preclusion because of their inequitable conduct during the post-verdict motion, i.e., their mischaracterizations of fact regarding the escrow accounts. Assuredly, "mischaracterizations" of fact to a court of law can create grave difficulties for a litigant. In this case, however, Judge Stanton's interpretation of this court's *Sunnyside I* decision is correct: The court did not adopt the challenged statements as a basis for its decision. The 2007 Rule 25(c) order found that the 422,610 shares worth over $5 million placed in the escrow accounts were done so "as security for contingent and unidentified liabilities" of Opsys, Ltd. 2007 Rule 25(c) Order at 4. As Judge Stanton noted, the security ran to CDT Incorporated to protect it against increases in its cost of acquisition or receipt of full value, by indemnifying it for any of Opsys's contingent and unidentified liabilities that might later arise. While Judge Stanton found certain statements about the escrow account to be "extravagant mischaracterizations," these statements did not form a basis of the court's decision, and they are irrelevant to the application of claim preclusion to plaintiff's *Sunnyside II* claims.

9

B. <u>Causes of Action Arising From the 2005 Transaction</u>

Unlike plaintiff's claims arising from the 2002 and 2004 transactions, the claims arising from the 2005 transaction are barred by neither claim nor issue preclusion. The 2005 dismissal order dealt only with the allegations in plaintiff's first amended complaint, filed on May 11, 2005. The May 2005 transaction between Opsys Ltd. and CDT Oxford was not at issue, and the court did not discuss it. <u>See</u> 2005 Dismissal Order at 1-2 (statement of factual background). Defendant cites to a Fourth Circuit case, <u>Harnett v. Billman</u>, 800 F.2d 1308, 1313 (4th Cir. 1986), for the proposition that actual knowledge of a potential claim is not a requirement for application of res judicata. This is not the law in California. "Res judicata is not a bar to claims that arise after the initial complaint is filed." <u>Allied Fire Protection v. Diede Const., Inc.</u>, 127 Cal. App. 4th 150, 155 (2005); <u>see also</u> <u>Los Angeles Branch NAACP v. Los Angeles Unified School Dist.</u>, 750 F.2d 731, 739 (9th Cir. 1984) (applying California law). Neither the original complaint nor the first amended complaint in *Sunnyside I* made allegations regarding the 2005 transaction—which, indeed, had not even occurred before the initial complaint was filed. Therefore, the 2005 dismissal order cannot provide a final judgment on the merits for the purpose of barring claims arising from the 2005 transaction.

Defendants argue that the plaintiff's 2005 fraud claims are barred under the doctrine of issue preclusion, because the court ruled on these claims in its 2007 Rule 25(c) order. Issue preclusion applies only to issues actually litigated by the parties in the earlier action. <u>Barragan</u>, 32 Cal.4th at 252-53. The issue in the Rule 25(c) motion was whether CDT Incorporated should be added as a party to the action and judgment, based on a theory of successor liability. CDT Incorporated was directly involved in the 2002 and 2004 transactions, exchanging stock, cash, and rights to profits. The challenged 2005 transaction took place between Opsys Ltd. and CDT Limited, not CDT Incorporated. There has been no ruling or allegation that CDT Limited is merely the alter ego of CDT Incorporated. Plaintiff sought to add CDT Incorporated, not CDT Limited, to the judgment, and did not have the same motive to fully litigate the issues surrounding the 2005 transaction. The court's 2007 Rule 25(c) order ruled on a motion to add CDT Incorporated as a party to the action and judgment; it did not rule on the 2005 transaction between Opsys Ltd. and CDT Limited.

1   Plaintiff did suggest that the circumstances of the 2005 transaction provided additional
2 evidence going to the issue of CDT Incorporated's successor liability. See *Sunnyside I* Docket Entry
3 179 (plaintiff's Rule 25(c) motion) at 21.  The court offhandedly expressed its skepticism of
4 plaintiff's insinuations regarding the 2005 transfer: "An asset transfer between defendants is hardly
5 an attempt to thwart a plaintiff's ability to collect." 2007 Rule 25(c) Order at 11.  However, to the
6 extent that the court commented on the 2005 transaction, such dicta is not enough to create a
7 preclusive effect.  Therefore, there is no preclusion of the claims arising from the 2005 transaction.[5]

9   II.   Actual Fraud Claims Arising From the 2005 Transaction
10   Of plaintiff's four causes of action, two include elements of actual fraud.  As noted above,
11 the actual fraudulent transfer and common law fraud claims both require a showing of fraud or
12 sound in fraud.  Plaintiff must satisfy Rule 9(b)'s heightened pleading requirement to overcome a
13 motion to dismiss.  The complaint dedicates but little discussion to the particulars of the allegedly
14 fraudulent aspects of the three transactions.  Plaintiff alleges that the transfer was made as Opsys
15 Ltd. was being sued by plaintiff on the lease obligation.  Complaint ¶ 80.  However, the complaint
16 also alleges that the parties to the 2005 transaction agreed to the transaction in November 2004,
17 before plaintiff even filed *Sunnyside I.*  See Complaint ¶¶ 50 & 51.  Plaintiff also alleges that the
18 transfer was not disclosed publicly, resting this allegation on the allegation that "CDT" was a
19 publicly traded company with disclosure obligations.  Id. ¶ 53.  Defendants counter that CDT
20 Incorporated—not CDT Limited, the party to this litigation and to the 2005 transaction—is the
21 publicly traded company.  Plaintiff does not respond to this argument in its reply brief.  In any event,
22 plaintiff's failure to differentiate between the various CDT entities (when it has so punctiliously
23 done so in other pleadings) means that plaintiff has failed to "plead with sufficient particularity
24 attribution of the alleged misrepresentations or omissions to each defendant." See In re Silicon
25 Graphics, 970 F. Supp. at 752.  This leaves only plaintiff's allegations that some or all of the
26 transfers were of "all or almost all" of Opsys Ltd.'s assets and that they were made "for none [sic],
27 or minimal, consideration."  Complaint ¶ 80.  These allegations may support a claim of constructive

11

1  fraudulent conveyance (see below).  However, they fall short of meeting Rule 9(b)'s requirement
2  that circumstances of fraud be pled with particularity.
3        Plaintiff's only discernable response to defendants' Rule 9(b) argument is that plaintiff
4  actually intended its fifth count to be a claim for common law fraudulent conveyance, rather than
5  common law fraud.  See Reply at 23-24.  Whatever the merits of this argument, it is irrelevant.  Both
6  common law fraud and common law fraudulent conveyance "sound in fraud," at a minimum.
7  Therefore, the foregoing analysis applies equally to common law fraudulent conveyance.  Plaintiff
8  fails to state a claim for statutory actual fraudulent conveyance or common law fraud/fraudulent
9  conveyance arising from the 2005 transaction.

11  III.    Claims Under British Law Arising From the 2005 Transaction
12        Plaintiff claims that defendants have violated sections 238 and 423 of the UK Insolvency Act
13  of 1986.  The litigants have eschewed any substantive discussion of the choice of law principles that
14  would govern the application of foreign law.  The court will do likewise and assume for the purposes
15  of this analysis that it would apply the British law to this case.  Section 238 provides a remedy for
16  transactions at an undervalue.  See Docket Entry 26 (Foreign Authorities) § 238.  Section 423 also
17  provides remedies for transactions at an undervalue, but it includes a requirement of illicit purpose.
18  Id. § 423(3).
19        Defendants move to dismiss the section 423 claim on the basis that this court does not have
20  subject matter jurisdiction over the claim.  Defendants note that section 423 authorizes "the court" to
21  issue appropriate orders and that "the court" is defined in section 423(4) as "the High Court [of
22  England and Wales]."  See id. § 423(4).  Plaintiff's only response is to cite to section 426(4) of the
23  Insolvency Act, which plaintiff misreads as a grant of jurisdiction to foreign courts: "The courts
24  having jurisdiction in relation to insolvency law in any part of the United Kingdom shall assist the
25  courts having the corresponding jurisdiction in any other part of the United Kingdom or any relevant
26  country or territory."  Id. § 426(4).  As is evident from the plain text, section 426(4) does not confer
27  jurisdiction on any court.  It only provides for cooperation among courts that already have
28  jurisdiction.  The section 423 claim fails for lack of subject matter jurisdiction.

12

The section 238 claim is likewise subject to dismissal. Plaintiff admits that a claim for violation of this section can only be brought by an "office holder" and that it has no such status. Opp. at 25. Plaintiff aspires to be appointed an office holder and has requested that the UK Secretary of State appoint plaintiff as such. See Heisenberg Decl., Exh. 9. In the meantime, plaintiff requests a stay of this its section 238 claim, rather than dismissal.

In this case, a stay for the purpose of preserving plaintiff's British law claim in this court is not warranted. Plaintiff has retained counsel in England and has indicated that it is already involved in proceedings in the UK. See Opp. at 25; Heisenberg Decl., Exh. 9. Defendants are UK companies. Complaint ¶¶ 5 & 6. Therefore, there is little reason to believe that litigating this claim in northern California would best economize time and effort for the parties. Moreover, British courts are more competent to apply British laws than are U.S. courts. There is inadequate justification for granting a stay in this case, and the Section 238 claim is dismissed.

IV.  Constructive Fraudulent Conveyance Claim Arising From the 2005 Transaction

Once the complaint's considerable chaff has been sorted out, some wheat remains. Per the above analysis, the constructive fraudulent conveyance claim under California Civil Code, section 3439.05, is barred by neither claim nor issue preclusion. Moreover, the cause of action for constructive fraudulent conveyance does not include an element of fraud. See Cal. Civ. Code § 3439.05. Its label notwithstanding, an alleged violation of section 3439.05 does not "sound in fraud," because the claim focuses entirely on the transaction at issue and does not include elements of knowledge, intent, or purpose. Therefore, plaintiff is not required to plead constructive fraudulent conveyance with Rule 9(b) particularity. Finally, the claim is not barred by any statute of limitations; defendant challenges only the section 3439.05 claims arising from the 2002 transaction on the basis of a statute of limitations.[6] Plaintiff alleges that in 2005 the judgment debtor, Opsys Ltd., transferred assets worth more than $10 million to CDT Limited and received no (or insignificant) consideration in return.[7] Plaintiff states a claim under section 3439.05 of the California Civil Code to the extent that such claim arises from the 2005 transaction.

13

## V. Leave to Amend

In determining whether it should grant leave to amend a complaint, the court must consider (1) the plaintiff's bad faith; (2) undue delay; (3) prejudice to the defendant; (4) futility of amendment; and (5) whether the plaintiff has previously amended his or her pleadings. Nunes v. Ashcroft, 375 F.3d 805, 808 (9th Cir.2004), citing Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir.1995). In this case, plaintiff has already had multiple bites at the apple in relation to its claims arising from the 2002 and 2004 transactions. These claims are dismissed with prejudice. For the reasons cited above, the British law claims are more appropriately taken up by the British court and are dismissed without prejudice to proceeding in the British forum. The claims for actual fraudulent conveyance under California Civil Code, section 3439.04, and common law fraud arising from the 2005 transaction are dismissed with leave to amend, but only if plaintiff can plead allegations sounding in fraud to the level of particularity required under Rule 9(b). The court admonishes plaintiff, however, that any amended complaint simply regurgitating the same conclusory allegations will meet the same result—dismissal.

## VI. Motion to Stay

Defendant has moved to stay proceedings in this action until the appeal of *Sunnyside I* is complete. Only one claim survives defendants' motion to dismiss: the constructive fraudulent conveyance claim under California Civil Code, section 3439.05, arising from the 2005 transaction. In its appeal, plaintiff challenges this court's ruling on plaintiff's motion to add CDT Incorporated as a party to the judgment. See Docket Entry 43, Exh. A (appellant's brief). The present action is directed against CDT Limited, a separate corporate person. Regardless of the Court of Appeals decision on the Rule 25(c) motion, plaintiff would almost certainly be entitled to pursue this constructive fraudulent conveyance claim against CDT Limited. Therefore, a stay is not warranted at this time.

CONCLUSION

For the foregoing reasons, defendants' motion for dismissal is GRANTED in part and DENIED in part. Each of plaintiff's claims arising from the 2002 and 2004 transactions is DISMISSED with prejudice. Plaintiff's UK Insolvency Act claims based on the 2005 transaction are DISMISSED without prejudice to proceeding in the British forum. Plaintiff's claims of a violation of California Civil Code, section 3439.04, and common law fraud arising from the 2005 transaction are DISMISSED with leave to amend. Defendants' motion to stay proceedings is DENIED.

The parties may proceed with pertinent discovery on the remaining claim. At a future date prior to the adjudication of dispositive motions, the court may entertain a renewed motion for a stay pending appeal, if the *Sunnyside I* appeal is still pending and the result of such appeal may be expected to shed further light on how this court should proceed.

IT IS SO ORDERED.

Dated: September 26, 2008

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

**ENDNOTES**

1. At oral argument, Mr. Ericson, counsel for the defendants, informed the court that the consideration paid was $100.

2. Some California courts use "res judicata" to indicate claim preclusion only, while others apply the term to both claim and issue preclusion. For purposes of clarity, the court will use the terms "claim preclusion" and "issue preclusion" throughout this order.

3. Defendants state, "Under California law, the preclusive effect of a prior federal judgment is governed by federal law." See Motion to Dismiss at 4. Defendants rely for this proposition upon the 9th Circuit's characterization in Bates (in dicta) of Levy v. Cohen, 19 Cal. 3d 165 (1977). Levy and related California cases, see, e.g., Martin v. Martin, 2 Cal.3d 752 (1970), do not stand for quite so broad a rule. In both Levy and Martin, the case found to have a preclusive effect on a later action was a case arising under federal question, not diversity, jurisdiction. No authority has been cited for the proposition that the preclusive effect of a prior federal judgment is governed by federal law, where, as here, both the earlier and later case are tried in federal court pursuant to diversity jurisdiction. "California gives full faith and credit to a final order or judgment of a federal court . . . by "follow[ing] the rule that the preclusive effect of a prior judgment of a federal court is determined by federal law, *at least where the prior judgment was on the basis of federal question jurisdiction*." Nathanson v. Hecker, 99 Cal. App. 4th 1158, 1163 (2002) (emphasis added) (citations omitted). This court declines to impute an intent to the California courts to defer to the federal rule when California has not clearly decided to do so.

4. Insofar as they arise from the 2002 and 2004 transactions, all four of plaintiff's causes of action would likewise be barred under the federal rule's transactional test. The *Sunnyside II* claims arise quite literally from the same transactions as the *Sunnyside I* claims already disposed of by the court. "Res judicata bars relitigation of all grounds of recovery that were asserted or could have been asserted . . . . It is immaterial whether the claims asserted subsequent to the judgment were actually pursued in the action that led to the judgment; rather, the relevant inquiry is whether they could have been brought." Tahoe-Sierra Preservation Council, Inc. v. Tahoe Reg'l Planning Agency, 322 F.3d 1064, 1078 (9th Cir. 1998) (citations omitted). Plaintiff has not attempted to argue that it could not have brought its fraudulent conveyance claims regarding the 2002 and 2004 transactions in the previous action.

5. There is an alternative basis for rejecting defendant's issue preclusion argument insofar as it relies on the 2007 Rule 25(c) order. Under California law, a judgment does not become res judicata until it is free from direct attack, including appeal. See Pellissier v. Title Guarantee & Trust Co., 208 Cal. 172, 183-184 (1929); see also 7 Witkin California Procedure *Judgment* § 307 (4th ed.). As defendants have noted, the 2007 Order in *Sunnyside I* is currently on appeal. Therefore, the 2007 order is not yet a final judgment with preclusive effect.

6. The court's disposition of plaintiff's other claims renders further analysis of defendants' various statutes of limitations defenses unnecessary.

7. Defendants suggest that the assets of CDT Oxford had "negligible value" before the 2005 transaction, because CDT Oxford had already agreed, in 2002, to give 98% of its future profits to CDT Limited. This suggestion seems to conflate assets and profits. Moreover, even if CDT Limited had a right to 98% of CDT Oxford's *assets*, the court would be unprepared to hold that $200,000 (2% of $10 million, the approximate value alleged in the complaint) is negligible.